## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEVEN CHURCH; LESLEY CHURCH, ALMA GONZALEZ, DYNIKA BARNWELL, DOUGLAS CZERWINSKI, JASON COFFEY, JOSHUA SCHMIDT, MELINA ROYER, TAMIKA WALLS, JAIME ESPITIA, SOMER STEPHENS, ALEX BERNE, ALAN CAMP, STEPHANIE PERROTTA, CHRISTOPHER AXTELL, GRACE BROWN, KRISTOFOR HALLFRISCH, DOROTHY MORGAN, ANDREW SOTO, and CHRISTOPHER HALL,[1]** | |
| *Plaintiffs*, | Civil Action No.: 1:21-cv-2815 |
| v. | |
| **JOSEPH R. BIDEN, in his official capacity as President of the United States,** The White House 1600 Pennsylvania Ave NW 1st Floor, West Wing Washington, D.C. 20500; | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **LLOYD J. AUSTIN III, in his official capacity as Secretary of the Department of Defense** 1000 Defense Pentagon, Room 3E880 Washington, D.C. 20301; | JURY TRIAL DEMANDED |
| **ANTONY J. BLINKEN, in his official capacity as Secretary of State** The Executive Office Suite 5.600 600 19th Street NW Washington, D.C. 20522 | |
| **JANET YELLEN, in her official capacity as Secretary of Treasury** 1500 Pennsylvania Avenue NW | |

---

[1] Plaintiffs contemporaneously file a Motion to Proceed under Pseudonym to Omit Home Addresses from the Complaint. *See* LCvR 5.1(c)(1).

Room 2134
Washington, D.C. 20220

**MERRICK B. GARLAND, in his official
capacity as Attorney General of the United
States**
950 Pennsylvania Avenue NW
Washington, D.C. 20530

**DEBRA ANN HAALAND, in her official
capacity as Secretary of the Interior**
1849 C Street NW
Washington, D.C. 20240

**THOMAS J. VILSACK, in his official
capacity as Secretary of Agriculture**
1400 Independence Avenue SW
Washington, D.C. 20250

**GINA M. RAIMONDO, in her official
capacity as Secretary of Commerce**
1401 Constitution Ave NW
Washington, D.C. 20230

**MARTIN J. WALSH, in his official capacity
as Secretary of Labor**
200 Constitution Avenue NW
Washington, D.C. 20210

**XAVIER BECERRA, in his official capacity
as Secretary of the Department of Health
and Human Services**
200 Independence Avenue SW
Washington, D.C. 20201;

**MARCIA L. FUDGE, in her official
capacity as Secretary of Housing and Urban
Development**
451 7th Street SW
Washington, DC 20410

**PETER BUTTIGIEG, in his official
capacity as Secretary of Transportation**
1200 New Jersey Avenue SE
Washington, DC 20590

**JENNIFER M. GRANHOLM, in her
official capacity as Secretary of Energy**
1000 Independence Avenue SW
Washington, D.C. 20585

**MIGUEL CARDONA, in his official
capacity as Secretary of Education**
400 Maryland Avenue SW
Washington, DC 20202

**DENIS McDONOUGH, in his official
capacity as Secretary of Veteran Affairs**
810 Vermont Ave NW
Washington, D.C. 20420

**ALEJANDRO MAYORKAS, in his official
capacity as Secretary of Homeland Security**
2707 Martin Luther King Jr. Avenue SE
Washington, D.C. 20528

**CLARENCE W. NELSON II, in his official
capacity as Administrator of the National
Aeronautics and Space Administration**
300 E Street SW
Washington, D.C. 20546

**KILOLO KIJAKAZI, in her official
capacity as Acting Commissioner of the
Social Security Administration**
Office of General Counsel, Room 617
6401 Security Boulevard
Baltimore, MD 21235

**ROBIN CARNAHAN, in her official
capacity as Administrator of General
Services Administration**
1800 F Street NW
Washington, DC 20405

            *Defendants.*

COMES NOW, Plaintiffs Steven Church, Lesley Church, Alma Gonzalez, Dynika

Barnwell, Douglas Czerwinski, Jason Coffey, Joshua Schmidt, Melina Royer, Tamika Walls,

Jaime Espitia, Somer Stephens, Alex Berne, Alan Camp, Stephanie Perrotta, Christopher Axtell, Grace Brown, Kristofor Hallfrisch, Dorothy Morgan, Andrew Soto, and Christopher Hall (collectively, "Plaintiffs"), by and through undersigned counsel, and file this action against Defendants Joseph R. Biden, in his official capacity as President of the United States, Lloyd J. Austin III, in his official capacity as Secretary of the Department of Defense, Antony J. Blinken, in his official capacity as Secretary of State, Janet Yellen, in her official capacity as Secretary of Treasury, Merrick B. Garland, in his official capacity as Attorney General of the United States, Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, Gina M. Raimondo, in her official capacity as Secretary of Commerce, Martin J. Walsh, in his official capacity as Secretary of Labor, Xavier Becerra, in his official capacity as Secretary of the Department of Health and Human Services, Marcia L. Fudge, in her official capacity as Secretary of Housing and Urban Development, Peter Buttigieg, in his official capacity as Secretary of Transportation, Jennifer N. Granholm, in her official capacity as Secretary of Energy, Miguel Cardona, in his official capacity as Secretary of Education, Denis McDonough, in his official capacity as Secretary of Veteran Affairs, Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security, Clarence W. Nelson II, in his official capacity as Administrator of the National Aeronautics and Space Administration, Kilolo Kihakazi, in her official capacity as Acting Commissioner of the Social Security Administration, and Robin Carnahan, in her official capacity as Administrator of General Services Administration (collectively, "Defendants" or "federal government") on the grounds and in the amount set forth as follows:

## URGENCY OF THIS ACTION REQUIRES EMERGENCY RELIEF

For nearly two months, the Task Force created by President Biden and the various executive agencies have pointed fingers at each other as to why "no guidance" has been issued.

Plaintiffs, who are federal executive agency employees and active-duty service members file this action against President Biden and the head of each of their respective agencies to put an end to Defendants abject failure to execute their duties in accord with the U.S. Constitution and federal statutory law. Irrespective as to who has refused to promulgate the guidance and accommodate Plaintiffs' sincerely held religious beliefs, Plaintiffs have now sat all responsible parties down at the same table.

Plaintiffs have sincerely held religious beliefs that prohibit them from complying with the vaccine mandate imposed by President Biden by signing Executive Order 14043 on September 9, 2021 ("E.O. 14043") or Secretary of Defense Lloyd Austin III's Order issued on August 24, 2021. ("DoD Order") (collectively, "Vaccine Mandates"). Absent the relief requested, Plaintiffs, along with hundreds of thousands of other federal employees and active-duty service members will be terminated, discharged or separated on or before **November 22, 2021**.[2]

While reasonable minds can disagree as to the magnitude of the COVID-19 pandemic, the Supreme Court reminds us that "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). Contemporaneous with the commencement of this action Plaintiffs have filed an Application for a Temporary Restraining Order ("TRO") and Preliminary Injunction to maintain the *status quo* of our federal governmental operations and to put an end to this involuntary game of Monty Hall millions of Americans have been compelled to involuntary play. And while the

---

[2] To be "fully vaccinated" by the deadline of November 22, 2021, Plaintiffs (and all other federal employees) must receive (1) the second dose of the two-dose BioNTech and Moderna vaccine series; or (2) the J&J single-dose vaccine no less than two weeks prior to November 22; thus, **the salient date relevant for the emergency relief requested is November 8, 2021**. As of the date of this filing, the Johnson & Johnson ("J&J") shot is the only vaccine available to Plaintiffs that satisfies the rapidly approaching November 22 deadline. The J&J vaccine is not FDA-approved.

currency of this game is not exclusively money but also the rights to life, liberty, and property, it would be imprudent to not address the magnitude of the economic impact of this case.

To summarize:

*First*, E.O. 14043 on its face states that "the Pfizer-BioNTech COVID–19 Vaccine, also known as Comirnaty, has received approval from the Food and Drug Administration (FDA) and this is **patently false**.[3]

The FDA-approved COMIRNATY (COVID-19 Vaccine, mRNA) and the FDA-authorized Pfizer-BioNTech COVID-19 Vaccine under Emergency Use Authorization (EUA)

*Second*, E.O. 14043 facially only applies to *some* federal employees of the Executive Brach; specifically, E.O. 14043 only applies to the "agencies" as defined by 5 U.S.C. § 105 – it does not apply to federal employees of the Executive Brach who work for the White House, the Food & Drug Administration, or the National Institute of Health, among others.

*Third*, some federal executive "agency" employees, such as Plaintiff Hallfrisch, have received religious accommodations while all other federal Executive Branch employees who share identical religious beliefs have *not* received religious accommodations;

*Fourth*, the only available COVID-19 vaccines are only available under EUA; not full-licensure and therefore, as recipients of EUA-authorized medical products, Plaintiffs must "[be] informed . . . [of] the **option to accept or refuse administration of the product**." *See* FDCA § 564(e)(1)(A)(ii)(III); and

*Fifth*, DoD personnel have (1) repeatedly lied to active-duty service members about the product used for inoculation; (2) lied in claiming the DoD would receive the FDA-approved

---

[3] The Food and Drug Administration, *Vaccine Information Fact Sheet for Recipients and Caregivers about COMIRNATY (COVID-19 Vaccine, mRNA) and Pfizer-BioNTech COVID-19 Vaccine to Prevent Coronavirus Disease 2019 (COVID-19)* (Aug. 23, 2021), available at: https://www.fda.gov/media/144414/download

COMIRNATY "early next week"[4] (i.e., prior to Sept. 3); (3) the Director of the DiLorenzo Clinic confirmed that as of October 15, 2021, "Pfizer has not made any Comirnaty" and "[t]here is no expected date when [the DoD] will receive Comirnaty" and the DoD OIG COVID-19 Coordinator has confirmed that the Pentagon does not have COMIRNATY nor does it know when, if ever, it will receive it; (4) DoD official medical immunization records falsely reflect that COMIRNATY has been administered despite it never being in the DoD's possession; and (5) Defendants Biden and Austin have deprived Plaintiffs 1st Lt. Soto and Cpl. Hall's requests for accommodations for their sincerely held religious beliefs have been denied unlawfully and they now face administrative separation and are subject to adverse administrative disciplinary action because of their religious sincerely held beliefs and absent any "undue hardship" imposed on Defendants by accommodating Plaintiffs beliefs.

Absent the injunctive relief Plaintiffs request herein, Plaintiffs will suffer irreparable harm as their fundamental rights are trampled and they lose their jobs for no reason beyond their sincerely held religious beliefs. If Defendants are not enjoined from enforcing the Vaccine Mandates, hundreds of thousands of federal workers and military personnel will be forcibly removed from our government and Armed Forces, thrusting our nation into a state more vulnerable than the United States has experienced in a quarter of a millennium. Allowing Defendants to continue enforcing the Vaccine Mandate that was issued to save lives will only cause more lives to be lost, or at the very minimum, subject 360 million American lives to dangers far greater than COVID-19.

*To do so would be unfathomable.*

---

[4] *See infra*, ¶135.

## JURISDICTION & VENUE

1.      This action arises under the Free Exercise Clause of the First Amendment, the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4, ("RFRA"), the Equal Protection Clause of the Fifth Amendment to the United States Constitution, and under the Emergency Use Authorization provisions of the Federal Food Drug and Cosmetic Act, 21 U.S.C. § 360bbb-3 ("FDCA").

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 1343(a).

3.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

4.      This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Fed. R. Civ. P. 57.

## PARTIES

### I.   PLAINTIFFS

5.      Plaintiff Steven D. Church ("Mr. Church") is an adult resident of Virginia and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Church serves as the Staffing Recruitment and Operations Center ("SROC") Director under the Assistant Secretary of Administration for the Department of Health and Human Services ("HHS"). Prior to serving in this capacity, Mr. Church has served our government for twenty-five (25) years, first as an active-duty service member in the 101st Airborne Division of the United States Army followed by more than two decades of service as a civilian federal employee. Mr. Church is also an ordained minister and a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Mr. Church lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United

States and Xavier Becerra, in his official capacity as Secretary of the Department Health and Human Services.

6.      Plaintiff Lesley Church ("Mrs. Church") is an adult resident of Virginia and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mrs. Church serves as the Director of Operational Support for the Office of the Inspector General ("OIG") for the United States Department of Defense ("DoD"). Mrs. Church also serves as the DoD OIG COVID-19 coordinator and is responsible for *inter alia* coronavirus case reporting and tracking and coordinated and scheduled vaccinations for DOD OIG employees. Following up on behalf of employees' inquiries about COMIRNATY availability, Mrs. Church was informed that the Pentagon does not have COMIRNATY and does not know when COMIRNATY will be available. Additionally, Mrs. Church is a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Mrs. Church lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Lloyd J. Austin III, in his official capacity as Secretary of the Department of Defense.

7.      Plaintiff Alma Gonzalez is an adult resident of Georgia and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Gonzalez is a Contact Representative for the U.S. Department of Treasury ("USDT"). Ms. Gonzalez is also a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Ms. Gonzalez lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Janet Yellen, in her official capacity as Secretary of Treasury.

8.      Plaintiff Dynika Barnwell is an adult resident of Maryland and a federal employee

within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Barnwell is a Budget Analyst for the U.S. Department of Commerce ("DOC"). Ms. Barnwell is also a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Ms. Barnwell lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Gina M. Raimondo, in her official capacity as Secretary of Commerce.

9.      Plaintiff Douglas Czerwinski is an adult resident of Florida and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Czerwinski is an AST in Experimental Facility Development for the U.S. National Aeronautics and Space Administration ("NASA"). Mr. Czerwinski is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Mr. Czerwinski lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Clarence W. Nelson II, in his official capacity as Administrator of the National Aeronautics and Space Administration.

10.      Plaintiff Jason Coffey is an adult resident of California and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Coffey is a Special Agent for the Federal Bureau of Investigation ("FBI"), an agency within the U.S. Department of Justice ("DOJ"). Special Agent Coffey is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Special Agent Coffey lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Merrick B. Garland, in his official capacity as Attorney General of the United States.

11.      Plaintiff Joshua Schmidt is an adult resident of Illinois and a federal employee

within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Schmidt is a Customs and Border Protection Agent for the U.S. Department of Homeland Security ("DHS"). Mr. Schmidt is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Mr. Schmidt lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Alejandro Mayorkas, is his official capacity as the Secretary of the Department of Homeland Security.

12.     Plaintiff Melina Royer is an adult resident of Louisiana and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Royer is a Conservationist for the U.S. Department of Agriculture ("USDA"). Ms. Royer is also a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Ms. Royer lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Thomas J. Vilsack, in his official capacity as Secretary of Agriculture.

13.     Plaintiff Tamika Walls is an adult resident of Virginia and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Walls is a Senior Program Analyst for the U.S.  Department of Housing and Urban Development ("HUD"). Ms. Walls is also a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Ms. Walls lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Marcia L. Fudge, in her official capacity as Secretary of Housing and Urban Development.

14.     Plaintiff Jaime Espitia is an adult resident of Illinois and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Espitia is an Investigator for the

Occupational Safety and Health Administration ("OSHA"), an agency within the U.S. Department of Labor ("DOL"). Mr. Espitia is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Mr. Espitia lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Martin J. Walsh, in his official capacity as Secretary of Labor.

15.    Plaintiff Somer Stephens is an adult resident of Tennessee and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Stephens is a General Engineer for the U.S. Department of Energy ("DOE"). Ms. Stephens is also a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Ms. Stephens lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Jennifer N. Granholm, in her official capacity as Secretary of Energy.

16.    Plaintiff Alex Berne is an adult resident of Florida and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Berne is a Claims Specialist for the U.S. Social Security Administration ("SSA"). Mr. Berne is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Mr. Berne lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration.

17.    Plaintiff Alan Camp is an adult resident of Colorado and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Camp is a Project Manager for the U.S. General Services Administration ("GSA"). Mr. Camp is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs.

Mr. Camp lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Robin Carnahan, in her official capacity as Administrator of General Services Administration.

18.     Plaintiff Stephanie Perrotta is an adult resident of New York and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Perrotta is a Veterans and Military Crisis Line Social Service Assistant for the U.S. Department of Veterans Affairs ("VA"). Ms. Perrotta is also a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Ms. Perrotta lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Denis McDonough, in his official capacity as Secretary of Veteran Affairs

19.     Plaintiff Christopher Axtell is an adult resident of Iowa and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Axtell is an Operations Supervisor for Air Traffic Control within the U.S. Department of Transportation ("DOT").  Mr. Axtell is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Mr. Axtell lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Peter Buttigieg, in his official capacity as Secretary of Transportation.

20.     Plaintiff Grace Brown is an adult resident of Maryland and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Brown is a Management Analyst for the U.S. Department of Education ("DoED"). Additionally, Ms. Brown is also a devout Christian who cannot in morality receive the vaccine without compromising her closely held religious beliefs. Ms. Brown lodges all counts in this four (4) count Verified Complaint against

Defendants Joseph R. Biden, in his official capacity as President of the United States and Miguel Cardona, in his official capacity as Secretary of Education.

21.     Plaintiff Kristofor Hallfrisch is an adult citizen of the United States domiciled in the State of Texas and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Mr. Hallfrisch is a Special Agent for the U.S. Department of State ("DOS"). Mr. Hallfrisch is also a devout Christian who cannot in morality receive the vaccine without compromising his closely held religious beliefs. Because of his sincerely held religious beliefs, DOS granted Special Agent Hallfrisch a religious exemption and accommodation in accord with constitutional and federal statutory law and the provisions of E.O. 14043. Special Agent Hallfrisch's accommodation does not change his work environment, it does not impact his ability to dutifully perform the functions of his job, and otherwise impose no burden or undue hardship on his employer. DOS merely stated Special Agent Hallfrisch is to abide by CDC guidance. Despite this, however, President Biden and Secretary Blinken, by and through their officers, agents, or subordinates, have continued to engage in a relentless barrage of demands that Special Agent Hallfrisch provide information about his religion. However, on October 11, 2021, the Department of State attempted to revoke the exemption and accommodation to which he is lawfully entitled. Special Agent Hallfrisch lodges Count IV of this four (4) count Verified Complaint against Defendant Joseph R. Biden, in his official capacity as President of the United States and Secretary Blinken, in his official capacity as Secretary of State.

22.     Plaintiff Dorothy Morgan is an adult resident of Maryland and a federal employee within the meaning intended pursuant to E.O. 14043. Specifically, Ms. Morgan is a Training Administrator for the Bureau of Land Management, an agency within the U.S. Department of Interior ("DOI"). Ms. Morgan is also a devout Christian who cannot morally receive the vaccine

without compromising her closely held religious beliefs.  Ms. Morgan lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Debra Ann Haaland, in her official capacity as Secretary of the Interior.

23.     Plaintiff Andrew Soto is an adult resident of North Carolina and an active-duty service member within the meaning of the Vaccine Mandate Secretary Austin issued on August 24, 2021. Specifically, Mr. Soto is a First Lieutenant in the United States Marine Corps and a devout Christian who cannot morally receive the vaccine without compromising his closely held religious beliefs.  In light of his religious beliefs, First Lieutenant Soto submitted a request for a religious exemption four days later, on August 28, 2021; however, on September 29, 2021, the Department of the Navy denied First Lieutenant Soto's request. As such, First Lieutenant Soto lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Lloyd J. Austin III, in his official capacity as Secretary of Defense.

24.     Plaintiff Christopher Hall is an adult resident of Illinois and an active-duty service member within the meaning of the Vaccine Mandate Secretary Austin issued on August 24, 2021. Specifically, Mr. Hall is a Corporal in the United States Marine Corps and a devout Christian who cannot morally receive the vaccine without compromising his closely held religious beliefs. In light of his religious beliefs, Corporal Hall submitted a request for a religious exemption four days later, on August 28, 2021; however, on September 29, 2021, the Department of the Navy denied Corporal Hall's request. As such, Corporal Hall lodges all counts in this four (4) count Verified Complaint against Defendants Joseph R. Biden, in his official capacity as President of the United States and Lloyd J. Austin III, in his official capacity as Secretary of Defense.

## II.  DEFENDANTS

25.     Defendant Joseph R. Biden is the President of the United States, and he is sued in his official capacity. As President, Defendant Biden is the head of the federal government and Commander-in-Chief of the United States Armed Forces, and is responsible for enacting, implementing, and enforcing the Vaccine Mandates. On his first day in office, President Biden signed Executive Order 13991 ("E.O. 13991") and created the Safter Federal Workforce Task Force ("Task Force") which, under Defendant Biden's authority, promulgates and issues all policy-related guidance to the varies heads of the agencies defined by 5 U.S.C. § 105.

26.     Defendant Lloyd J. Austin III is the Secretary of the Department of Defense ("DoD") and he is sued in his official capacity. On or about August 24, 2021, Secretary Austin issued a DoD Order that operates as a blanket vaccination mandate for all active-duty service members and is responsible for overseeing and ensuring that his order complies with the United States Constitution and federal statutory law, including requirements that *inter alia* all active-duty military personnel are afforded their constitutional rights, including the right to freely exercise their religion.  Defendant Austin is also responsible for supervising all civilian DoD employees and the branches of the U.S. Armed Forces concerning the promulgation, implementation, and enforcement of the policies and regulations that govern military service in all branches of the U.S. Armed Services and Departments, including the Department of the Army, Department of the Navy,[5] and Department of the Air Force;[6] and for ensuring the legality of these policies and regulations. In this role, he is responsible for the maintenance and enforcement of the Departments of the Military, including all medical and records departments related to the Pentagon, DiLorenzo Clinic, or TRICARE program.

---

[5] The Department of the Navy has jurisdiction over the United States Marines Corps.
[6] The Department of the Air Force has jurisdiction over the United States Air Force and United States Space Force.

27.     Defendant Antony J. Blinken is the Secretary of State ("DOS") and he is sued in his official capacity. Secretary Blinken is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DOS. In this capacity, Secretary Blinken issued a directive, in accordance with E.O 14043, mandating that all DOS employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Blinken has taken steps to ensure that no DOS employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

28.     Defendant Janet Yellen is the Secretary of Treasury ("USDT") and she is sued in her official capacity. Defendant Yellen is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of USDT. In this capacity, Defendant Yellen issued a directive, in accordance with E.O 14043, mandating that all USDT employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Yellen has taken steps to ensure that no USDT employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

29.     Defendant Merrick B. Garland is the Attorney General of the United States and the head of the Department of Justice ("DOJ") and he is sued in his official capacity. Defendant Garland is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DOJ. In this capacity, Defendant Garland issued a directive, in accordance with E.O 14043, mandating that all DOJ employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task

Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Garland has taken steps to ensure that no DOJ employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

30.     Defendant Debra Ann Haaland is the Secretary of the Interior ("DOI") and she is sued in her official capacity. Defendant Haaland is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DOI. In this capacity, Defendant Haaland issued a directive, in accordance with E.O 14043, mandating that all DOI employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Haaland has taken steps to ensure that no DOI employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

31.     Defendant Thomas J. Vilsack is the Secretary of the Department of Agriculture ("USDA") and he is sued in his official capacity. Defendant Vilsack is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of USDA. In this capacity, Defendant Vilsack issued a directive, in accordance with E.O 14043, mandating that all USDA employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Vilsack has taken steps to ensure that no USDA employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

32.     Defendant Gina Raimondo is the Secretary of the Department of Commerce ("DOC") and she is sued in her official capacity. Defendant Raimondo is responsible for

implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DOC. In this capacity, Defendant Raimondo issued a directive, in accordance with E.O 14043, mandating that all DOC employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Raimondo has taken steps to ensure that no DOC employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

33.    Defendant Martin J. Walsh is the Secretary of the Department of Labor ("DOL") and he is sued in his official capacity. Defendant Walsh is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DOL. In this capacity, Defendant Walsh issued a directive, in accordance with E.O 14043, mandating that all DOL employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Walsh has taken steps to ensure that no DOL employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

34.    Defendant Xavier Becerra is the Secretary of the Department of Health and Human Services ("HHS") and he is sued in his official capacity. Defendant Becerra is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of HHS. In this capacity, Defendant Becerra issued a directive, in accordance with E.O 14043, mandating that all HHS employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Becerra has taken steps to

ensure that no HHS employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

35.     Defendant Marcia L. Fudge is the Secretary of the Department of Housing and Urban Development ("HUD") and she is sued in her official capacity. Defendant Fudge is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of HUD. In this capacity, Defendant Fudge issued a directive, in accordance with E.O 14043, mandating that all HUD employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Fudge has taken steps to ensure that no HUD employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

36.     Defendant Peter Buttigieg is the Secretary of the Department of Transportation ("DOT") and he is sued in his official capacity. Defendant Buttigieg is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DOT. In this capacity, Defendant Buttigieg issued a directive, in accordance with E.O 14043, mandating that all DOT employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Buttigieg has taken steps to ensure that no DOT employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

37.     Defendant Jennifer M. Granholm is the Secretary of the Department of Energy ("DOE") and she is sued in her official capacity. Defendant Granholm is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DOE. In

this capacity, Defendant Granholm issued a directive, in accordance with E.O 14043, mandating that all DOE employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Granholm has taken steps to ensure that no DOE employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

38.     Defendant Miguel Cardona is the Secretary of the Department of Education ("DoED") and he is sued in his official capacity. Defendant Cardona is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DoED. In this capacity, Defendant Cardona issued a directive, in accordance with E.O 14043, mandating that all DoED employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Cardona has taken steps to ensure that no DoED employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

39.     Defendant Denis McDonough is the Secretary of the Department of Veterans Affairs ("V.A.") and he is sued in his official capacity. Defendant McDonough is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of V.A. In this capacity, Defendant McDonough issued a directive, in accordance with E.O 14043, mandating that all V.A. employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant McDonough has taken steps to ensure that no V.A. employee receives an exemption from the Vaccine Mandate for lawful

reasons, whether religious, medical, or otherwise.

40.     Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security ("DHS") and he is sued in his official capacity. Defendant Mayorkas is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of DHS. In this capacity, Defendant Mayorkas issued a directive, in accordance with E.O 14043, mandating that all DHS employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Mayorkas has taken steps to ensure that no DHS employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

41.     Defendant Clarence W. Nelson II is the Administrator of the National Aeronautics and Space Administration ("NASA") and he is sued in his official capacity. Defendant Nelson is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of NASA. In this capacity, Defendant Nelson issued a directive, in accordance with E.O 14043, mandating that all NASA employees be inoculated against COVID-19 or before November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant Nelson has taken steps to ensure that no NASA employee receives an exemption from the Vaccine Mandate for lawful reasons, whether religious, medical, or otherwise.

42.     Defendant Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration ("SSA") and she is sued in her official capacity. Defendant Kijakazi is responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal employees of SSA. In this capacity, Defendant Kijakazi issued a directive, in accordance with E.O 14043, mandating

that all SSA employees be inoculated against COVID-19 or before November 22, 2021. As part

of that directive, and in whole, in part, or in conjunction with the Task Force's acts, omissions

pressures, instructions, directions, suggestions, or guidance, Defendant Kijakazi has taken steps to

ensure that no SSA employee receives an exemption from the Vaccine Mandate for lawful reasons,

whether religious, medical, or otherwise.

43.     Defendant Robin Carhahan is the Administrator of the General Services

Administration ("GSA") and she is sued in her official capacity. Defendant Carhahan is

responsible for implementing and enforcing the Vaccine Mandate for *inter alia* all federal

employees of GSA. In this capacity, Defendant Carhahan issued a directive, in accordance with

E.O 14043, mandating that all GSA employees be inoculated against COVID-19 or before

November 22, 2021. As part of that directive, and in whole, in part, or in conjunction with the Task

Force's acts, omissions pressures, instructions, directions, suggestions, or guidance, Defendant

Carhahan has taken steps to ensure that no GSA employee receives an exemption from the Vaccine

Mandate for lawful reasons, whether religious, medical, or otherwise.

## STATEMENT OF FACTS

## A.  THE FEDERAL VACCINE MANDATES

44.     On January 20, 2021, President Biden issued Executive Order No. 13991[7] ("E.O.

13991"), which *inter alia* established the Safer Federal Workforce Task Force ("Task Force")

Among other things, E.O. 13991 states the Task Force "shall provide ongoing guidance to heads

of agencies on the operation of the Federal Government . . . and shall address . . . vaccine

administration [and] . . . circumstances under which exemptions might appropriately be made to

agency policies in accordance with CDC guidelines, such as for mission-critical purposes." *Id.* §

---

[7] Exec. Order 13991, *see* Exhibit 1.

4(e)(ix), (xii).

45.    From his first day in office, as demonstrated in E.O. 13991, President Biden has revered CDC guidelines as the holy grail of not only medical authority–but *legal* authority, too. Indeed, the exemptions to agency policy should be promulgated in accordance with **the United States Constitution**, or at a minimum, federal statutory law.

46.    On August 24, 2021, the day after the FDA-approved the COMIRNATY COVID-19 vaccine (as discussed further below), Secretary Austin issued a DoD Order[8] requiring all active-duty servicemembers to be vaccinated against COVID-19 or face adverse employment action, up to and including dishonorable discharge.

47.    On September 9, 2021, President Biden signed Executive Order No. 14043[9] ("E.O. 14043"), which *inter alia* ordered all agencies to implement a program "requiring COVID-19 vaccination for all of its federal employees, with exceptions only as required by law"[10] (the "Vaccine Mandate"). In addition to making vaccination against COVID-19 a condition of employment for federal employees, E.O. 14043 also states, "the Task Force shall issue guidance within 7 days of the date of this order on agency implementation of this requirement for all agencies covered by this order."[11]

48.    On September 13, 2021, the Task Force published Guidance titled "COVID-19 Workplace Safety: Agency Model Safety Principles."[12] The Guidance, entirely devoid of any

---

[8] Sec. Austin, *Memorandum  for  SeniorPentagon Leadership Commanders of the Combatant Commands Defense Agency and DoD Field Activity Directors*, (Aug. 24, 2021); *see* Exhibit 2.
[9] Exec. Order 14043; *see* Exhibit 3.
[10] "Vaccine Mandate" shall mean "requiring COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." Exec. Order No. 14043, § 2, 88 F.R. 175 (Sept. 9, 2021).
[11] "Requirement" shall mean the directive that "the Task Force shall issue guidance within 7 days of the date of [E.O. 14043] on agency implementation of programs "requiring COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." *Id.*
[12] Safer Federal Workforce, *COVID-19 Workplace Safety: Agency Model Safety Principles*, WHITE HOUSE (Sept. 13, 2021); *see* Exhibit 4.

information as to religious exemptions: (1) sets a deadline of November 22 federal employees to be "fully vaccinated"; (2) reiterates the Biden Administration's policy for a "safer" federal workforce; and (3) delegates decision-making authority to the heads of each respective agency.[13]

49.   Indeed, the Task Force violated E.O. 14043 on its face by not including guidance as to exceptions as provided by law–but the egregiousness as to *why* the Task Force refused to give the agencies guidance is conscious shocking.

## B. THE TASK FORCE'S SCHEME TO CIRCUMVENT THE FIRST AMENDMENT AND DEPRIVE PLAINTIFF'S OF THEIR FREE EXERCISE OF RELIGION

50.   Since the day President Biden issued the Vaccine Mandate, hundreds of thousands of federal government employees have been in complete disarray.  Federal employees with serious, life-threatening conditions and others with sincerely held religious beliefs, such as Plaintiffs, have frantically sought guidance on how to obtain reasonable accommodations.

51.   Due to the rapidly approaching deadline and Defendants' full awareness that Plaintiffs have the fundamental right to engage in the free exercise of religion, Defendants concocted a scheme that imposes a "deadline" to submit religious exemption requests to help "evaluate the scope" of how many federal employees have sincerely held religious beliefs prohibiting compliance with the vaccine requirement. After determining the scope, the Task Force instructed the agencies to "collect information" through a questionnaire calculated to elicit information the agencies can then use as the basis for denying a respondent's exemption request.

52.   Video Footage from an October 8, 2021 Task Force Zoom call[14] involving nearly 200 high-level officials from various agencies reveals Samuel Berger, a former Senior Advisor in

---

[13] The term "agency" means an Executive agency as defined in 5 U.S.C. § 105 (excluding the Government Accountability Office). *Id.* at § 3.
[14] Samuel Berger, *COVID-19 Guidance Zoom Meeting*, SAFER FEDERAL WORKFORCE TASK FORCE (Oct. 8, 2021); *see* Exhibit 5.

the Obama Administration and the former Vice President of Democracy for John Podesta's Center for American Progress ("CAP") discussing the methodical approach each agency is to take when dealing with religious exemptions.

53.    The Task Force advised each agency[15] to establish a deadline which the agencies are not to enforce – because there is no deadline imposed on the fundamental right to freely exercise religion – but rather, to use as a "forcing function" that will induce all or nearly all federal employees with sincerely held religious beliefs to submit their requests.

54.    Once all or nearly all federal employees have submitted their religious exemption requests, the agencies, individually or in conjunction with the Task Force, can then "evaluate the scope" of how many federal employees wish to exercise their fundamental right to freely exercise their religion.

55.    The Task Force then directed the agencies to refrain from issuing any decisions, because "**once you grant an exemption to an individual in a job category, it is very hard to say that you're not going to grant [an exemption] to a similarly situated person.**"

56.    The Task Force further instructed the agencies to "**take their time**" and the agencies "**should not feel rushed that they have to take steps immediately**" because it is important to "**collect information**" on federal employees, such as Plaintiffs, whose sincerely held religious beliefs prohibit them from complying with the vaccine requirement.

57.    To collect this information, the Task Force advised it provided the agencies with a religious exemption form with questions that are intended to elicit information from federal employees seeking religious exemptions. The Task Force directed the agencies to "work bearing

---

[15] The term "agency" means an Executive agency as defined in 5 U.S.C. § 105 (excluding the Government Accountability Office). *See* Exec. Order No. 14043 at § 3. It does not include the White House ("WH"), Centers for Disease Control and Prevention ("CDC"), the National Institute of Health ("NIH").

in mind that **a fair bit of thought went into the range of questions and the kind of information that [the questions] would provide**." The Task Force then gives the agencies authority to refuse to provide accommodations under whatever circumstances each agency so chooses.

58.     Rather than advising the agencies under what circumstances the refusal to provide an accommodation would constitute a violation of federal law or deprivation of fundamental rights, the Task Force merely emphasized how important it is for the agencies to "figure[e] it out as quickly as possible . . . because [the agencies are] not going to run an accommodation in those places–and that's totally fine."

59.     As a result, Defendants have either failed to implement a process by which Plaintiffs and other federal employees are able to submit religious exemptions or implemented a process for Plaintiffs to provide information to Defendants to which they are not entitled in violation of current EEOC Guidance, federal statutory law, and Plaintiffs' fundamental First Amendment right to engage in the free exercise of religion.

## C.  PLAINTIFFS' RELIGIOUS EXEMPTION REQUESTS

60.     On October 12, 2021, Mr. Church submitted to HHS a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Mr. Church articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Church has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for HHS or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Mr. Church is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident, including working from

home just as he has for the last 584 consecutive days. With such accommodations, Mr. Church remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity, and the aforesaid reasonable accommodation does not pose an undue hardship on his employer. Despite this, Mr. Church's request for a religious exemption and accommodation has not been approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Executive Order 14043.

61.     On October 12, 2021, Mrs. Church submitted to the DoD a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Mrs. Church articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Mrs. Church has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the DoD or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Mrs. Church is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident, including working from home with minimal on-site visits where she wears a mask and socially distances. With such accommodations, Mrs. Church remains fully capable of performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Mrs. Church's request for a religious exemption and accommodation has

not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

62.     On September 29, 2021, Special Agent Hallfrisch submitted to the Deputy Chief of Mission of his assigned post at the U.S. Embassy in Djibouti a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Mr. Hallfrisch articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Hallfrisch has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for DOS or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Special Agent Hallfrisch is amenable to continuing to work in the environment he has worked since the outset of the pandemic, which he has done for nearly two years without incident. In fact, in July 2020, DOS even relocated Special Agent Hallfrisch and his family to Addis Ababa, Ethiopia on a commercial flight and then transported them to Djibouti on a private flight because the Djibouti airport remained closed due to the pandemic. Being that DOS went so far as to fund and utilize private air travel into a closed airport to accommodate Special Agent Hallfrisch, it is without a doubt that DOS can easily accommodate Special Agent Hallfrisch now–and indeed, DOS has done so. On September 29, 2021, the Deputy Chief of Mission at the U.S. Embassy in Djbouti informed Special Agent Hallfrisch that his religious exemption request had been approved:

*Exemption Request Approval Top of Next Page*

**From:**      Tomaszewicz, Andrea J (Djibouti)
**To:**        Hallfrisch, Kristofor R (Djibouti)
**Subject:**   RE: Request for Reasonable Accommodation
**Date:**      Wednesday, September 29, 2021 4:47:13 PM

Dear Kris,

I approve your request for an exemption to the vaccine requirement.  As part of this reasonable accommodation, I request that you follow CDC guidance for unvaccinated individuals.  Should there be a situation where post guidance differs from CDC guidance, you and I will discuss on a case-by-case basis.

Please let me know if you have any questions or concerns.

Andrea


*Andrea J. Tomaszewicz*
*Deputy Chief of Mission*
*U.S. Embassy Djibouti*
tomaszewiczaj@state.gov
+253 ██████ (office)
+253 ██████ (mobile)
██████ (IVG)

Special Agent Hallfrisch is fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity and the reasonable accommodation he has received clearly does not pose an undue hardship on his employer. Since October 11, 2021, however, President Biden and Secretary Blinken, by and through their directors, officers, agents, or subordinates, have engaged in a series of retaliatory and harassing behavior demanding to obtain irrelevant medical and religious information to which they are not lawfully entitled. As a result, and despite having a religious exemption that accommodates his religious beliefs, Special Agent Hallfrisch, imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising his sincerely held religious beliefs.

63.      On October 8, 2021, Ms. Brown submitted to the DoED a request for religious

exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Brown articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Brown has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the DoED or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Brown is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. Ms. Brown rarely if ever interacts with others in person and if necessary, would be willing to self-check symptoms, wear a mask and social distance.  With such accommodations, Ms. Brown remains fully capable of performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Ms. Brown's request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

64.     Following the issuance of President Biden's Vaccine Mandate, Ms. Gonzalez submitted to the USDT a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Gonzalez articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Gonzalez has never exhibited or demonstrated

any behavior, and no factors exist, that give rise to an objective basis for the USDT or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Gonzalez is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Ms. Gonzalez remains fully capable of performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Ms. Gonzalez's request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

65.    On October 7, 2021, Ms. Barnwell submitted to the DOC a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Barnwell articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Barnwell has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the DOC or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Barnwell is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Ms. Barnwell remains fully capable of performing the

essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Ms. Barnwell's request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

66.     On October 14, 2021, Mr. Czerwinski submitted to NASA a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Mr. Czerwinski articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Czerwinski has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for NASA or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Mr. Czerwinski is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident. Since March 2020, Mr. Czerwinski has worked from home. When he is required to go on-site, Mr. Czerwinski has worn a mask, socially distanced, and wash his hands frequently. With such accommodations, Mr. Czerwinski remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity, and the aforesaid reasonable accommodation does not pose an undue hardship on his employer. Despite this, Mr. Czerwinski's request for a religious exemption and accommodation has not been

approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Executive Order 14043.

67.     On September 24, 2021, Special Agent Coffey submitted to the DOJ a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Special Agent Coffey articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Special Agent Coffey has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the DOJ or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Special Agent Coffey is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Special Agent Coffey remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity and the reasonable accommodation he has requested does not pose an undue hardship on his employer. Despite this, Special Agent Coffey's request for a religious exemption and accommodation has not been approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Executive Order 14043.

68.     Following the issuance of President Biden's Vaccine Mandate, Mr. Schmidt submitted to DHS a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Mr. Schmidt articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Schmidt has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for DHS or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Mr. Schmidt is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Mr. Schmidt remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity and the reasonable accommodation he has requested does not pose an undue hardship on his employer. Despite this, Mr. Schmidt's request for a religious exemption and accommodation has not been approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Executive Order 14043.

69.     Following the issuance of President Biden's Vaccine Mandate, Ms. Royer submitted to the USDA a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Royer articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Royer has never exhibited or demonstrated

any behavior, and no factors exist, that give rise to an objective basis for the USDA or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Royer is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Ms. Royer remains fully capable of performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Ms. Royer's request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

70.     Following the issuance of President Biden's Vaccine Mandate, Ms. Walls submitted to HUD a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Walls articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Walls has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for HUD or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Walls is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Ms. Walls remains fully capable of

performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Ms. Walls' request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

71.     Following the issuance of President Biden's Vaccine Mandate, Mr. Espitia submitted to DOL a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Mr. Espitia articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Espitia has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for DOL or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Mr. Espitia is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Mr. Espitia remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity and the reasonable accommodation he has requested does not pose an undue hardship on his employer. Despite this, Mr. Espitia's request for a religious exemption and accommodation has not been approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional

opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Executive Order 14043.

72. Following the issuance of President Biden's Vaccine Mandate, Ms. Stephens submitted to DOE a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Stephens articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Stephens has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for DOE or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Stephens is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Ms. Stephens remains fully capable of performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Ms. Stephens' request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

73. Following the issuance of President Biden's Vaccine Mandate, Mr. Berne submitted to SSA a request for religious exemption from the Vaccine Mandate as an

accommodation of his sincerely held beliefs. Mr. Berne articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Berne has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for SSA or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Mr. Berne is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Mr. Berne remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity and the reasonable accommodation he has requested does not pose an undue hardship on his employer. Despite this, Mr. Berne's request for a religious exemption and accommodation has not been approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Executive Order 14043.

74.     Following the issuance of President Biden's Vaccine Mandate, Mr. Camp submitted to the GSA a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Mr. Camp articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Camp has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the GSA or any entity within the federal government to question either the nature or the sincerity of his religious beliefs,

observances, or practices. Mr. Camp is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Mr. Camp remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity and the reasonable accommodation he has requested does not pose an undue hardship on his employer. Despite this, Mr. Camp's request for a religious exemption and accommodation has not been approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Executive Order 14043.

75.    Following the issuance of President Biden's Vaccine Mandate, Ms. Perrotta submitted to the VA a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Perrotta articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Perrotta has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the VA or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Perrotta is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Ms. Perrotta remains fully capable of performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does

not pose an undue hardship on her employer. Despite this, Ms. Perrotta's request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

76.     Following the issuance of President Biden's Vaccine Mandate, Mr. Axtell submitted to DOT a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Mr. Axtell articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. Mr. Axtell has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for DOT or any entity within the federal government to question either the nature or the sincerity of his religious beliefs, observances, or practices. Mr. Axtell is amenable to continuing to work with the reasonable accommodations in place and within which he has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Mr. Axtell remains fully capable of performing the essential functions and duties of his job without compromising the safety of the federal workforce or his productivity and the reasonable accommodation he has requested does not pose an undue hardship on his employer. Despite this, Mr. Axtell's request for a religious exemption and accommodation has not been approved, and he imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from

complying with Executive Order 14043.

77.     Following the issuance of President Biden's Vaccine Mandate, Ms. Morgan submitted to DOI a request for religious exemption from the Vaccine Mandate as an accommodation of her sincerely held beliefs. Ms. Morgan articulated that she has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Ms. Morgan has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the DOI or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Ms. Morgan is amenable to continuing to work with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Ms. Morgan remains fully capable of performing the essential functions and duties of her job without compromising the safety of the federal workforce or her productivity and the reasonable accommodation she has requested does not pose an undue hardship on her employer. Despite this, Ms. Morgan's request for a religious exemption and accommodation has not been approved, and she imminently faces severe adverse employment action including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs prohibiting her from complying with Executive Order 14043.

78.     Following the issuance of Secretary Austin's Vaccine Mandate, First Lieutenant Soto submitted to the Department of the Navy a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. First Lieutenant Soto articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel her to

abstain from receiving any of the currently available COVID-19 vaccines. First Lieutenant Soto has never exhibited or demonstrated any behavior, and no factors exist, that give rise to an objective basis for the Department of the Navy or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. First Lieutenant Soto is amenable to continuing to serving with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, First Lieutenant Soto remains fully capable of performing the essential functions and duties of his job without compromising the safety or readiness of the U.S. Armed Forces and the reasonable accommodation he has requested does not pose an undue hardship on the Department of the Navy, Department of Defense, or United States Armed Forces. Despite this, on October 10, 2021, First Lieutenant Soto's request for a religious exemption was denied. As a result, First Lieutenant Soto has suffered, and continues to suffer irreparable harm as his fundamental rights have been deprived, or at a minimum, are imminently guaranteed to be deprived, resulting in severe adverse employment action being taken against him including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Secretary Austin's August 24, DoD Order.

79.     Following the issuance of Secretary Austin's Vaccine Mandate, Corporal Hall submitted to the Department of the Navy a request for religious exemption from the Vaccine Mandate as an accommodation of his sincerely held beliefs. Corporal Hall articulated that he has exercised and continues to exercise sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. Corporal Hall has never exhibited or

demonstrated any behavior, and no factors exist, that give rise to an objective basis for the Department of the Navy or any entity within the federal government to question either the nature or the sincerity of her religious beliefs, observances, or practices. Corporal Hall is amenable to continuing to serving with the reasonable accommodations in place and within which she has worked for nearly two years since the outset of the pandemic without incident. With such accommodations, Corporal Hall remains fully capable of performing the essential functions and duties of his job without compromising the safety or readiness of the U.S. Armed Forces and the reasonable accommodation he has requested does not pose an undue hardship on the Department of the Navy, Department of Defense, or United States Armed Forces. Despite this, on September 29, 2021, Corporal Hall's request for a religious exemption was denied. As a result, Corporal Hall has suffered, and continues to suffer irreparable harm as his fundamental rights have been deprived, or at a minimum, are imminently guaranteed to be deprived, resulting in severe adverse employment action being taken against him including without limitation, reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs prohibiting him from complying with Secretary Austin's August 24, DoD Order.

## D.  PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS

80.    As stated above, all Plaintiffs have sincerely held religious beliefs, as rooted in Scripture, that preclude them from complying with the Vaccine Mandate because of the connections between the available COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing, or other inputs. Plaintiffs also have sincerely held religious beliefs, rooted in Scripture, that their bodies are temples of the Holy Spirit and that they cannot place anything into their Temples without confirmation and

conviction from the Holy Spirit.

81.    A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is the murder of an innocent life and a grave sin against God.

82.    Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." 2 Timothy 3:16 (KJV).

83.    Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

84.    Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to birth, and that because of this, life is sacred from the moment of conception to natural death. See Psalm 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); Psalm 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them"); Isaiah 44:2 (ESV) ("Thus says the LORD who made you, who formed you from the womb"); Isaiah 44:24 (ESV) ("Thus says the LORD, your Redeemer, who formed you from the womb: 'I am the Lord, who made all things '"); Isaiah 49:1b (ESV) ("The LORD called me from the womb, from the body of my mother he named my name."); Isaiah 49:5 (ESV) ("And now the LORD says, he who formed me from the womb to be his servant"); Jeremiah 1:5 (ESV) ("'Before I formed you in the womb I knew you, and before you were born I consecrated you; I appointed you a prophet to the nations.'").

85.     Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because each is made in the image of God. See Genesis 1:26–27 (ESV) ("Then God said, 'Let us make man in our image, after our likeness So God created man in his own image, in the image of God he created him; male and female he created them.'" (Footnote omitted)).

86.     Plaintiffs have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. See, e.g., Exodus 20:13 (ESV) ("'You shall not murder.'"); Exodus 21:22–23 (ESV) (imposing death penalty for killing of an unborn child); Exodus 23:7 (ESV) ("'[D]o not kill the innocent and righteous '"); Genesis 9:6 (ESV) ("'Whoever sheds the blood of man, by man shall his blood be shed, for God made man in his own image.'"); Deuteronomy 27:25 (ESV) ("Cursed be anyone who takes a bribe to shed innocent blood." (Internal quotation marks omitted)); Proverbs 6:16–17 (ESV) ("There are six things that the LORD hates, seven that are an abomination to him: . . . hands that shed innocent blood").

87.     Abortion is the modern-day sacrifice of children made in the image of God. Plaintiffs do not want to be part of such an "abomination." They do not want indirectly or directly to be in any way associated with abortion. To do so is abhorrent, loathsome, detestable, abominable to God. In short, to require these employees to inject a substance into their bodies that has any association (no matter how near or remote to abortion) is a sin against their Creator, their Lord, and their Savior.

88.      Plaintiffs also believe in the fundamental Christian teaching of therapeutic proportionality, which is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including, psychological, and spiritual bodily goods.

89.     It can also extend to the good of others and the common good, which likewise entail spiritual and moral dimensions and are not reducible to public health.

90.     The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention in the concrete circumstances, not by public health authorities or by other individuals who might judge differently in their own situations.

91.     Plaintiffs' religious beliefs compel them to not condone, support, justify, or benefit (directly or indirectly) from the taking of innocent human life via abortion, and that to do so is sinning against God.

92.     Plaintiffs' sincerely held religious beliefs preclude them from accepting any one of the three currently available COVID-19 vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

E.   PFIZER'S COMIRNARY® & PFIZER-BIONTECH VACCINES

93.      On August 23, 2021, the FDA approved Pfizer's COMIRNATY® (COVID-19 vaccine, mRNA) ("COMIRNATY"), which is legally distinguishable from the Pfizer-BioNTech vaccine ("BioNTech") as evidenced by the FDA's COMIRNATY vaccine approval announcement published on August 23, 2021.

94.     The FDA approval letter only states that COMIRNATY is FDA-approved; Pfizer-BioNTech, is not, nor has it ever been approved by the FDA.

95.     It could not be clearer that BioNTech is not FDA-approved and therefore, the vaccine remains subject to the EUA provisions of the federal Food, Drug, and Cosmetic Act ("FDCA").

96.     As a result, a mass misinformation campaign has construed the two legally distinct vaccines to be considered by the public at-large as a single "Pfizer vaccine" – this is not correct.

97.     The two Pfizer vaccines are legally distinct and include differences. For example, the two vaccines have different number of ingredients: COMIRNATY has eleven (11) ingredients while Pfizer-BioNTech has just ten (10) ingredients.



FDA    https://www.fda.gov/media/151733/download

**Table 2. Composition of COMIRNATY Multiple Dose Vial**

| Ingredients | Quantity after Dilution (per vial) | Function |
|---|---|---|
| SARS-CoV-2 spike glycoprotein mRNA (UNII: 5085ZFP6SJ) | 225 µg | Active Ingredient |
| (b) (4) [4-hydroxybutyl)azanediyl)bis (hexane-6,1-diyl)bis(2-hexyldecanoate) (UNII: (b) (4) | 3.23 mg | Lipid component |
| (b) (4) [2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide] (UNII: (b) (4) ) | 0.4 mg | Lipid component |
| DSPC [1,2-distearoyl-sn-glycero-3-phosphocholine] (UNII: 043IPI2M0K) | 0.7 mg | Lipid component |
| Cholesterol (UNII: 97C5T2UQ7J) | 1.4 mg | Lipid component |
| Potassium chloride (UNII: 660YQ98I10) | 0.07 mg | Excipient |
| Monobasic potassium phosphate (UNII: 4J9FJ0HL51) | 0.07 mg | Excipient |
| Sodium Chloride (UNII: 451W47IQ8X) | 2.7 mg | Excipient |
| Dibasic sodium phosphate dihydrate (UNII: GR686LBA74) | 0.49 mg | Excipient |
| Sucrose (UNII: C151H8M554) | 46.0 mg | Excipient |
| (b) (4) (UNII: (b) (4) ) | 0.450 mL | Excipient |

UNII: Unique Ingredient Identifier

98.     As you can see in the below graph, 0.45mg of the 2.25mg (20%) of ingredients contained in a COMIRNATY vial has been sanitized.

99.     The approval announcement posted on the FDA's website reads, "On August 23, 2021, the FDA approved the first COVID-19 vaccine. The vaccine has been known as the Pfizer-BioNTech COVID-19 Vaccine, and will now be marketed as COMIRNATY, for the prevention of COVID-19 disease in individuals 16 years of age and older."[16]

100.     While Pfizer's COMIRNATY approval letter states that its two vaccines share the same formulation, the FDA concedes that "the products are **legally distinct** with *certain differences* . . ." *Id.* (emphasis added).

---

[16] *See supra,* fn XXX

101.    To date, no entity has revealed, nor have Plaintiffs been able to obtain, any evidence indicating what those "certain differences" may be. Despite this, the FDA asserts that the two formulations can be used interchangeably.

102.    For example, in the FDA's fact sheet[17] for recipients and caregivers, for example, it reads, "The FDA-approved COMIRNATY (COVID-19 Vaccine, mRNA) and the FDA-authorized Pfizer-BioNTech COVID-19 Vaccine under Emergency Use Authorization (EUA) have the same formulation and can be used interchangeably to provide the COVID-19 vaccination series."

103.    In a press release[18] announcing Pfizer's collaboration with Brazil's Eurofarma to manufacture COVID-19 vaccine doses, Pfizer wrote, "COMIRNATY® (COVID-19 Vaccine, mRNA) is an FDA-approved COVID-19 vaccine made by Pfizer for BioNTech" and "Pfizer-BioNTech COVID-19 Vaccine has received EUA from FDA." The press release continued, stating, "This emergency use of the product has not been approved or licensed by FDA, but has been authorized by FDA under an Emergency Use Authorization (EUA) to prevent Coronavirus Disease 2019 (COVID-19) . . .". *Id.*

104.    Then, in a September 6, 2021 press release[19] announcing a submittal to a request by the European Medicines Agency (EMA) to update its Conditional Marketing Authorization (CMA) for a booster dose, BioNTech–Pfizer's co-partner in the production of the Pfizer-BioNTech COVID-19 vaccine–clearly states, "The Pfizer-BioNTech COVID-19 vaccine has not been

---

[17] The Food and Drug Administration, *Vaccine Information Fact Sheet for Recipients and Caregivers about COMIRNATY (COVID-19 Vaccine, mRNA) and Pfizer-BioNTech COVID-19 Vaccine to Prevent Coronavirus Disease 2019 (COVID-19)* (Aug. 23, 2021), available at: https://www.fda.gov/media/144414/download.

[18] Pfizer, *Pfizer and BioNTech Announce Collaboration with Brazil's Eurofarma to Manufacture COVID-19 Vaccine Doses for Latin America* (Aug. 26, 2021), available at: https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-announce-collaboration-brazils.

[19] Press Release, *Pfizer and BioNTech Submit a Variation to EMA with the Data in Support of a Booster Dose of COMIRNATY®*, BIONTECH (Sept. 6, 2021), available at: https://investors.biontech.de/node/10581/pdf.

approved or licensed by the U.S. Food and Drug Administration (FDA), but has been authorized for emergency use by FDA under an Emergency Use Authorization (EUA) to prevent Coronavirus Disease 2019 (COVID-19) . . .". *Id.*

105.    The product's labeling is even indicative that the vaccines are distinguishable. In a letter addressed to Pfizer, the FDA stated, "The Pfizer-BioNTech COVID-19 Vaccine vial label and carton labels are clearly marked for 'Emergency Use Authorization.'"[20]




106.    Mindful of this new marketing change, the FDA included specific language in its August 23 letter to Pfizer distinguishing the two vaccines, stating "the licensed vaccine (COMIRNATY) has the same formulation as the EUA-authorized vaccine (Pfizer-BioNTech) and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns." *Id.* This is not true.

---

[20] Food and Drug Administration, Pfizer-BioNTech COVID-19 EUA LOA reissued August 23, 2021, (Aug. 23, 2021), available at: https://www.fda.gov/media/150386/download

107.   According to the CDC, "the FDA approved the licensure of COMIRNATY (COVID-19 Vaccine, mRNA), made by Pfizer for BioNTech."[21] The ***FDA did not approve*** the Pfizer-BioNTech vaccine. Despite full knowledge that the BioNTech vaccine is not FDA-approved, the CDC nevertheless stated that, because "[t]he FDA-approved Pfizer-BioNTech product COMIRNATY and the FDA-authorized Pfizer-BioNTech COVID-19 vaccine have the same formulation[,] [the two vaccines] can be used interchangeably to provide the COVID-19 vaccination series . . .". As a result, the CDC has advised:

> [V]accination providers can use doses distributed under EUA [(e.g., the non-FDA approved Pfizer-BioNTech vaccine)] to administer the vaccination series as if the doses were the licensed vaccine.[22]

108.   The CDC is wrong.  The EUA statute, 21 U.S.C. § 360bbb-3, explicitly states that anyone to whom an EUA product is administered **must be informed of the option to accept or to refuse it**, as well as alternatives to the product and the risks and benefits of receiving it.

109.   The CDC's erroneous assertion that "vaccination providers can use doses distributed under EUA to administer the vaccination series as if the doses were the licensed vaccine" fails to appreciate perhaps the most consequential difference between COMIRNATY and Pfizer-BioNTech: **their current availability**.

110.   The FDA's COMIRNATY approval letter facially states, the CDC: (1) explicitly distinguishes the COMIRNATY and BioNTech vaccines; (2) expressly distinguishes that COMIRNATY is approved and BioNTech is not FDA-approved but under EUA; (3) asserts that COMIRNATY and BioNTech have the same "formulation"; (4) alleges that BioNTech can be used interchangeably with COMIRNATY despite "certain differences" existing between the two

---

[21] Centers for Disease Control and Prevention, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, (last visited Sept. 15, 2021), available at: https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html.
[22] *Id.*

different vaccines; and then with abject audacity, advises that "**[a]lthough COMIRNATY is approved** . . . **there is not sufficient approved vaccine available for distribution** to this population in its entirety at the time of reissuance of [the BioNTech] EUA.".

111.    In unequivocal terms, the FDA has made it expressly clear: "There is no adequate, approved, and available alternative **to the emergency use** of [the BioNTech] COVID-19 Vaccine to prevent COVID-19."

112.    The only vaccine that has received FDA approval is COMIRNATY, yet COMIRNATY is unavailable. No FDA-approved COVID-19 vaccine is available.

## F.  IRRESPECTIVE OF FDA APPROVAL, NONE OF THE CURRENTLY AVAILABLE COVID-19 VACCINES COULD EXIST BUT-FOR THE USE OF ABORTED FETAL CELL TISSUE

113.    Use of tissue procured from aborted fetuses is not new. It has been adjudicated that bioprocurement companies have, in fact, sold fetal tissue in violation of federal law.

114.    On July 15, 2015, the United States House of Representatives Energy and Commerce Committee and House Judiciary Committee opened investigations into illegal fetal tissue procurement practices.[23] On August 14, 2015, the House Oversight and Government Reform Committee initiated a third investigation.[24] On October 7, 2015, and as a means to consolidate the three House investigations into one, the House created a Select Investigative Panel within the Energy and Commerce Committee.[25] The Senate Judiciary Committee also initiated its own investigation, which it conducted contemporaneously and independent of the consolidated House

---

[23]  Press Release, House Energy and Commerce Committee, Energy and Commerce Committee Launches Investigation Following "Abhorrent" Planned Parenthood Video (Jul. 15, 2015) *see also* Press Release, House Judiciary Committee, Chairman Goodlatte Announces House judiciary Committee Investigation into Horrific Abortion Practices (Jul. 15, 2015).

[24]Letter from Jason Chaffetz, Chariman, Committee on Oversight and Government Reform, *et al.*, to Cecile Richards, President, Planned Parenthood Federation of America, Inc. (Aug. 14, 2015).

[25]Wesley Lowery & Mike DeBonis, *Boehner: There will be no government shutdown; select committee will probe Planned Parenthood*, WASHINGTON POST (Sep. 27, 2015), available at: https://wapo.st/2QxxdDR.

investigation.[26]

115.     The two Congressional investigations concluded in December 2016[27] after both, the House and Senate independently concluded that many actors within the abortion industry had committed systemic violations of the law.[28] Due to these findings, the House Select Investigative Panel and Senate Judiciary Committee issued numerous criminal and regulatory referrals to federal, state, and local law enforcement entities, including for several abortion providers and fetal tissue procurement companies.

116.     In October 2016, the Orange County, California, District Attorney initiated a civil prosecution against DV Biologics and DaVinci Biosciences for illegally re-selling fetal tissue the companies obtained from Planned Parenthood of Orange and San Bernardino Counties ("PP-Orange").[29]   The successful prosecution resulted in a stipulated judgment in which both companies admitted to selling fetal body parts obtained from PP-Orange for profit. The parties also agreed to pay $7.8 million for violating state and federal laws.[30]

117.     In December 2016, the Texas Health and Human Services Division ("Texas HHS") issued a Final Notice of Termination to Planned Parenthood Gulf Coast ("PP-Gulf Coast") based in Houston that terminated its enrollment in the Texas Medicaid program. According to Texas HHS, the termination was based on two factors: (1) footage of CMP's visit to the PP-Gulf Coast clinic revealing that PP-Houston would modify procedures in order to sell tissue; and (2) the U.S.

---

[26] *Id.*

[27] *Id.*

[28] Select Investigative Panel of the Energy & Commerce Committee, FINAL REPORT (Dec. 30, 2016); *see also* Majority Staff Of S. Comm. On The Judiciary, 114TH CONG., Human Fetal Tissue Research: Context and Controversy, S. DOC. No. 114-27 (2d Sess. 2016).

[29] *See* Complaint, *The People of the State of California v. DV Biologics, LLC*, Orange Cnty. No. 30-2016-00880665-CU-BT-CJC (Cal. Super., Oct. 11, 2016).

[30] *See* Judgment, *The People of the State of California v. DV Biologics, LLC*, Orange Cnty. No. 30-2016-00880665-CU-BT-CJC (Cal. Super., Dec. 19, 2017).

House investigation's conclusion that PP-Houston had repeatedly lied to it.[31]

118.    In January 2017, the Attorney General of Arizona initiated a civil prosecution against abortion provider, Jackrabbit Family Medicine, P.C. ("Camelback Family Planning") for illegally transferring fetal tissue to StemExpress, LLC, a California-based bioprocurement company.[32] The prosecution was successful, and the Arizona Attorney General determined that the consent formed used by StemExpress were deficient because:

> The consent forms did not state certain facts regarding StemExpress's business. . . . The consent forms [] did not state that, under the agreement [Camelback Family Planning] had entered into with StemExpress in addition to supplying the collection tubes and paying the costs of shipping the samples to StemExpress, StemExpress would pay [Camelback Family Planning] set amounts from $75–250 for each blood and tissue sample provided. [33]

119.    As part of the settlement, Camelback Family Planning was required to return all payments received it received from StemExpress and agree it would refrain from selling fetal tissue in the future.[34] Camelback Family Planning ultimately returned the money it received from StemExpress in exchange for *inter alia* fetal tissues.[35]

120.    Fetal tissue has a long history of being procured and sold and it is not subject to dispute that HEK-293 and PER.C6 fetal cell lines were used in the development and testing of the three (3) available COVID-19 vaccines.

121.    As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine

---

[31] Letter from Stuart W. Bowen, Jr., Inspector General, Texas Health & Human Services Commission, to Planned Parenthood Gulf Coast, et al. (Dec. 20, 2016).

[32] *See* Complaint, *State of Arizona v. Jackrabbit Family Medicine, P.C.*, Maricopa Cnty. No. CV2017-000863 (Ariz. Super., Jan. 19, 2017).

[33] *See* Assurance of Discontinuance, *State of Arizona v. Jackrabbit Family Medicine, P.C.*, Maricopa Cnty. No. CV2017-000863 (Ariz. Super., Jan. 19, 2017).

[34] *Id.*

[35] *Id.*

produced by Johnson & Johnson did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine."[36]

122.    The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine used the PER.C6 fetal cell line, which "is a retinal cell line that was isolated from a terminated fetus in 1985."[37]

123.    Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine.[38]

124.    The same is true of the Moderna and Pfizer-BioNTech mRNA vaccines. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their mRNA vaccines.[39]

125.    The North Dakota Department of Health likewise confirms: "Early in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS- CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein."[40]

126.    The Chief Scientific Officer and Senior Director of Worldwide Research for Pfizer have also been reported to demonstrate that its COVID-19 vaccine is derived from aborted fetal

---

[36] See North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines (Apr. 20, 2021), available at: https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf.

[37] La. Dep't of Public Health, You Have Questions, We Have Answers: COVID-19 Vaccine FAQ (Dec. 21, 2020), available at: https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID19_Vaccine_FAQ.pdf. emphasis added).

[38] Meredith Wadman, Vaccines that use human fetal cells draw fire, Science (June 12, 2020), available at: https://science.sciencemag.org/content/368/6496/1170.full.

[39] See La. Dep't of Public Health, supra fn. 29.

[40] N.D. Health, supra fn. 28 (emphasis added).

cells and have made statements that they wanted to keep that information from the public.[41]

127.   Specifically, Vanessa Gelman, Pfizer Senior Director of Worldwide Research: "From the perspective of corporate affairs, we want to avoid having the information on fetal cells floating out there…The risk of communicating this right now outweighs any potential benefit we could see, particularly with general members of the public who may take this information and use it in ways we may not want out there. We have not received any questions from policy makers or media on this issue in the last few weeks, so we want to avoid raising this if possible." *Id*.

128.   And, Philip Dormitzer, Pfizer's Chief Scientific Officer is reported as saying that he wanted to keep the information secret because of the objections that pro-life individuals, such as Plaintiffs in this action, would have: "HEK293T cells, used for the IVE assay, are ultimately derived from an aborted fetus. On the other hand, the Vatican doctrinal committee has confirmed that they consider it acceptable for Pro-Life believers to be immunized. Pfizer's official statement couches the answer well and is what should be provided in response to an outside inquiry." *Id*.

129.   Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

//

//

---

[41] *See* PFIZER LEAKS: Whistleblower Goes On Record, Reveals Internal Emails from Chief Scientific Officer & Senior Director of Worldwide Research Discussing COVID Vaccine ... 'We Want to Avoid Having the Information on the Fetal Cells Floating Out There', ProjectVeritas (Oct. 6, 2021), available at: www.projectveritas.com/news/pfizer-leaks-whistleblower-goes-on-record-reveals-internal-emails-from-chief/.

### G. PLAINTIFFS' AMENABILITY TO LESS RESTRICTIVE ALTERNATIVES THAT COMPORT WITH THEIR RELIGIOUS BELIEFS & ACHIEVE THE SAME GOAL SOUGHT TO BE ACHIEVED BY VACCINATION

130.    Plaintiffs have offered, and are ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the Vaccine Mandate.

131.    Plaintiffs have, and continue to, engage in a variety of mitigation strategies to stem, if not entirety prevent, the spread of COVID-19, which is the very objective of the Vaccine Mandate. While engaged in these accommodating mitigation strategies, Plaintiffs dutifully fulfilled their employment obligations to, at minimum, a satisfactory standard.

132.    Mr. Church has worked from home for 584 consecutive days. Ms. Morgan, since the beginning of her employment, has worked exclusively from home and has only ever visited a physical federal office location on two occasions–once, to get a battery in her government-provided computer replaced, and then a second time to replace the entire computer itself. Mr. Czerwinski, who works from home the majority of the time, frequently washes his hands and wears a mask while socially distancing whenever on-site work is required. The number of reasonable accommodations that do not impose an undue hardship and are less restrictive than the blanket Vaccine Mandate could be articulated at nauseum. Despite this, Plaintiffs continue to remain open to reasonable accommodations in lieu of being forced to choose which fundamental right is most important to them: (1) freely exercising their religion; (2) pursuing the careers of their choosing; or (3) succumb to the unwanted injection of a medication, such as a vaccine, into their nonconsenting bodies.

133.    The accommodations which have been ongoing for nearly two years are certainly reasonable under the accumulating scientific evidence. Indeed, a preliminary study has shown that

in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated

people just as if they were not vaccinated at all. The virus that grows is just as infectious as that in

unvaccinated people, meaning vaccinated people can transmit the virus and infect others.[42]

## H.  DEPT. OF DEFENSE MISREPRESENTATIONS, FALSIFICATION OF MEDICAL RECORDS, & BLANKET DENIALS OF RELIGIOUS EXEMPTION REQUESTS

134.    On August 23, 2021, the FDA admitted that "[a]lthough COMIRNATY is approved

. . . **there is not sufficient approved vaccine available for distribution . . .".**[43]

135.    Despite this, on August 27, 2021, Captain Rylan Commins received an email[44] in

which Marine Lieutenant Alys Jordan, a HMLA-267 Flight Surgeon at Camp Pendleton, advised

"**[t]he orders are in for the Comirnaty vaccine and we should have them by early next week**."

136.    On October 15, 2021, Major Edwin Paz requested information from the DiLorenzo

Clinic as to whether the clinic had any of the FDA-approved COMIRNATY available. The email

indicates that the Director of the DiLorenzo Clinic, Dr. Seto, stated: "**Pfizer has not made any**

**Comirnaty. There is no expected date when we will receive Comirnaty**." [45] This was also

corroborated, DoD OIG COVID-19 Coordinator, Plaintiff Lesley Church, who has been informed

by DoD officials that the Pentagon does not have COMIRNATY and does not know when

COMIRNATY will be available.

137.    It is indisputable: The United States Department of Defense does not, nor has it

---

[42] Sanjay Mishra, Evidence mounts that people with breakthrough infections can spread Delta easily, National Geographic (Aug. 20, 2021), available at: https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added); *see also* Statement from CDC Director Rochelle P. Walensky, MD, MPH Statement from CDC on Today's MMWR (July 30,  2021), available at: https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (noting "the Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people.").

[43] Centers for Disease Control and Prevention, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, (last visited Sept. 15, 2021), available at: https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html

[44] Email to Rylan Commins, U.S. Marine Corps (Aug. 27, 2021, 4:02PM) (on file with author); *see* Exhibit 6.

[45] Email to Major Edward Paz, U.S. Marine Corps (Oct. 15, 2021, 10:49 AM) (on file with author); *see* Exhibit 7.

ever had, one or more FDA-approved doses of COMIRNATY – the only COVID-19 vaccine that

has received approval from the FDA. Despite this, (1) the FDA indicating just 96 hours earlier that

COMIRNATY was unavailable, DoD personnel advised active-duty servicemembers that Camp

Pendleton was expected to receive COMIRNATY "early [the following] week."; (2) DoD

personnel orally misinformed active-duty that the vaccine being administered was the "same fluid"

yet COMIRNATY and Pfizer-BioNTech do not even have the same number of ingredients; and

(3) perhaps most egregious of all, **the DoD has falsified active-duty personnel's medical**

**records**.

138.    Jacob Workman, a Chief Warrant Officer One in the Missouri National Guard has

testified that his immunization records within the TRICARE medical portal reflect that he was

inoculated on October 8, 2021:[46]

| Jacob Workman | CONFIDENTIAL | | Page 2 of 4 |
|---|---|---|---|
| **IMMUNIZATION  HISTORY** | | | |
| Date Range: All | | Sorted By: Vaccine (Ascending) | |
| Filter: None Applied | | | |
| **Immunization** | COVID-19 Pfizer (COMIRNATY) | | |
| **Date Given** | 08 Oct 2021 | **Next Due Date** | 29 Oct 2021 |
| **Dosage** | 0.3 ml | **Series** | |
| **Provider** | Unknown, Provider | **Facility** | |
| **Manufacturer Name** | Pfizer, Inc | **Lot Number** | FF8839 |

139.    Finally, notwithstanding the above, the U.S. Marine Corps, under the jurisdiction

of Secretary of Defense Austin and President Biden, has begun processing 1st Lt. Soto and Cpl.

Hall for administrative separation and subjected them to adverse administrative disciplinary action

pursuant to the Marine Administrative Message (MARDAMIN) issued on October 23, 2021.

---

[46] Immunization History, Medical Records of Jacob Workman, TRICARE MED. PORT., (Oct. 8, 2021); *see* Exhibit 8.

140.     Cpl. Hall submitted his religious exemption request on August 28, 2021, but it was unlawfully denied by the Marines Corps on September 29, 2021.[47] Likewise, First Lieutenant Soto submitted his religious exemption request on September 22, 2021, but it was unlawfully denied by the Marines Corps on October 10, 2021.[48]

141.     Notably, the language used by the Department of the Navy is identical, inapplicable, and/or irrelevant. The "copy and paste" language written of the denial letters written by Deputy Commandant for Manpower and Reserve Affairs, David A Ottington, states *inter alia* that he: (1) "carefully considered" the requests for an immunization waiver; and that he (2) "considered your requests dated [DATE], the command endorsements and exhibits attached to it, advice from the Director, Health Services Headquarters, U.S. Marine Corps, and the recommendation of the Religious Accommodation Review Board . . ." and that he "consulted with legal counsel."[49]

142.     As a preliminary concern, the date Deputy Commandant Ottington claims Cpl. Hall submitted his exemption request is incorrect. Cpl. Hall submitted his request on August 28, 2021; not August 25, 2021. This is hardly careful consideration. Rather, the copy & paste verbatim language vitiates the notion that at least Cpl. Hall's religious exemption request was not "carefully considered."

143.     To the extent one letter is not carefully considered, 1st Lt. Soto likewise has reason to believe his letter, too, was not carefully considered. And whereas the only two (2) means by which Defendants can deprive Plaintiffs of their fundamental right to the free exercise of religion is if the belief is not "sincerely held" or accommodating one's religion poses an "undue hardship"

---

[47] Cpl. Hall Denial Letter, Req. for Religious Accom., DEPT. OF THE NAVY (Sept. 29, 2021); *see* <u>Exhibit 9</u>.
[48] 1st Lt. Soto Denial Letter, Req. for Religious Accom. DEPT. OF THE NAVY (Oct. 10, 2021); *see* <u>Exhibit 10</u>.
[49] *See infra*, fn.'s 48-49; *see also* <u>Exhibits 9-10</u>.

on Defendants, this material discrepancy is hardly an ancillary matter.

144.     Of course, it is impossible to determine whether one's religious belief is "sincerely held" absent review on an individualized case-by-case basis; thus, the relevancy as to the blanket form denial letter is of the highest importance when dealing with a fundamental right at stake. 1st Lt. Soto and Corporal Hall have been unconstitutionally deprived of their First Amendment rights because Defendants cannot establish their religious beliefs are not sincerely held.

145.     As to the "undue hardship" justification, it is spectacularly cavalier to assert that "there is no less-restrictive way of accommodating [Plaintiffs'] request[s] that ensures military readiness and the preservation of the health of the force."[50] First, vaccinated individuals have infected thousands of vaccinated individuals.[51] Yet according to the CDC, out of 120.2 million COVID-19 cases in the United States, there is not a single case in which a person has re-contracted COVID-19 and transmitted it to another person.[52] In fact, just 10 days ago, San Diego County reported a total of 2,925 positive COVID-19 cases: 1,591 cases involving vaccinated patients and 1,334 cases involving unvaccinated patients.[53]

146.     The federal government itself disposes of any question concerning Plaintiff's FDCA claim. In a Memorandum to the President, the DOJ confirms that administration of EUA-authorized vaccines **"requir[e] potential recipients to be informed of the option to accept or refuse administration of the product . . .".**[54]

---

[50] *Id.*

[51] Patricia Kime, *DoD has Had 1,640 COVID 'Breakthrough' Cases Among Vaccinated Beneficiaries*, MILITARY.COM (May 21, 2021), available at: https://www.military.com/daily-news/2021/05/21/dod-has-had-1640-covid-breakthrough-cases-among-vaccinated-beneficiaries.html (last visited Oct. 24, 2021).

[52] Case Updates, *Estimated COVID-19 Burden*, CENTERS FOR DISEASE CONTROL AND PREVENTION, (July 27, 2021), available at: https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (last visited Oct. 24, 2021).

[53] San Diego County, *Weekly Coronavirus Disease 2019 (COVID-19) Surveillance Report*, Health and Human Serv. Agency, (Sept. 20, 2021), *see* Exhibit 11.

[54] Dawn Johnson Memo., *Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization*, DEPT. OF JUSTICE, (Jul. 6, 2021), *see* Exhibit 12.

## I.   OTHER COURTS HAVE ISSUED TRO'S AGAINST VACCINE MANDATES

147.   Other reasonable protocols beyond the mass vaccination remain sufficient to prevent the spread of COVID-19 among employees; all of which constitute less restrictive and reasonable alternatives to the mandatory, universal mass vaccination of the entire federal workforce.

148.   For example, the United States District Court for the Western District of Louisiana recently issued a TRO against a medical school for the school's failure to grant religious exemptions when other reasonable accommodations were available and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body.[55]

149.   The United States District Court for the Western District of Michigan issued a TRO against a university for its failure to allow students with religious objections to vaccination to participate in athletics and other extracurricular activities when other reasonable alternatives were available as a reasonable accommodation for their religious beliefs.[56] The Sixth Circuit Court of Appeals affirmed that preliminary injunction in its order refusing to stay the preliminary injunction.[57]

150.   The United States District Court for the Northern District of New York and the Second Circuit Court of Appeals have both entered injunctions against enforcement of New York's COVID-19 vaccine mandate on healthcare workers that expressly excluded any religious exemption. On October 12, 2021, the Northern District of New York entered a preliminary injunction enjoining state officials from enforcing the mandate.[58] The court had previously entered

---

[55] *Magliulo v. Edward Via Col. of Osteo. Med.*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021).
[56] *Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 1:21-cv-757, 2021 WL 3891620, *2 (W.D. Mich. Aug. 31, 2021).
[57] *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021).
[58] *See Dr. A. v. Hochul*, No. 1:21-CV-1009, 2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021).

a TRO to the same effect.[59] On September 30, in between the Northern District's TRO and preliminary injunction, the Second Circuit gave its imprimatur to the Dr. A. TRO in *We The Patriots USA, Inc. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021).

151.    In *We The Patriots*, the Second Circuit issued an injunction pending appeal against New York's mandate, enjoining state officials from enforcing it "in a manner that would violate the terms of the temporary restraining order issued in *Dr. A v. Hochul*."

152.    Several Plaintiffs have been previously infected with COVID-19 and have serologic test results that demonstrate the natural antibodies and their immunity to COVID-19. To require these Plaintiffs to nevertheless submit to forcible vaccination is not only contrary to logic and science, but perhaps the height of what constitutes an arbitrary and capricious agency decision. Plaintiffs, however, have yet to even receive an exemption as demanded by the First Amendment.

153.    The Task Force failed to comply with E.O. 14043 because the guidance it has issued is entirely devoid of information as to "exemptions as required by law." Specifically, the Requirement imposed on the Task Force by E.O. 14043 demands that the Task Force issue all agencies guidance on the implementation of: (1) a program to require COVID-19 vaccination for all of its federal employees; ***inclusive of*** (2) lawfully required exceptions to such a program.

154.    The Guidance fails to provide agency heads with information as to: (1) what exemptions are required by law; (2) what criteria is required for federal employees, such as Plaintiffs, to obtain an exemption; (3) the process in which federal employees, such as Plaintiffs, may submit requests for an exemption; or (4) the timeframe within which agencies must respond to requests for an exemption submitted by federal employees, such as Plaintiffs.

155.    Due to the Task Force's failure to comply with the Executive Orders: (1) agency

---

[59] *See* 2021 WL 4189533 (N.D.N.Y. Sept. 14, 2021).

heads remain without guidance for exemption requests and as a result, continue to delay in providing Plaintiffs a mechanism to submit their requests despite the rapidly approaching November 22 deadline to be "fully vaccinated"; or (2) some agencies have promulgated their own mechanism to ask impermissible, invasive questions of those who are religious – while others do not have to provide such information – and the Task Force does so not only in direct violation of EEOC Guidance published this year, but also, in a manner that infringes upon Plaintiffs' fundamental right to the free exercise of religion.

## FIRST CLAIM FOR RELIEF
### Violation of Free Exercise, U.S. Const. amend I.
### *Against All Defendants*

156.    Plaintiffs re-allege and incorporate by reference as if fully set forth herein the allegations in all preceding paragraphs.

157.    The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. Where, as here, a law targets religious practice for disparate treatment and is neither neutral nor generally applicable, that law is assessed under the Supreme Court's strict scrutiny rubric.

158.    Defendants, acting under color of State law, have deprived and will continue to deprive Plaintiffs of their First Amendment rights.

159.    Specifically, Defendants have instituted a Vaccine Mandate that is plainly and unconstitutionally targets religious practice for at least three reasons. *First*, in its text E.O. 14043 limits the vaccination requirement to merely Executive Branch employees of the "agencies", such as Plaintiffs, as defined by 5 U.S.C § 105 while the same vaccination requirement *does not* apply to other Executive Branch employees (*e.g.*, White House, EOP, CDC, NIH, NIAID) not being

subject to the same mandate. *Second*, the way E.O. 14043 operates in practice, including the numerous exceptions to the vaccination requirement and scheme to intentionally circumvent Plaintiffs' First Amendment protections, make clear the intent to deprive Plaintiffs of their fundamental right to freely exercise their religion. *Third*, Defendants' own words and conduct demonstrate the intent to violate Plaintiffs' First Amendment rights, in that no guidance has been issued as to what constitutes a valid religious exemption and high-level agency officials have been instructed to determine the bases – irrespective of their legality – upon which the agencies respond to religious exemption requests. The Task Force merely emphasized how important it is for the agencies to "figure[e] it out as quickly as possible . . . because [the agencies are] not going to run an accommodation in those places–and that's totally fine."

160.    Defendants' promulgation of the Vaccine Mandate further infringes upon Plaintiffs' First Amendment right to free exercise in that it demands Plaintiffs respond to an invasive questionnaire without an objective basis giving rise to a *bona fide* doubt as to the sincerity of their closely held religious beliefs.

161.    Defendants' have also implemented a "deadline" that is not in fact, a deadline, but a "forcing function" to induce Plaintiffs to submit religious exemption requests by an arbitrary date for the sole purpose of "collect[ing] information" about them.

162.    Defendants have required Plaintiffs to work from home, in part or entirely, for nearly two years. Plaintiffs have done so and dutifully performed their work obligations in satisfaction of, at a minimum, expectations. Defendants have also implemented other accommodating risk mitigation strategies such as social distancing and masking with which Plaintiffs have complied and continue to comply.

163.    The compelling interest articulated in E.O. 14043 is to "halt the spread of coronavirus disease" – it is not to eradicate the disease. To that end, it is indisputable that vaccination does not achieve this end as many individuals who have been "fully vaccinated" have contracted, and continue to contract COVID-19 from vaccinated persons. To the contrary, there is no evidence that an unvaccinated individual with naturally acquired antibodies has re-contracted COVID-19 and transmitted it to another person.

164.    Defendants can offer no evidence as to the basis upon which there is no alternative to halting the spread of COVID-19.

165.    The offered mechanism, mass vaccination, has not worked, nor will it work, in achieving the interest it purports to satisfy.

166.    Plaintiffs have offered numerous, less restrictive means to achieve the interest of stemming the spread of COVID-19.

167.    Plaintiffs have faced, and continue to face, adverse employment action such as threats, harassment, and workplace hostility.

168.    The Vaccine Mandate also seeks to stem the spread of COVID-19 for the interest of the health and safety of our federal workforce; however, if enforced, the safety and health of those who work in our federal government (and the federal government as a whole) would be harmed; not protected due to mass terminations and loss of a ready military and functioning government.

169.    Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their First Amendment right to the free exercise of religion.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF RFRA, 42 U.S.C. § 2000bbb, *et seq.*,
### *Against All Defendants*

170.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

171.    The Religious Freedom Restoration Act (RFRA) provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).

172.    RFRA also demands that, should the government substantially burden a person's free exercise of religion, it bears the burden of demonstrating that its burden on religious exercise furthers a compelling government interest and is the least restrictive means of achieving that compelling government interest. 42 U.S.C. § 2000bb-1(b).

173.    RFRA plainly applies to Defendants, as they constitute a "branch, department, agency, instrumentality, and official of the United States." 42 U.S.C. § 2000bb-2(1).

174.    Congess enacted RFRA "to provide very broad protection for religious liberty," going "far beyond what [the Supreme Court] has held is constitutionally required" under the First Amendment. *Hobby Lobby*, 573 U.S. 682, 693, 706 (2014) (emphasis added). As such, RFRA encompasses a very broad definition of "exercise of religion," which includes "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000bb—5(7)(A)).

175.    RFRA mandated that the law "'be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000cc—3(g)).

176.    "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020).

177.    Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

178.    Plaintiffs have and exercise sincerely held religious beliefs (see *supra,* Section D) which compel them to abstain from receiving or accepting any of the currently available COVID-19 vaccines.

179.    The Vaccine Mandates, on its face and as applied, target Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccines.

### THIRD CLAIM FOR RELIEF
#### VIOLATION OF EQUAL PROTECTION
*For Declaratory and Injunctive Relief*

180.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

181.    The Vaccine Mandates require Plaintiffs to obtain vaccination against COVID-19.

182.    The Vaccine Mandates, either implicitly or expressly, state that exceptions will be made for those who are subject to the order but are exempt based on sincerely held religious beliefs.

183.    While the Vaccine Mandates appear to be facially neutral and in compliance with well-established legal principles, their application and the manner in which the Vaccine Mandates are being promulgated deny Plaintiffs of Equal Protection, while other similarly situated federal employees of the Executive Branch remain exempt from the Vaccine Mandates.

184.     The Vaccine Mandates deprive Plaintiffs, who have sincerely held religious beliefs, of their ability to freely exercise religion as their sincerely held religious beliefs prohibit compliance with the Vaccine Mandates.

185.     Because of their closely held religious beliefs, Plaintiffs have suffered, and continue to suffer, significant stress and psychological harm caused by this impending threat to their military service or employment.

186.     Because of their closely held religious beliefs, Plaintiffs have suffered, and continue to suffer, a deprivation of their constitutional rights because of Defendants' refusal to accommodate their sincerely held religious beliefs.

187.     Because of their closely held religious beliefs, Plaintiffs Andrew Soto and Christopher Hall have suffered, and continue to suffer, a deprivation of their constitutional rights because of Defendant Biden and Defendant Austin's denial of their request for an accommodation for their religious beliefs.

188.     Defendants, continue to deprive Plaintiffs of their fundamental right to free exercise and despite all Plaintiffs' beliefs being sincerely held.

189.     Defendants, continue to deprive Plaintiffs of their fundamental right to free exercise despite having no basis to claim that providing Plaintiffs an accommodation for their sincerely held religious beliefs causes "undue hardship."

190.     Plaintiffs, because of their sincerely held religious beliefs, are also immediately injured by the stigma created by the Vaccine Mandates. Even if some religious service members or federal employees are permitted to remain exempt from the Vaccine Mandate, they now serve in a military or under employment where the Commander-in-Chief or employer has announced that their service or work is unwanted and unwelcome, and that their religion is not respected. Any

religious service member or federal employee, that is permitted to remain in their current positions will necessarily be treated as, and experience the harms associated with, a person with second-class status.

191.    Plaintiffs are entitled to a religious accommodations and protection on an equal basis that positions them just as other service members or federal employees without religious limitations are positioned by virtue of their COVID-19 vaccination status.

192.    The Vaccine Mandates single out Plaintiffs based upon their religion.

193.    The Vaccine Mandates single out Plaintiffs based upon the status as the mechanism Defendants use satisfy its alleged objective in preserving the public health.

194.    As a result of being singled out by Defendants, Plaintiffs have been subjected different treatment.

195.    The different treatment to which Plaintiffs are subjected is arbitrary.

196.    The different treatment to which Plaintiffs are subjected is capricious.

197.    The Vaccine Mandates discriminate against Plaintiffs and other active-duty service members, federal employees, and federal contractors because of their religion.

198.    The Vaccine Mandates put fundamental rights at issue and therefore, are subject to strict scrutiny.

199.    Defendants' actions of adopting, implementing, promulgating, delegating, and enforcing the Vaccine Mandates have discriminated and continue to discriminate against Plaintiffs the basis of their religion and such actions do not survive strict scrutiny.

200.    Defendants' actions of adopting, implementing, promulgating, delegating, and enforcing the Vaccine Mandates have discriminated and continue to discriminate against Plaintiffs

and other service members, federal employees, and federal contractors on the basis of their medical condition and such actions do not survive strict scrutiny.

201.    Defendants' actions of adopting, implementing, promulgating, delegating, and enforcing the Vaccine Mandates have discriminated and continue to discriminate against Plaintiffs and other service members, federal employees, and federal contractors on the basis of invidious stereotypes, irrational fears, and moral disapproval, which are not permissible bases for differential treatment under any standard of review.

202.    Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their Fifth Amendment rights to equal protection.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF THE FDCA, 21 U.S.C. § 360bbb–3, *et seq*.**
***For Declaratory and Injunctive Relief***

203.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

204.    Federal law generally prohibits anyone from introducing or delivering for introduction into interstate commerce any "new drug" or "biological product" unless and until FDA has approved the drug or product as safe and effective for its intended uses. *See, e.g*., Food, Drug, and Cosmetic Act ("FDCA") §§ 301(a), 505(a), 21 U.S.C. §§ 331(a), 355(a); 42 U.S.C § 262(a). A vaccine is *both* a drug and a biological product. *See* FDCA § 201(g), 21 U.S.C § 321(g); 42 U.S.C. § 262(i)(1); FDCA § 564(a)(4)(C) (defining "product" to mean "a drug, device, or biological product"). However, an exception exists whereas the FDCA authorizes the FDA to issue EUAs for medical products (e.g., non-FDA-approved vaccines such as Pfizer-BioNTech) under certain emergency circumstances. 21 U.S.C. § 360bbb-3,

205.    Once a product receives an EUA, the product may be introduced into interstate commerce and administered to individuals despite the medical product not yet having received full-FDA approval. Such administration is only permitted "[t]o the extent practicable" given the emergency circumstances, and "as the [agency] finds necessary or appropriate to protect the public health." As a result, "[a]ppropriate" conditions are imposed on each EUA the FDA issues. *Id.* § 564(e)(1)(A).

206.    Perhaps the most critical condition imposed is ensuring all recipients have given "informed consent" prior to receiving the non-FDA-approved medical product. Under FDCA § 564(e)(1)(A)(ii)(III), recipients of a EUA-authorized medical products must "[be] informed" of *inter alia* "**the option to accept or refuse administration of the product**." *Id.*

207.    The FDCA also requires medical products that have not been fully approved by the FDA–such as the Pfizer-BioNTech vaccine– satisfy certain conditions "to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. 360bbb–3(e)(ii).

208.    Since December 2020, the FDA has issued an EUA for the BioNTech vaccine. As part of the BioNTech EUA, the FDA imposed a condition stating that all recipients must have the "option to accept or refuse" the non-FDA-approved vaccine. To effectuate this, the EUA requires all recipients to receive a Fact Sheet ("BioNTech Fact Sheet") stating: "It is your choice to receive or not receive [the vaccine]."

209.    Concerning the military, Congress enacted 10 U.S.C. § 1107a as a specific condition that expressly refers to the "option to accept or refuse" the medical product; the same

condition requirement that applies to the public at-large and non-military personnel set forth in FDCA § 564(e)(1)(A)(ii)(III). *See* Pub. L. No. 108-136, sec. 1603(b)(1), § 1107a, 117 Stat. at 1690.

210.    When an EUA product is administered to members of the armed forces, "the condition described in section 564(e)(1)(A)(ii)(III)", (e.g., the "option to accept or refuse"), **is required** pursuant to § 564(e)(1)(A), (2)(A). FDCA § 564 *et seq.*

211.    On July 6, 2021, Acting Assistant Attorney General Dawn Johnsen ("DOJ") submitted a Memorandum Opinion to the Deputy Counsel for the President in response to the question: "Whether the 'option to accept or refuse' condition in section 564 prohibits entities from imposing such vaccination requirements while the only available vaccines for COVID-19 remain subject to EUAs."

212.    The DOJ concluded that "FDCA § 564(e)(1)(A)(ii)(III) [requires] . . . potential vaccine recipients be "informed" of . . . "the option to accept or refuse administration of the product." *Id.* at 6–7. The DOJ's conclusion is also corroborated by both, the FDA and Pfizer. Specifically, Pfizer's EUA Letter, Pfizer's Fact Sheet, and the FDA's Fact Sheet, all state "that recipients 'have a choice to receive or not receive' the vaccine."

213.    Because the only FDA-approved vaccine is COMIRNATY, and in light of the fact that COMIRNATY is unavailable, the only vaccines that can conceivably be administered are non-FDA-approved vaccines only available under EUA; therefore, because such vaccines are not fully-FDA-approved, and based upon the requirements of FDCA § 564(e) *et seq.*, the DOJ's Memorandum Opinion, Pfizer's EUA Letter, Pfizer's Fact Sheet, and the FDA's Fact Sheet, it is not subject to dispute that **any recipient of the non-FDA-approved Pfizer-BioNTech vaccine**

made available exclusively under an EUA must receive the option to accept or refuse administration of the product."

214.    The EUA is "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. Further, the EUA was a decision from which rights or obligations were determined and from which legal consequences (*e.g.*, vitiating Plaintiffs' **statutorily provided "option to accept or refuse administration of the product"**, FDCA § 564(e)(1)(A)(ii)(III)) flowed.

215.    Plaintiffs have no adequate or available administrative remedy.

216.    In the alternative, any effort to obtain an administrative remedy would be futile.

217.    Plaintiff has no adequate remedy at law.

218.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm and their rights will be continued to be violated absent the injunctive relief requested.

219.    As a direct and proximate result of E.O. 14042, the Federal Contractor Plaintiffs and respective Federal Contractor Class and Subclass Members have suffered, and will continue to suffer, irreparable harm and their rights will be continued to be violated absent the injunctive relief requested.

220.    As a direct and proximate result of E.O. 14043, the Federal Employee Plaintiffs and respective Federal Employee Class and Subclass Members have suffered, and will continue to suffer, irreparable harm and their rights will be continued to be violated absent the injunctive relief requested.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully pray for relief as follows:

A.    That the Court issue a temporary restraining order restraining and enjoining Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Vaccine Mandate such that:

    i.    Defendants will immediately comply with the EUA Provisions of the FDCA so that each individual has the "option to accept or refuse" administration of all currently available COVID-19 vaccines as currently there is no FDA-approved COVID-19 vaccine is available to the population;

    ii.    Defendants will immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

    iii.    Defendants' will immediately grant Plaintiffs' requests for religious exemption from the Vaccine Mandate to accommodate their sincerely held religious beliefs;

    iv.    Defendants will immediately cease any actions arising from or connected to the Department of Defense, as to both, the civilian *and* servicemember Plaintiffs' religious exemption and accommodation requests, including current and ongoing punishment and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

B.      That the Court issue a preliminary injunction pending trial, and a permanent injunction upon judgment, restraining and enjoining Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Vaccine Mandates such that:

      i.      Defendants will immediately comply with the Emergency Use Authorization Statute so that each individual has the "option to accept or refuse" administration of the COVID-19 vaccines as there is currently no FDA approved COVID-19 vaccine available to the population;

      ii.      Defendants will immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

      iii.      Defendants' will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Vaccine Mandate; and

      iv.      Defendants will immediately cease any actions arising from or connected to the Department of Defense, as to both, the civilian *and* servicemember Plaintiffs' religious exemption and accommodation requests, including current and ongoing punishment and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

      iv.      Defendants will immediately cease any actions arising from or connected to the military servicemember Plaintiffs' religious exemption and

accommodation requests, including current and ongoing punishment and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

C.      That this Court render a declaratory judgment declaring that the Vaccine Mandate, both on its face and as applied by Defendants, is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from federal employees and military servicemembers and further declare—

i.      the Vaccine Mandate violates the EUA Provisions of the FDCA by imposing a mandatory COVID-19 vaccination condition upon Plaintiffs' employment and ability to remain free from adverse employment while depriving Plaintiffs of their statutorily provided "option to accept or refuse" all EUA products;

ii.     the Vaccine Mandate, without sufficient provision for exemption or accommodation for sincerely held religious beliefs, violates the First Amendment to the United States Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs;

iii.    the Vaccine Mandate, without sufficient provision for exemption or accommodation for sincerely held religious beliefs, violates the federal Religious Freedom Restoration Act by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs;

D.      That this Court adjudge, decree, and declare the rights and other legal obligations

and relations within the subject matter here in controversy so that such declaration

shall have the full force and effect of final judgment;

E.      That this Court retain jurisdiction over for purposes of issuing Order;

F.      That this Court grant such other and further relief as the Court deems equitable and

just under the circumstances.

Dated: October 24, 2021.

Respectfully submitted,

By: /S/ MICHAEL A. YODER
Michael A. Yoder [1600519]
THE LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22202
Tel: (571) 234-5594
Fax: (571) 327-5554
michael@yoderesq.com

*Counsel for Plaintiffs*

## <u>VERIFICATION</u>

I, MICHAEL A. YODER, am over the age of eighteen years and counsel for all Plaintiffs in this action. The statements and allegations included in the foregoing Verified Complaint are based upon reports and information known to me, provided to me by Plaintiffs, and/or furnished to me and that I declare under penalty of perjury that everything represented herein is true to the best of my knowledge, information and belief.

Dated: October 24, 2021                    /s/ *Michael A. Yoder*
                                           MICHAEL A. YODER

                                           Counsel for Plaintiffs

## <u>VERIFICATION</u>

I, STEVEN D. CHURCH, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Steven Church*
                                           STEVEN D. CHURCH
                                           (Original Signature retained by Counsel)

## **<u>VERIFICATION</u>**

I, LESLEY CHURCH, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                           /s/ *Lesley Church*_____
                                                                    LESLEY CHURCH
                                                                    (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, GRACE BROWN, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Grace Brown*_____
                                                      GRACE BROWN
                                                      (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, ALMA GONZALEZ, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Alma Gonzalez*_____
                                           ALMA GONZALEZ
                                           (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, DYNIKA BARNWELL, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Dynika Barnwell*
                                           DYNIKA BARNWELL
                                           (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, DOUGLAS CZERWINSKI, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                      /s/ *Douglas Czerwinski*
                                             DOUGLAS CZERWINSKI
                                             (Original Signature retained by Counsel)

## **VERIFICATION**

I, JASON COFFEY, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                          /s/ *Jason Coffey*_____
                                                 JASON COFFEY
                                                 (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, JOSHUA SCHMIDT, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Joshua Schmidt*
                                           JOSHUA SCHMIDT
                                           (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, MELINA ROYER, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                              /s/ *Melina Royer*
                                                    MELINA ROYER
                                                    (Original Signature retained by Counsel)

## **VERIFICATION**

I, TAMIKA WALLS, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021              /s/ *Tamika Walls*
                                                    TAMIKA WALLS
                                                    (Original Signature retained by Counsel)

## **VERIFICATION**

I, JAIME ESPITIA, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021          /s/ *Jaime Espitia*_____
                                 JAIME ESPITIA
                                 (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, SOMER STEPHENS, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Somer Stephens*
                                           SOMER STEPHENS
                                           (Original Signature retained by Counsel)

## **VERIFICATION**

I, ALEX BERNE, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                         /s/ *Alex Berne*
                                                ALEX BERNE
                                                (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, ALAN CAMP, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Alan Camp*_____
                                           ALAN CAMP
                                           (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, STEPHANIE PERROTTA, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                     /s/ *Stephanie Perrotta*
                                            STEPHANIE PERROTTA
                                            (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, CHRISTOPHER AXTELL, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021            /s/ *Christopher Axtell*
                                       CHRISTOPHER AXTELL
                                       (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, KRISTOFOR HALLFRISCH, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Kristofor Hallfrisch*
                                            KRISTOFOR HALLFRISCH
                                            (Original Signature retained by Counsel)

## **VERIFICATION**

I, DOROTHY MORGAN, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Dorothy Morgan*
                                                          DOROTHY MORGAN
                                                          (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, ANDREW SOTO, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                    /s/ *Andrew Soto*
                                       ANDREW SOTO
                                       (Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, CHRISTOPHER HALL, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: October 24, 2021                          /s/ *Christopher Hall*
                                                 CHRISTOPHER HALL
                                                 (Original Signature retained by Counsel)