**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STEVEN CHURCH,** *et al.***,** | |
| *Plaintiffs,* | |
| **v.** | Civil Action No.: 1:21-cv-2815 (CKK) |
| **JOSEPH R. BIDEN,** *et al.***,** | ORAL ARGUMENT REQUESTED |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

DATED: October 27, 2021

Respectfully submitted,

/S/ MICHAEL A. YODER
Michael A. Yoder [1600519]
THE LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
Tel: (571) 234-5594
Fax: (571) 327-5554
michael@yoderesq.com

*Attorney of record for Plaintiffs*

## TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

INTRODUCTION ........................................................................ 1

FACTUAL BACKGROUND ........................................................... 3

I.   PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS AND THEIR INABILITY
     TO COMPLY WITH THE VACCINE MANDATE ................................... 3

II.  CREATION OF THE TASK FORCE & FEDERAL VACCINE MANDATE .................... 6

III. THE TASK FORCE SCHEME TO CIRCUMVENT THE FIRST AMENDMENT ............... 7

LEGAL STANDARD ................................................................. 9

ARGUMENT ...................................................................... 10

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR RFRA &
     FREE EXERCISE CLAIMS ..................................................... 10

     A.  Plaintiffs' Religious Beliefs are Sincerely Held .......................... 11

         i.   But-For the Use of Fetal Cell Lines, the Vaccines Would Not Exist ............ 12

     B.  The Vaccine Mandates Substantially Burden Plaintiffs' Sincere Religious Beliefs ....... 13

     C.  The Vaccine Mandates are Subject to Strict Scrutiny Review and Defendants
         Cannot Satisfy this Burden ............................................ 14

         i.   The Vaccine Mandate does not Serve a Compelling Interest ................. 15

         ii.  The Vaccine Mandate is not Narrowly Tailored .......................... 16

              1.  *Federal Employees who Work Remotely are no Threat* ................. 17

              2.  *Other Federal Employees are Permitted to Abstain from Inoculation* .... 18

II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
     EQUAL PROTECTION CLAIM ................................................. 18

     A.  Plaintiffs are Treated Differently than Similarly Situated Persons ............. 19

     B.  Defendants are Impermissibly and Selectively Enforcing the Vaccine Mandate ........ 20

III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FEDERAL
FOOD, DRUG AND COSMETIC ACT CLAIM ................................................................ 20

A. Pfizer's FDA-Approved COMIRNATY® Vaccine Is Not Currently, Nor Has it Ever
Been, Available to Anyone in the United States ............................................................ 21

i. DoD Emails and Statements Inherently Contradict the Medical Records
of Active-Duty Military Personnel ...................................................................... 23

IV. PLAINTIFFS HAVE AND CONTINUE TO SUFFER IRREPARABLE HARM ................ 25

V. THE BALANCE OF HARDSHIPS TIP IN PLAINTIFFS' FAVOR AND INJUNCTIVE
RELIEF IS IN THE PUBLIC'S BEST INTEREST ............................................................. 27

**CONCLUSION** ................................................................................................................. 29

# TABLE OF AUTHORITIES

**CASES**                                                                                       **PAGE**

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) .................................................................. 1

*Bowen v. Roy*, 476 U.S. 693 (1986) ........................................................................... 11

*Burson v. Freeman*, 504 U.S. 191, 200 (1992) .......................................................... 16

*Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014)...................................1, 11-14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)..................... 10, 14

*City of Boerne v. Flores*, 521 US. 507 (1997) .................................................................. 16

*Dahl v. Bd. of Trustees of W. Mich. Univ.*, 2021 WL 4618519 (6th Cir. 2021) ..........................26-27

*Dr. A v. Hochul*, No. 1:21-cv-1009, 2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021) ...................26-27

*Edenfield v. Fane*, 507 U.S. 761 (1993) ....................................................................... 15

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................14, 26-27

*Emp. Div. Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990)......................... 10

*Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246 (2020) .......................................... 10

*Gomez v. Kelly*, 237 F. Supp. 3d. 13 (D.D.C. 2017).......................................................... 9

*Hall v. Johnson*, 599 F. Supp. 2d. 1 (D.D.C. 2009)........................................................... 9

*Hernandez v. Comm'r*, 490 U.S. 680 (1989) .................................................................. 13

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018) .............14-15

*Johnson v. Robinson*, 415 U.S. 361 (1974)..................................................................... 20

*Landmark Commc'ns, Inc. v. Maine*, 435 U.S. 829 (1978) ............................................ 15

*Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011) ........................................... 27

*McCormick v. District of Columbia*, 899 F. Sup.2d 59 (D.D.C. 2012) ........................... 1, 14

*Nken v. Holder*, 556 U.S. 418 (2009) .............................................................................. 9

*O Centro v. Ashcroft*, 389 F.3d 974 (10th Cir. 2004) (en banc), aff'd 546 U.S. 418 (2006)............ 28

*Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016).................................... 28

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2021)...........................2, 15, 26-28

*Roman Cath. Archbishop of Wash. v. Bowser*, WL 1146399 (D.D.C. Mar. 25, 2021) .........14, 27-28

*Seeger v. United States Dep't of Def.*, 306 F. Supp. 3d 265 (D.D.C. 2018)....................... 9

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ........................................ 16, 18, 20

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994).................................... 15

*Tyndale House Publishers v. Sebelius*, 904 F. Supp. 2d 106 (D.D.C. 2012)................................... 28

*United States Ass'n of Reptile Keepers, Inc. v. Jewell*, 103 F. Supp. 3d 133 (D.D.C. 2015) ............. 9

*Washington v. Harper*, 494 U.S. 210, 229 (1990) ...................................... 1, 14

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977) ............. 9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................. 9

## CONSTITUTIONS                                                                                     PAGE

U.S. Const. amend. I. ............................................................... 5, 13-15, 18, 26-28

## STATUTES                                                                                          PAGE

21 U.S.C. § 360bbb-3 .............................................................. 10, 20

21 U.S.C. § 301(a) ................................................................. 20

21 U.S.C. § 321(g) ................................................................. 20

21 U.S.C. § 331(a) ................................................................. 20

21 U.S.C. § 355(a) ................................................................. 20

21 U.S.C. § 505(a) ................................................................. 20

21 U.S.C. § 564(a)(4)(C) ........................................................... 20

21 U.S.C. § 564(e)(1)(A)(ii)(III)..................................................... 21

42 U.S.C. § 201(g) ........................................................................................................... 20

42 U.S.C. § 262(a) ............................................................................................................ 20

42 U.S.C. § 262(i)(1) ........................................................................................................ 20

**ORDERS**                                                                                                  **PAGE**

Exec. Order 13991 ............................................................................................................. 6

Exec. Order 14043 ............................................................................................... 6, 17, 19, 25

Dept. of Defense, Order (Aug. 24, 2021) .................................................................... 15, 19

## INTRODUCTION

Plaintiffs are forced to choose which fundamental right is most important to them: (1) the right to freely exercise their religion;[3] (2) the right to earn a living;[4] or (3) the right to remain free from the forcible injection of a medication, such as a vaccine, into their nonconsenting bodies.[5] Just like over two million other federal workers and 1.4 million active duty servicemembers, Plaintiffs are staring down the barrel of a rapidly approaching November 8, 2021[6] deadline that – absent the injunctive relief requested – will result in irreparable harm as their fundamental rights are trampled. Unless this Court issues a TRO (and preliminary injunction thereafter), Plaintiffs religious rights, bodily integrity, and livelihoods (or even worse, lives) will be senselessly discarded, the *status quo* of our government and readiness of our military will self-implode, and 336 million Americans will be laid prey to dangers far greater than COVID-19.

Plain and simple: the Biden Administration's Vaccine Mandates[7] and the subsequent promulgation of its mass inoculation policy violate both, the United States Constitution and well-established federal law. Indeed, the instant situation epitomizes the exact scenario our Founding Fathers wanted to protect against at the time they drafted our nation's Constitution. No American, let alone those who have dedicated their lives to serving this country, such as Plaintiffs, should *ever* be forced to choose one fundamental right in lieu of another–yet that is exactly the situation Plaintiffs face here.

---

[3] U.S. Const. amend. I; *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).
[4] *McCormick v. District of Columbia*, 899 F. Sup.2d 59, 65 (D.D.C. 2012) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 572–73 (1972)) (holding the right to earn a living or pursue a chosen career is a fundamental right).
[5] *Washington v. Harper*, 494 U.S. 210, 229 (1990) ("Forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty.").
[6] To be "fully vaccinated" by the deadline of November 22, 2021, all other federal employees must receive (1) the second dose of a two-dose vaccine series; or (2) a single-dose vaccine no less than two weeks prior to November 22; thus, **the salient date relevant for the emergency relief requested is <u>November 8, 2021</u>**.
[7] Exec. Order 14043; Order, Dept. of Defense (Aug. 24, 2021).

Both the United States Constitution and federal statutory law provide protections against the usurpation of the free exercise of religion and make it unlawful to discriminate based on one's religion. So too, do both constitutional and statutory law bar the differential treatment of similarly situated persons. Just as American jurisprudence does not lend towards ignorance of the law as a justifiable defense, it neither recognizes "convenience" or excuses "political ambitions" for an actor's violation of well-established law, even when that **actor is the government, itself.**

While reasonable minds can disagree as to the magnitude of the COVID-19 pandemic, the Supreme Court reminds us that "**even in a pandemic, the Constitution cannot be put away and forgotten.**" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). Understandably, millions of Americans are passionate about the incalculable number of issues caused by the pandemic and at present, mandatory vaccination is on center stage. But cognitive bias has pit us against each other. Instead of focusing on objective, scientific data and employing common sense and logic as the guiding principles for pandemic-related mitigation strategies, fear-driven passion has transformed a purely health-related issue into a political football that is being used in a highly controversial and consequential match as the whole world watches. Fortunately, our judicial system is not a member of either team.

Despite the medical and philosophical theories that support or oppose vaccine mandates or the cognitive bias that plagues objective thought, just two things are relevant that pend before this Court: (1) Plaintiffs' sincerely held religious beliefs; and (2) American black-letter law.

Plaintiffs commenced this action and contemporaneously filed this Application for a Temporary Restraining Order ("TRO") and Preliminary Injunction to maintain the *status quo* of our federal governmental operations and to put an end to this game of Monty Hall's *Let's Make a Deal* that millions of Americans have been compelled to involuntarily play. And while the

currency of this game is not exclusively money but also the rights to life, liberty, and property, it would be imprudent to not address the magnitude of the economic impact of this case.

Absent the injunctive relief Plaintiffs request herein, Plaintiffs will suffer irreparable harm as their fundamental rights are trampled and they lose their jobs in the most critical industry pertaining to public health. If Defendants are not enjoined from enforcing the Vaccine mandate, hundreds of thousands of federal workers and military personnel will be forcibly removed from our government and Armed Forces, thrusting our nation into the most vulnerable position it has been in for a quarter-millennium.

Allowing Defendants to continue enforcing the Vaccine Mandate that was issued to save lives will only cause more lives to be lost, or at the very minimum, subjected to dangers far greater than COVID-19. ***To do so would be unfathomable.***

## **FACTUAL BACKGROUND**

> No. I don't think they should be mandatory, and I wouldn't demand them to be mandatory and I would do everything in my power. [sic] Just like I don't think masks have to be made mandatory nationwide.[8]  – ***Joseph R. Biden***

## I.  **PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS AND THEIR INABILITY TO COMPLY WITH THE VACCINE MANDATE**

Plaintiffs are devout Christians who cannot in morality receive the vaccine without compromising their sincerely held religious beliefs. (*Id*. ¶¶5-24, 80-92.) As Christians, Plaintiffs sincerely believe that abortion is the murder of an innocent life and a grave sin against God. (*Id.* ¶¶81, 86.) Because of this, Plaintiffs cannot in good faith and morality condone, support, justify,

---

[8] Joseph R. Biden III, *COVID-19 vaccine should not be mandatory: Biden*, REUTERS (Dec. 4, 2020), available at: https://www.youtube.com/watch?v=e6QNsNMFH5s (last visited October 21, 2021).

or benefit – whether directly or indirectly – from the taking of an innocent human life through abortion, and to do so is a sin against God. (*Id.* ¶¶88, 90.)

Plaintiffs also believe in the fundamental Christian teaching of therapeutic proportionality, which an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including, psychological, and spiritual bodily goods. (*Id.* ¶88.) It can also extend to the good of others and the common good, which likewise entail spiritual and moral dimensions and are not reducible to public health. (*Id.* ¶89.) The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention in the concrete circumstances, not by public health authorities or by other individuals who might judge differently in their own situations. (*Id.* ¶90). Under this assessment, Plaintiffs honest conviction demands that they abstain from taking any of the available vaccines.

Notably, no FDA-approved COVID-19 vaccine is available. (V. Compl. ¶112.) The three (3) vaccines that are currently available: (1) Janssen/Johnson & Johnson vaccine ("J&J"); (2) Moderna; and (3) Pfizer BioNTech ("BioNTech") (a legally distinct vaccine with certain differences from COMIRNATY, Pfizer's second vaccine) (collectively, "vaccines"), are expressly and exclusively subject to EUA-authorization only. (*Id.* at 5, fn. 2.) And at the core of this case, all three vaccines used aborted fetal cell lines in the development and production phases of the vaccine.[9] (*Id.* ¶¶80, 92, 113, 123-26, 28-29.)

As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson did require the use of fetal cell cultures, specifically PER.C6, in order to

---

[9] *See infra*, footnote 15.

produce and manufacture the vaccine."[10] (*Id*. ¶¶121, 125.) The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine used the PER.C6 fetal cell line, which "is a retinal cell line that was isolated from a terminated fetus in 1985."[11] (*Id*. ¶122.) Scientists at the American Association for the Advancement of Science have also published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. (*Id*. ¶123.)

Pfizer's Chief Scientific Officer and its Senior Director of Worldwide Research have confirmed the BioNTech vaccine is also derived from aborted fetal cells and their discussions about keeping such information private have become publicly available.[12] (*Id*. ¶¶126, 128.)

Specifically, Vanessa Gelman, Pfizer Senior Director of Worldwide Research: "From the perspective of corporate affairs, we want to avoid having the information on fetal cells floating out there…The risk of communicating this right now outweighs any potential benefit we could see, particularly with general members of the public who may take this information and use it in ways we may not want out there. We have not received any questions from policy makers or media on this issue in the last few weeks, so we want to avoid raising this if possible." (*Id*. ¶127.)

Philip Dormitzer, Pfizer's Chief Scientific Officer is reported as saying that he wanted to keep the information secret because of the objections that pro-life individuals, such as Plaintiffs in this action, would have: "HEK293T cells, used for the IVE assay, are ultimately derived from an aborted fetus. On the other hand, the Vatican doctrinal committee has confirmed that they consider it acceptable for Pro-Life believers to be immunized. Pfizer's official statement couches the answer well and is what should be provided in response to an outside inquiry." (*Id*. ¶128.)

---

[10] *Id*.
[11] *Id*.
[12] *See infra*, footnote 15.

The only available vaccines are developed and produced from, tested with, researched on, or otherwise connected to the aborted fetal cell lines HEK-293 and PER.C6. As such, Plaintiffs' sincerely held religious beliefs demand that they abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

## II.  CREATION OF THE TASK FORCE & THE FEDERAL VACCINE MANDATE

On his first day in office, President Biden signed Executive Order 13991 and created the Safer Federal Workforce Task Force ("Task Force").[13] (V. Compl. ¶¶25, 44-45.) On August 24, 2021, Secretary Austin issued a Department of Defense order that imposed a vaccination mandate on all active-duty service members. (*id.* ¶26, 46, 78-79, 139). On September 9, 2021, President Biden signed E.O. 14043, which ordered all agencies[14] to "implement a program requiring COVID-19 vaccination for all of its federal employees, **with exceptions only as required by law**" (collectively, "Vaccine Mandates")[15] (V. Compl. ¶¶47, 49, 59,) and further ordered the Task Force to "issue guidance within 7 days of the date of [E.O. 14043] on agency implementation of this requirement for all agencies covered by [the] order." (*Id.* ¶47.) The "requirement" imposed upon the agencies is a two-part requirement: each agency shall (1) implement a COVID-19 vaccination program for its employees; and (2) ensure the program includes exceptions as required by law.

On September 13, 2021, the Task Force guidance: *COVID-19 Workplace Safety: Agency Model Safety Principles*[16] ("Guidance"). While the Guidance was issued within the requisite 7-day timeframe, the Task Force failed to even utter the words "religion", "religious", "beliefs" let alone provide guidance to the agencies regarding religious accommodations. It has been forty-eight days

---

[13] Exec. Order No. 13991.

[14] "The term 'agency' means an Executive agency as defined in 5 U.S.C. § 105 . . .". *See* Exec. Order No. 14043 § 2.

[15] Sec. Austin, *Memorandum for Senior Pentagon Leadership Commanders of the Combatant Commands Defense Agency and DoD Field Activity Directors*, (Aug. 24, 2021); *see also* Exec. Order 14043.

[16] Safer Federal Workforce, *COVID-19 Workplace Safety: Agency Model Safety Principles*, WHITE HOUSE (Sept. 13, 2021).

since President Biden issued E.O. 14043, and forty-four days since Plaintiffs learned of their fate: By November 22, 2021,[17] Plaintiffs had to choose between (1) allowing the government to violate their fundamental right to the free exercise of religion and get vaccinated; or (2) remain steadfast in their sincerely held beliefs and lose their jobs. (V. Compl. ¶132.) But it does not end here.

From the outset, Defendants allotted just 70 days for Plaintiffs to make a monumental, life-changing decision. Of those 70 days, Plaintiffs have spent 48 days attempting to navigate the unconstitutional labyrinth (as discussed below in Section B) that Defendants lodged between Plaintiffs and the constitutional protections to which they have been afforded and relied upon their entire adult lives. And of the remaining 22 days, Defendants vitiated the last 14 days by imposing a facially arbitrary requirement demanding that Plaintiffs be inoculated at least two weeks prior to November 22, 2021 in order to be recognized as "fully vaccinated." (V. Compl. at 5, fn. 2.)   As such, **the relevant date as to this litigation is <u>November 8</u>**,[18]  leaving Plaintiffs just 8 days to halt Defendants' unconstitutional escapade. (V. Compl. at 5, fn. 2.) And even more egregious, Defendants meticulously planned for the scenario to manifest.

## III. THE TASK FORCE SCHEME TO CIRCUMVENT THE FIRST AMENDMENT

Since the day President Biden issued the Vaccine Mandate the federal government has been in complete disarray. Federal employees with serious, life-threatening conditions and others with sincerely held religious beliefs have frantically sought guidance on how to obtain exemptions to the Vaccine Mandate to which they are lawfully entitled. (V. Coml. ¶50.)

---

[17]

[18] To be "fully vaccinated" federal employees must be inoculated with the second dose of a two-dose vaccine series or a one-dose vaccine at least two (2) weeks prior to the official deadline. Safer Federal WorkForce, *Vaccinations*, THE WHITE HOUSE, available at: https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited Oct. 25, 2021).

On October 8, 2021, the Task Force conducted a Zoom[19] with nearly 200 high-ranking executives from the various agencies headed by Defendants, the Task Force instructed the agencies to establish a deadline for submitting religious exemption requests. (*Id.* ¶52–53.) In doing so, the Task Force acknowledged the deadline was not in fact, a deadline but rather, a "forcing function" to induce federal employees to submit their requests so the Task Force could "evaluate the scope" of how many federal employees had sincere religious beliefs prohibiting their compliance with the Vaccine Mandates. (*Id.* ¶¶53-55.) The Task Force then directed the agencies to refrain from issuing any decisions, either approving or denying exemption requests, because "once you grant an exemption to an individual in a job category, it is very hard to say that you're not going to grant [an exemption] to a similarly situated person." (*Id.* ¶55.)

The Task Force further instructed the agencies to "take their time" and the agencies "should not feel rushed that they have to take steps immediately" because it is important to "collect information" on federal employees, such as Plaintiffs, who hold sincere religious beliefs prohibiting them from complying with the vaccine requirement. (*Id.* ¶56.)

To collect this information, the Task Force advised it provided the agencies with a religious exemption form with questions that are intended to elicit information from federal employees seeking religious exemptions. (*Id.* ¶57.) The Task Force directed the agencies to "work bearing in mind that a fair bit of thought went into the range of questions and the kind of information that [the questions] would provide." (*Id.*) The Task Force then gives the agencies authority to refuse to provide accommodations under whatever circumstances each agency so chooses. (*Id.*)

Rather than advising the agencies of the circumstances under which refusing an accommodation request would constitute a violation of federal law or a deprivation of fundamental

---

[19] Video teleconference software commonly used by the federal government to facilitate remote conferences.

rights, the Task Force merely emphasized how important it is for the agencies to "figure[e] it out as quickly as possible . . . because [the agencies are] not going to run an accommodation in those places–and that's totally fine." (*Id*. ¶58.)

In carrying out this scheme, Defendants inform Plaintiffs they are "waiting on guidance" from the Task Force, while the Task Force has instructed the agencies to promulgate their own policies. (*Id.* pp. 4-5; ¶¶25, 44, 47, 50-59.) As a result, Defendants have implemented processes that: (1) preclude, either expressly or indirectly, Plaintiffs' ability to submit religious accommodation requests; (2) induces Plaintiffs to provide Defendants with information to which Defendants are not lawfully entitled; or (3) resulted in the deprivation of Plaintiffs' fundamental right to freely exercise their religion.  (*Id*. ¶¶21, 51, 59, 160.)

## **LEGAL STANDARD**

Injunctive relief is proper, whereas here, Plaintiffs can establish (1) a likelihood of success on the merits; (2) irreparable harm; (3) that the balance of equities tips in Plaintiffs' favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). In this district, "[t]he standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction" is the same, *Gomez v. Kelly*, 237 F. Supp. 3d 13, 14 (D.D.C. 2017); *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions."), and "when relief is sought against the government" the balance of equities and public interest factors merge into a single consideration. *Seeger v. United States Dep't of Def*., 306 F. Supp. 3d 265, 291 (D.D.C. 2018) (citing *United States Ass'n of Reptile Keepers, Inc. v. Jewell*, 103 F. Supp. 3d 133, 163 (D.D.C. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009))).

In applying this four-factored standard, district courts typically employ a sliding scale under which a particularly strong showing in one area can compensate for weakness in another." *Id*. at 334-35. "[T]he D.C. Circuit has explained: [I]t is not necessary that the plaintiff's right to a final decision . . . be absolutely certain . . . if the other elements are present." *Id*. at 335 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 844 (D.C. Cir. 1977)). Rather, a plaintiff need only raise "substantial questions going to the merits." *Id*. Upon an examination of these factors, Plaintiffs are clearly entitled to the relief sought.

## ARGUMENT

Despite the longstanding protections established by the Constitution, federal statutory law, and administrative guidance, Defendants have concocted a scheme under which Plaintiffs are forced to prioritize which fundamental right is most important to them: (1) the right to freely exercise their religion; (2) the right to earn a living; or (3) the right to remain free from the forcible injection of a medication, such as a vaccine, into a nonconsenting person's body.[20]

## I.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR RFRA & FREE EXERCISE CLAIMS

Plaintiffs filed this four-count (4) count Complaint against Defendants, asserting violations of (1) the Free Exercise Clause of the First Amendment; (2) the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb–3, *et seq.,* ("RFRA"); (3) the Equal Protection Clause of the Fifth Amendment; and (4) the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3 *et seq.* ("FDCA"). Plaintiffs address each in turn.

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The first words of the Bill of Rights, known as the Free Exercise Clause, "protect religious observers against unequal treatment" and against "laws

---

[20] *See* pg. 1, fn.'s 4-6 (each of these rights are fundamental and constitutionally protected).

that impose special disabilities on the basis of religious status." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2254 (2020). Since 1791, the First Amendment has protected those with sincerely held religious beliefs from government action "that discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). Indeed, it was "historical instances of religious persecution and intolerance that gave concern to those who drafted the Free Exercise Clause." *Bowen v. Roy*, 476 U.S. 693, 703 (1986). The gravity of our Founding Fathers' concern to protect the American people against religious persecution and intolerance has not dissipated even the slightest. If anything, Congress has *bolstered* the religious freedoms our Constitution provides.

In 1993, Congress enacted RFRA "to **provide very broad protection for religious liberty**." *Hobby Lobby*, 573 U.S. at 693. Under RFRA, a person whose exercise of religion is substantially burdened by the government "is entitled to an exemption from the rule unless the Government 'demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; *and* (2) is the least restrictive means of furthering that compelling governmental interest.'" *Id*. (quoting 42 U.S.C. § 2000bb-1(b) (emphasis added)).

### A. Plaintiffs Religious Beliefs are Sincerely Held

To determine the sincerity of Plaintiffs' religious beliefs, the court's "narrow function is to determine whether the plaintiffs' asserted religious belief reflects an *honest* conviction." *Hobby Lobby Stores, Inc.*, 573 U.S. at 686 (emphasis in original). As Christians, Plaintiffs sincerely believe that abortion is the murder of an innocent life and a grave sin against God and therefore, Plaintiffs cannot in good faith and morality condone, support, justify, or benefit (directly or indirectly) from the taking of innocent human life through abortion. (V. Compl. ¶75, 81.) Boiled

11

down to its essence, compliance with the Vaccine Mandate would undoubtedly constitute a sin against the Lord. (*Id.*)

### i.   But-For the Use of Fetal Cell Lines, the Vaccines Would Not Exist

There is no dispute that all currently available COVID-19 vaccines were either derived from, produced from, manufactured by, tested on, developed with, or are otherwise connected to aborted fetal cell lines.[21] (*Id.* ¶¶113-129.) Of course, it is well-known anti-abortion beliefs are fundamental to the Christian faith. (*Id.* ¶¶81, 87.) But even assuming *arguendo* Plaintiffs' honest beliefs differ from the beliefs of a central or systemic faith, the result is the same.

The "exercise of religion" includes "'any exercise of religion, **whether or not compelled by, or central to, a system of religious belief**'." *Hobby Lobby*, 573 U.S. at 696 (emphasis added) (quoting 42 U.S.C. § 2000cc-5(7)(A)). Thus, whether Plaintiffs have articulated a sincerely held religious belief that compels them to abstain from a particular action (*e.g.*, accept a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines derived from procured abortions) is the only relevant inquiry. Undeniably, the Verified Complaint and Plaintiffs' individual religious accommodation requests articulate Plaintiffs sincere religious belief that abortion is the murder of an innocent life and a grave sin against God. (V. Compl. ¶75.)

Because Plaintiffs religious beliefs are sincere, the next step is to determine whether the Vaccine Mandate imposes a "substantial burden" on the exercise of their beliefs. *See Hobby Lobby*, 573 U.S. at 696 (emphasis added) (quoting 42 U.S.C. § 2000cc-5(7)(A)).

---

[21] *See* PFIZER LEAKS: *Whistleblower Goes on Record, Reveals Internal Emails from Chief Scientific Officer & Senior Director of Worldwide Research Discussing COVID Vaccine ... 'We Want to Avoid Having the Information on the Fetal Cells Floating Out There'*, Project Veritas (Oct. 6, 2021), available at: https://www.projectveritas.com/news/pfizer-leaks-whistleblower-goes-on-record-%20reveals-internal-emails-from-chief/; *see also* North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines (Apr. 20, 2021); La. Dep't of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 21, 2020); Meredith Wadman, *Vaccines that use human fetal cells draw fire*, SCIENCE (June 12, 2020).

**B.  The Vaccine Mandate Substantially Burdens Plaintiffs' Sincere Religious Beliefs**

Absent the injunctive relief sought, Plaintiffs must choose whether to maintain their employment or forego their fundamental right to pursue a career of their choosing in lieu of exercising their fundamental rights to exercise their religion freely and to refuse the forcible injection of a medication such as a vaccine into their bodies.[22] Unfortunately, this is the exact position into which the Vaccine Mandates have directly and proximately forced Plaintiffs.

To determine whether the Vaccine Mandates impose a substantial burden on Plaintiffs' sincere religious beliefs, "the question that RFRA presents [is] whether the [vaccine] mandate imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with *their* religious beliefs." *Hobby Lobby*, 573 U.S. at 724 (emphasis added). "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

In *Hobby Lobby*, the Supreme Court "had little trouble concluding" that requiring a for-profit corporation to provide its employees with health coverage that included contraceptives constituted a substantial burden on the corporation's owner's religious beliefs. *Hobby Lobby*, 573 U.S. at 719.  Whereas the financial burden imposed on a for-profit corporation requiring it to economically contribute to its employee's health coverage constitutes a "substantial burden" on the corporation's owners' religious beliefs, *id.*, it must then be said that the physically invasive

---

[22] Alexandra Limon, *Dept. of Homeland Security warns of counterfeit vaccines for profit from criminal organizations*, BINGHAMTON HOMEPAGE (Dec. 21, 2020) available at: https://www.binghamtonhomepage.com/news/department-of-homeland-security-warns-of-counterfeit-vaccines-for-profit-from-criminal-organizations/ (quoting U.S. Surgeon General Jerome Adams, "A vaccine is a medication"); Pallavi Suyog Uttekar, M.D., *What are the Ages for Vaccines?* MEDICINENET (Mar. 9, 2021) ("A vaccine is a medication that trains the immune system to produce special proteins (antibodies) that fight a specific disease."), available at: https://www.medicinenet.com/what_are_the_ages_for_vaccines/article.htm (last visited Oct. 26, 2021).

burden the Vaccine Mandate imposes on Plaintiffs' sincerely held religious beliefs is at least substantial, and likely, constitutes an even greater burden.

Here, unlike *Hobby Lobby*, however, Defendants have already deprived Plaintiffs of both, their fundamental right to freely exercise their religion *and* their constitutional guarantee to equal protection under the law. The Supreme Court recognizes that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Indeed, just this year this Court has applied *Elrod* in the context of Free Exercise and RFRA claims. *See, e.g.*, *Roman Catholic Archbishop of Washington v. Bowser*, 20-cv-03625 2021 WL 1146399 (D.D.C. Mar. 25, 2021) (holding the same is "the same is true of rights afforded under the RFRA, which covers the same types of rights as those protected under the Free Exercise Clause.").

Perhaps there is no greater example of a substantial burden than our federal government placing American citizens who have dutifully served their countries – some, for more than two decades – in a position where they must choose whether they would prefer to be deprived of two fundamental rights, or merely just one. *Hobby Lobby*, 573 U.S. at 719; *McCormick*, 899 F. Sup.2d at 65; *Harper*, 494 U.S. at 229.

### C. The Vaccine Mandates are Subject to Strict Scrutiny Review and Defendants Cannot Satisfy this Burden

Burdens on religiously motivated conduct are subject to strict scrutiny under the Free Exercise Clause when a regulation lacks neutrality or general applicability. *Emp. Div. Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990). Such is expressly the case here and therefore the government bears the burden to establish that the Vaccine Mandates are both "justified by a compelling interest . . . ***and*** narrowly tailored to advance that interest." *City of Hialeah*, 508 U.S. at 533–34 (internal quotations omitted). Defendants cannot satisfy this burden.

### i.   The Vaccine Mandate Does Not Serve a Compelling Interest

Where, as here, Plaintiffs' First Amendment rights are at issue because, "the government must shoulder a correspondingly heavier burden and is entitled to considerably less deference in its assessment that a predicted harm justifies a particular impingement on First Amendment rights." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2472 (2018) (emphasis added). Because the Vaccine Mandates, absent the provision of religious accommodations, implicates Plaintiffs' fundamental rights, Defendants "must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994); *see also Edenfield v. Fane*, 507 U.S. 761, 770 (1993). This is so because "**[d]eference to [the government] cannot limit judicial inquiry when First Amendment rights are at stake.**" *Landmark Commc'ns, Inc. v. Maine*, 435 U.S. 829, 843 (1978).

While indeed, "[s]temming the spread of COVID–19[23] is unquestionably a compelling interest," *Roman Catholic Diocese*, 141 S. Ct. at 67, the Vaccine Mandates do not *serve* this interest.

### ii.   The Vaccine Mandate Is Not Narrowly Tailored

Naturally, the means must justify the ends – in other words, irrespective as to the compelling interest is the stand-alone requirement that the mechanism employed by governmental action must *actually satisfy* the interest it purports to effectuate. The Vaccine Mandates do not effectuate stemming the spread of COVI-19.

---

[23] Pursuant to Ex. Order 14042 ("This order promotes economy and efficiency in Federal procurement by ensuring that [federal contractors] . . . provide adequate COVID–19 safeguards to their workers performing on or in connection with [the] Federal Government . . ."; Ex. Order 14043 ("It is the policy of [the Biden] Administration to halt the spread of coronavirus disease 2019 (COVID–19) . . ."; *see also* DoD Order ("[M]andatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people." ).

Just six days ago, San Diego County published its COVID-19 Watch Report revealing a total of 2,925 positive COVID-19 cases: 1,591 cases involving vaccinated patients and 1,334 cases involving unvaccinated patients.[24] (*Id.*) There is no evidence, whatsoever, that demonstrates those with natural immunity are at a greater risk to themselves or others than those who are vaccinated. Put simply, natural immunity is effective. To the contrary, as of May 2021, an estimated 120.2 million people in the United States have already been infected with COVID-19 yet **not a single documented case of an infected individual re-contracting the virus and transmitting it exists**.[25] (V. Compl. ¶145.)

Inquisitively, if unvaccinated Plaintiffs pose a risk to vaccinated federal employees, and vaccinated federal employees pose a risk to vaccinated federal employees, Defendants are not terminating Plaintiffs because of a risk they pose that would otherwise be cured by inoculation; Defendants are terminating Plaintiffs for engaging in their fundamental right to the free exercise of religion.

Even assuming *arguendo* this Court finds the Vaccine Mandates stem the spread of COVID-19 in some capacity, the spectacularly cavalier assertion that the Vaccine Mandates are "narrowly tailored" and serve as the "least restrictive means necessary" is demonstrably meritless, as further explained below.

Strict scrutiny is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997), and the Supreme Court has acknowledged governmental action rarely passed this level of constitutional muster. *See Burson v. Freeman*, 504 U.S. 191, 200 (1992) ("[W]e readily acknowledge that a law rarely survives such scrutiny . . .".). Indeed, the "standard

---

[24] San Diego County, *Weekly Coronavirus Disease 2019 (COVID-19) Surveillance Report*, Health and Human Serv. Agency, (Sept. 20, 2021) (deducting the case total from the week ending 10/6/21 from the week ending 10/13/21).
[25] CDC, *Estimated COVID-19 Burden*, (July 27, 2021), available at: https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (last visited Oct. 22, 2021).

is not watered down; it really means what it says." *Tandon v. Newsom*, 141 S. Ct. 1294, 1298 (2021).

### 1. *Federal Employees Who Work Remotely are no threat*

Perhaps the most obvious example of the Vaccine Mandate's overbroad application is its applicability to federal employees who do not encounter federal employees outside their home. For example, Mr. Church has worked from home for 586 days, without incident. (V. Compl. ¶¶60, 132, 162.) His performance has exceeded expectations and rises above satisfactory standards. (*Id.*) He has not encountered, nor will he encounter in the future, any federal employee outside of his home under the currently feasible and reasonable accommodations the federal government has provided him. (*Id.*)

Likewise, Ms. Morgan also works from home full-time from her Maryland residence despite being assigned a duty station in Phoenix, Arizona. (*Id*. ¶131-32, 162.) Like Mr. Church, Ms. Morgan has also dutifully fulfilled her employment obligations to, at minimum, a satisfactory standard. She has not, nor will she in the future, encounter any federal employee in the performance of her duties if the accommodation she has already been provided is not revoked. (*Id*.) Throughout the entirety of her employment, Ms. Morgan has only physically visited an office twice; once, to get a battery in her government-provided computer replaced, and then a second time to replace the entire computer itself. (*Id*.)  Whether avoidable or not, neither occurrence is attributable to Ms. Morgan's conduct. (*Id.*)

Accordingly, it is conceivably possible, even when reviewed under the most strenuous of eyes, that the Vaccine Mandate to constitute the "least restrictive means necessary." Otherwise, its applicability would not include Mr. Church and Mrs. Morgan, nor are they the only Plaintiffs who exemplify the overbreadth of the Vaccine Mandate.

### 2.   *Other Federal Employees are Permitted to Abstain from Inoculation*

Unlike Plaintiffs, E.O. 14043 on its face exempts other federal Executive Branch employees, including those who work in the White House and the Executive Office of the President ("EOP") as well as the Centers for Disease Control and Prevention ("CDC"), National Health Institute ("NIH") and National Institute of Allergies and Infectious Diseases ("NIAID"), among others. (Exec. Order 14043 §§ 2-3.) This constitutes classic discrimination on the basis of religion. *Roman Cath. Diocese*, 141 S. Ct. at 67. (noting that regulations that treat houses of worship differently from retail businesses triggered strict scrutiny); *Tandon*, 141 S. Ct. at 1297 ("The State cannot assume the worst when people go to worship but assume the best when people go to work.") (internal quotation marks omitted)).

Further, the Vaccine Mandate is neither neutral nor of general applicability. Defendants refuse to permit Plaintiffs[26] to abstain from the Vaccine Mandate even though compliance thereto is prohibited by their sincerely held religious beliefs and violates their First Amendment rights; yet federal executive employees *the Administrator favors* are not even subject to the Vaccine Mandate despite being similarly (if not identically) situated as Plaintiffs. Perhaps no better example of religious discrimination exists than leveraging one fundamental right against another solely because Plaintiffs' religious beliefs do not comport with the arbitrary demands or pecuniary interests of the incumbent Administration.

The discriminatory applicability of the Vaccine Mandate can be succinctly articulated as two different scenarios: (1) its limited applicability as to employees of executive *agencies* and not

---

[26] Notwithstanding Special Agent Hallfrisch.

18

the Executive *Branch*;[27] and (2) its limited applicability to *some* Christians, such as Plaintiffs, but

not *all* Christians, such as Special Agent Hallfrisch (as discussed in more detail below).[28]

## II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM

Defendants' mandate unfairly singles out Plaintiffs because the Vaccine Mandate applies

to some federal employees, but not *all* federal employees. Plaintiffs do not contend President Biden

has the authority to compel mandatory vaccination requirements upon any employee of the

Legislative or Judicial branches; what Plaintiffs *do* contend, however, is that the Vaccine Mandates

merely require *some* federal employees of the Executive Branch, such as Plaintiffs, to be forcibly

vaccinated while other federal employees of the Executive Branch are exempt from the Vaccine

Mandate.[29] Specifically, E.O. 14043 only pertains to employees of the agencies defined by 5

U.S.C. § 105; it *does not* require federal employees of the Executive Brach employed with *inter*

*alia* the White House, the EOP, the CDC, the NIH, the WHO, or the  NIAID to be vaccinated

despite being similarly situated federal employees of the Executive Branch.

### A.  <u>Plaintiffs are Treated Differently than Similarly Situated Persons</u>

Defendants continue to deprive Plaintiffs of the very same religious accommodation a

Special Agent received thereby demonstrating unequivocally, a deprivation of the federal

employee Plaintiffs'[30] right to equal protection.

On September 29, 2021, U.S. Department of State Special Agent Hallfrisch received an

email confirming his request for a religious accommodation and exemption to the Vaccine

---

[27] *See supra*, fn. 18.

[28] *See infra,* II(A), p. 23.

[29] Exec. Order 14043 (limiting the scope of the Vaccine Mandate to the "agencies" as defined by 5 U.S.C. § 105).

[30] The term "federal employee Plaintiffs" shall mean all Plaintiffs except First Lieutenant Andrew Soto and Corporal Christopher Hall, both of whom are subject to the DoD Order as they currently serve in the United States Marine Corps. Special Agent Hallfrisch does not assert a claim for Equal Protection and while a federal employee, he is omitted from the inclusive natured intended herein.

Mandate had been approved. [31]   (V. Compl. ¶¶21, 62.) And just like Plaintiffs, Special Agent Hallfrisch is: (1) a devout Christian with sincerely held religious beliefs that prohibit his compliance with the Vaccine Mandate; (2) a federal employee with the meaning of E.O. 14043; (3) exposed to other federal employees in the performance of his duties; and (4) currently unvaccinated against COVID-19. (*Id.*) Plaintiffs and Special Agent Hallfrisch are not just similarly situated; they are virtually *identically* situated. (*Id.* ¶183.)

### B. Defendants are Impermissibly and Selectively Enforcing the Vaccine Mandate

Defendants are selectively enforcing the Vaccine Mandate amongst members within the same protected class on the basis of religion, the Vaccine Mandate is facially discriminatory (as discussed above) and impermissibly and selectively enforced against Plaintiffs' as members of a protected class while not enforced against similarly situated non-religious persons.[32]  Engaging in religious expression is the exercise of a fundamental right, both because it is religious exercise and because it is expression. *See, e.g., Johnson v. Robinson*, 415 U.S. 361, 375 n.14 (1974) ("Unquestionably, the free exercise of religion is a fundamental constitutional right."). Since the free exercise of religion is infringed upon by the Vaccine Mandate, strict scrutiny applies. *Tandon*, 141 S. Ct. at 1297. For the same reasons set forth in *supra* Section I(C) of this Memorandum, Defendants fair no better as to Plaintiffs' Equal Protection Claim. It is not subject to reasonable dispute Defendants cannot satisfy strict scrutiny.

### III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FEDERAL FOOD, DRUG AND COSMETIC ACT CLAIM

The FDCA prohibits anyone from introducing or delivering for introduction into interstate commerce any "new drug" or "biological product" unless and until FDA has approved the drug or

---

[31] Special Agent Hallfrisch did not lodge RFRA, First Amendment or Equal Protection claims in this action.
[32] *See supra,* p. 10 fn. 10.

product as safe and effective for its intended uses. *Id.* §§ 301(a), 505(a); *see also,* 21 U.S.C. §§ 331(a), 355(a); 42 U.S.C § 262(a). A vaccine is both a drug and a biological product. FDCA § 201(g); *see also* 21 U.S.C § 321(g); 42 U.S.C. § 262(i)(1); FDCA § 564(a)(4)(C) (defining "product" to mean "a drug, device, or biological product"). However, an exception exists whereas the FDCA authorizes the FDA to issue EUAs for medical products (*e.g.*, non-FDA-approved vaccines such as BioNTech, J&J, and Moderna) under certain emergency circumstances. 21 U.S.C. § 360bbb-3. **As of the date of this filing, there is no FDA-approved COVID-19 vaccine currently (or at any time prior to the date of this filing) available to anyone in the United States, including Plaintiffs.**

### A. Pfizer's FDA-Approved COMIRNATY® Vaccine Is Not Currently, Nor Has It Ever Been, Available to Anyone in the United States.

*First*, no FDA-approved COVID-19 vaccine has ever been made available to the DoD; thus, the only available vaccines are under EUA. *Second*, the EUA provisions of the FDCA require recipients of EUA-authorized medical products must "[be] informed . . . [of] the option to accept or refuse administration of the product." FDCA § 564(e)(1)(A)(ii)(III). *Third*, DoD personnel misinformed active-duty service members that they were to receive an FDA-approved COVID-19 vaccine during the week of August 30 to September 3. *Fourth*, the Director of the DiLorenzo Clinic confirmed that as of October 15, 2021, "Pfizer has not made any Comirnaty" "[t]here is no expected date when we will receive Comirnaty" and the DoD OIG COVID-19 Coordinator has confirmed that the Pentagon does not have COMIRNATY and does not know when COMIRNATY will be available. (*Id.* ¶¶6, 136.) *Fifth*, DoD personnel nevertheless have recorded on official medical records that COMIRNATY has, in fact, been administered as recent as October

8, 2021. (*Id.* ¶138.) ***Sixth*** an finally, the DoD itself has stated that at least one branch of the Armed Services "does not have a FDA approved COVID-19 vaccine product."[33]

On August 23, 2021, the FDA approved Pfizer's COMIRNATY® (COVID-19 vaccine, mRNA) (hereinafter, **"COMIRNATY"), which is legally distinguishable from Pfizer-BioNTech,** a second Pfizer vaccine, as evidenced by the FDA's COMIRNATY approval announcement."[34] (V. Compl. ¶¶93, 99, 106, 134.) Specifically, the FDA expressly states that Pfizer's COMIRNATY vaccine and Pfizer's BioNTech vaccine "**are legally distinct with certain differences** . . .".[35] (*Id.* ¶¶96, 100.) In no uncertain terms, COMIRNATY is a Pfizer vaccine that received FDA-approval on August 23, 2021. Pfizer-BioNTech is second Pfizer vaccine that has never received FDA-approval. Therefore, its administration, just like the J&J and Moderna vaccines, are subject to the EUA provisions of the FDCA.

Indeed, Pfizer and its marketing team strategically positioned the two vaccines as one in the public eye masterfully. (*Id.* ¶106.) However, once deception meets reality, it is unequivocally clear that this erroneous assertion bears to merit. **No FDA-approved Pfizer vaccine is available**. (*Id.*)

We know COMIRNATY and BioNTech are "**legally distinct**"[36] from one another. (*Id.* ¶93, 96-97, 100.) For example, the FDA's fact sheet[37] for recipients and caregivers, references "[t]he FDA-approved COMIRNATY (COVID-19 Vaccine, mRNA) and the FDA-*authorized* Pfizer-**BioNTech COVID-19 Vaccine under Emergency Use Authorization (EUA)** . . .". (*Id.* ¶

---

[33] Affidavit of Authentication, First Sergeant Kimberly D. Taylor, (Oct. 19, 2021); *see* Exhibit 1.

[34] The Food and Drug Administration, *Vaccine Information Fact Sheet for Recipients and Caregivers about COMIRNATY (COVID-19 Vaccine, mRNA) and Pfizer-BioNTech COVID-19 Vaccine to Prevent Coronavirus Disease 2019 (COVID-19)* (Aug. 23, 2021), available at: https://www.fda.gov/media/144414/download

[35] *Id.*

[36] *See supra*, footnote 26.

[37] The Food and Drug Administration, *Vaccine Information Fact Sheet for Recipients and Caregivers about COMIRNATY (COVID-19 Vaccine, mRNA) and Pfizer-BioNTech COVID-19 Vaccine to Prevent Coronavirus Disease 2019 (COVID-19)* (Aug. 23, 2021), available at: https://www.fda.gov/media/144414/download;

102.) In a press release[38] announcing Pfizer's collaboration with Brazil's Eurofarma to manufacture COVID-19 vaccine doses, Pfizer wrote, "COMIRNATY® (COVID-19 Vaccine, mRNA) is an FDA-approved COVID-19 vaccine made by Pfizer *for* BioNTech" – it did not say COMIRNATY *is* BioNTech.   (*Id.* ¶103.) The press release then conceded the "The Pfizer-**BioNTech COVID-19 vaccine has not been approved or licensed by the U.S. Food and Drug Administration (FDA)** . . .". (*Id.*)

Finally, the product's labeling is even indicative that the vaccines are distinguishable. (*Id.* ¶105.) In a letter addressed to Pfizer, the FDA stated, "The Pfizer-BioNTech COVID-19 Vaccine vial label and carton labels are **clearly marked for 'Emergency Use Authorization**.'" (*Id.* ¶105.) Despite the overwhelming evidence that leaves no question as to the fact that COMIRNATY and BioNTech are two different products, the DoD audaciously – and repulsively – devised a plot of its own, riddled with both threats of imminent adverse employment action and real instances of adverse employment action, as means to coerce and force active-duty service members, such as First Lieutenant Soto and Corporal Hall, to "give consent" to inoculation from what they were informed was an FDA-approved vaccine, all the while the DoD *knew for a fact* that what the DoD was injecting into the bodies of our servicemembers merely  EUA-authorized. (*Id.* ¶¶46, 137.)

### i.  DoD Emails and Statements Inherently Contradict the Medical Records of Active-Duty Military Personnel

On August 23, 2021, the FDA admitted: "[a]lthough COMIRNATY is approved . . . **there is not sufficient approved vaccine available for distribution** . . .".[39] (*Id.* ¶110.) Despite this, on

---

[38] Pfizer, *Pfizer and BioNTech Announce Collaboration with Brazil's Eurofarma to Manufacture COVID-19 Vaccine Doses for Latin America* (Aug. 26, 2021), available at: https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-announce-collaboration-brazils;

[39] Centers for Disease Control and Prevention, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, (last visited Sept. 15, 2021), available at: https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html

August 27, 2021, Captain Rylan Commins received an email in which Marine Lieutenant Alys Jordan, a HMLA-267 Flight Surgeon at Camp Pendleton, advised "**[t]he orders are in for the Comirnaty vaccine and we should have them by early next week**." (*Id.* ¶135.)

On October 15, 2021, Major Edwin Paz requested information from the DiLorenzo Clinic as to whether the clinic had any of the FDA-approved COMIRNATY available. In response from Dr. Seto, the Director of the DiLorenzo Clinic, Major Paz was informed that "Pfizer has not made any Comirnaty. There is no expected date when we will receive Comirnaty." (*Id.* ¶136.) This was also corroborated by DoD OIG COVID-19 Coordinator, Plaintiff Lesley Church, who has been informed by DoD officials that the Pentagon does not have COMIRNATY and does not know when COMIRNATY will be available. (*Id.* ¶136.)

It is indisputable: The United States Department of Defense does not, nor has it ever had, an FDA-approved COVID-19 vaccine. (*Id.* ¶137.) The FDA approved COMIRNATY on August 23, 2021; yet to date, no governmental entity, including the DoD, has ever had COMIRNATY in its possession. (*Id.*) Nevertheless, DoD officials advised Captain Commins that Camp Pendleton was expected to receive COMIRNATY "early [the following] week" and further falsified Warrant Officer One Jacob Workman's medical records. (*Id.* ¶138.)

Jacob Workman, a Chief Warrant Officer One in the Missouri National Guard has testified that his immunization records within the TRICARE medical portal reflect that he was inoculated on October 8, 2021: (*Id.*)

| Jacob Workman | CONFIDENTIAL | | Page 2 of 4 |
|---|---|---|---|

| IMMUNIZATION  HISTORY | | | |
|---|---|---|---|
| Date Range: All | | Sorted By: Vaccine (Ascending) | |
| Filter: None Applied | | | |

| Immunization | COVID-19 Pfizer (COMIRNATY) | | |
|---|---|---|---|
| Date Given | 08 Oct 2021 | Next Due Date | 29 Oct 2021 |
| Dosage | 0.3 ml | Series | |
| Provider | Unknown, Provider | Facility | |
| Manufacturer Name | Pfizer, Inc | Lot Number | FF8839 |

The federal government itself disposes of any question concerning Plaintiff's FDCA claim. In a Memorandum to the President, the DOJ confirms that administration of EUA-authorized vaccines (e.g., every single vaccine available) **"requir[e] potential recipients to be informed of the option to accept or refuse administration of the product** . . .".[40] (*Id.* ¶211.)

## IV.  PLAINTIFFS HAVE AND CONTINUE TO SUFFER IRREPARABLE HARM

As a direct and proximate result of Defendants' refusal to grant Plaintiffs' requests for religious accommodations and exemption from the Vaccine Mandates, Plaintiffs have: (1) have been denied their lawful entitlement to reasonable religious accommodations despite imposing no undue hardship upon Defendants;[41] (2) have been deprived of equal protection under federal statutory law and the United States Constitution as *some* federal Executive Branch employees are facially exempt from E.O. 14043 while other federal Executive Branch employees, such as Plaintiffs (notwithstanding Special Agent Hallfrisch) remain subject to E.O. 14043; (3) have been deprived of equal protection under federal statutory law and the United States Constitution as one or more federal executive agency employees who are subject to E.O. 14043 have received religious accommodations while other federal executive agency employees, such as Plaintiffs (notwithstanding Special Agent Hallfrisch), have not received religious accommodations despite being virtually identically situated; (4) continue to be deprived of their statutory entitlement to "accept or refuse" all currently available COVID-19 vaccines as no FDA-approved COVID-19 vaccine is currently available; and (5) Defendants continue to violate the requirement that all EUA-authorized medical product recipients give "informed consent" prior to *inter alia* inoculation. As a direct and proximate result, Plaintiffs now face the unconscionable choice of electing whether

---

[40] Dawn Johnsen Memorandum, *Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization*, DEPT. OF JUSTICE, (Jul. 6, 2021).
[41] Defendants have failed to articulate any basis in law or fact as to why accommodating Plaintiffs, as they have for nearly two (2) years, presently constitutes an undue hardship.

they want to practice their faith *or* maintain their employment and allow the government to violate their bodies *and* their sincerely held religious beliefs. Requiring anyone to endure this ultimatum patently violates the Constitution and federal statutory law.

As the Supreme Court has just recently affirmed, "**there can be no question that the challenged restrictions, if enforced, will cause irreparable harm**. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Roman Catholic Diocese*, 141 S. Ct. at 67 (2020) (emphasis added) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (expanding the scope of holding to encompass religious-based First Amendment claims in addition to speech-based claims).

Indeed, where Defendants' Vaccine Mandate "conflicts with plaintiffs and other individuals federally protected right to seek a religious accommodation from their individual employers," injunctive relief is appropriate. *Dr. A v. Hochul*, No. 1:21-cv-1009, 2021 WL 4734404, *10 (N.D.N.Y. Oct. 12, 2021) (internal quotations omitted). The Sixth Circuit has also held that "[e]nforcement of the [Vaccine Mandate] would deprive Plaintiffs of their First Amendment rights, an irreparable injury." *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 2021 WL No. 21-2945, 2021 WL 4618519, *6 (6th Cir. 2021).

Moreover, the Vaccine Mandate is placing Plaintiffs – and the entire U.S. population of roughly 336,000,000 people – squarely in harm's way. Absent a ready military (which will result from mass separations and/or discharges, both honorable and dishonorable) the United States is nothing more than a sitting duck waiting for our foreign adversaries to strike. And with regret to articulate such a devastating position, it must be raised that not only is our economic stature severely jeopardized; our physical safety is at a magnificent risk with devastating consequences.

Finally, the threat to terminate for military heroes who have risked everything to defend our freedoms is the worst imaginable betrayal. Some military chaplains fear the pressure, abuse, and threats will increase the rate of suicide. For the federal employees, the threat of ending their careers and punitively terminating them for cause so they cannot receive benefits is simply unfathomable. The irreparable harm Plaintiffs face could be articulated at nauseum.

## V. THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR AND INJUNCTIVE RELIEF IS IN THE PUBLIC'S BEST INTEREST

Defendants' Vaccine Mandates strip Plaintiffs of their abilities to receive (or even request) exemption and accommodation for the exercise of their sincerely held religious beliefs.

Courts "have a duty to conduct a serious examination of the need for such a drastic measure." *Catholic Diocese*, 141 S. Ct. at 68. And, as here, "it has not been shown that granting the applications will harm the public." *Id*. Nor could Defendants make such a showing, as Plaintiffs are merely seeking to rise each morning, don the same uniforms and protective equipment that sufficed to make them heroes for nearly two years, and continue to provide military defense, national security, and critical federal services to a Nation in need. Plaintiffs' vaccination status was irrelevant for nearly two years, yet for unknown reasons is purportedly relevant today.

Moreover, the federal government "is in no way harmed by the issuance of an injunction that prevents [it] from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011). Conversely, for Plaintiffs, even minimal infringements upon First Amendment values constitute irreparable injury; *Roman Cath. Archbishop of Wash*, 2021 WL 1146399, at *19; *Roman Catholic Diocese*, 141 S. Ct. at 67; *Elrod*, 427 U.S. at 373.

As *Dr. A* recognized when it enjoined New York's similar scheme, "the public interest lies with enforcing the guarantees enshrined in the Constitution and federal anti-discrimination laws." Dr. A, 2021 WL 4734404, at *10. Indeed, "[p]roper application of the Constitution . . . serves the

public interest[because] it is always in the public interest to prevent a violation of a party's constitutional rights." *Dahl*, 2021 WL 4618519, at *6 (emphasis added).

This Court has held that there is a "vital public interest in safeguarding religious freedoms protected by the Constitution and by statutes enacted by Congress." *Roman Cath. Archbishop of Wash*, 2021 WL 1146399, at *19 (RFRA protects First Amendment interests); *see also Tyndale House Publishers v. Sebelius*, 904 F. Supp. 2d 106, 130 (D.D.C. 2012) ("[T]here is undoubtedly also a public interest in ensuring that the rights secured under . . . RFRA, are protected."); *O Centro v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) (en banc), aff'd 546 U.S. 418 (2006) ("[T]here is a strong public interest in the free exercise of religion."). Binding precedent cannot be clearer: "**[e]nforcement of an unconstitutional [order] is <u>always</u> contrary to the public interest.**" *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511(D.C. Cir. 2016) ("In First Amendment cases, the likelihood of success will often be the determinative factor." (emphasis added).

As such, there is no comparison between the irreparable injury suffered by Plaintiffs and the non-existent interest Defendants have in enforcing unconstitutional mandates and depriving Plaintiffs of federally required protection of the exercise of their sincerely held religious beliefs. Absent the injunctive relief Plaintiffs request herein, Plaintiffs will suffer irreparable harm as their fundamental rights are trampled and they lose their jobs in the most critical industry pertaining to public health. If Defendants are not enjoined from enforcing the Vaccine mandate, hundreds of thousands of federal workers and military personnel will be forcibly removed from our government and Armed Forces, thrusting our nation into the most vulnerable position it has been in for a quarter-millennium. Allowing Defendants to continue enforcing the Vaccine Mandate that was issued to save lives will only cause more lives to be lost, or at the very minimum, subjected to dangers far greater than COVID-19. ***To do so would be unfathomable.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2021, that I contacted counsel for Defendants and provided notice that Plaintiffs would be filing this Application today, sent defense counsel copies of all papers submitted with this Motion and Plaintiffs' Verified Complaint in this action and the documents and attachments submitted therewith, and that the aforesaid documents have been provided to a private process server who will immediately commence service of process.


By:   /S/ MICHAEL A. YODER
         Michael A. Yoder