**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN CHURCH, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | No. 21-cv-2815 (CKK) |

**DEFENDANTS' OPPOSITION TO EMERGENCY APPLICATION
<u>FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

I.      BACKGROUND ......................................................................................... 2

      A.     The COVID-19 Pandemic ................................................................... 2

      B.     Federal Regulation of and Guidance Concerning COVID-19 Vaccines ............... 3

      C.     Vaccine Requirements for Federal Civilian Employees ................................ 4

      D.     Department of Defense COVID-19 Vaccine Directive ................................ 6

LEGAL STANDARD ........................................................................................................... 8

ARGUMENT ..................................................................................................................... 10

I.      The Case Is Constitutionally and Prudentially Unripe Because Any Injury Is Entirely Speculative. .......................................................................... 10

      A.     The Federal Civilian Employees' Claims Are Constitutionally Unripe. .............. 11

      B.     The Federal Civilian Employees' Claims Are Prudentially Unripe. ................... 12

      C.     The Service Member Plaintiffs' Claims Are Not Ripe. ............................... 15

      D.     The Service Member Plaintiffs Have Not Exhausted Their Administrative Remedies. ................................................................................ 16

II.     Plaintiffs Fail To Establish That Hypothetical Discipline Would Amount to Irreparable Injury. ............................................................................. 19

III.    Plaintiffs Are Unlikely To Succeed On The Merits. .................................... 24

      A.     Plaintiffs' RFRA and Free Exercise Claims Are Unlikely to Succeed. ............... 25

      B.     Plaintiffs' Equal Protection Claim Is Unlikely to Succeed. ........................... 29

      C.     Plaintiffs' FDCA Claim Is Unlikely to Succeed. .................................... 32

IV.    The Public Interest Weighs Heavily Against Injunctive Relief. ..................... 35

V.     Any Relief Should Be Narrowly Tailored. ............................................. 39

CONCLUSION ................................................................................................................. 40

# TABLE OF AUTHORITIES

## CASES

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ................................................................................. 8

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ................................................................................... 11, 13

*Am. Petrol. Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) .............................................................. 11, 13, 15, 17

*Am.'s Frontline Drs. v. Wilcox*,
   No. 21-1243, 2021 WL 4546923 (C.D. Cal. July 30, 2021) ...................................... 35

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ........................................................................... 12

*Ass'n of Flight Attendants-CWA v. Chao*,
   493 F.3d 155 (D.C. Cir. 2007) ..................................................................... 17, 19

*Avocados Plus, Inc. v. Veneman*,
   370 F.3d 1243 (D.C. Cir. 2004) ....................................................................... 18

*Bauer v. Summey*,
   --- F. Supp. 3d ----, 2021 WL 4900922 (D.S.C. Oct. 21, 2021) ............................... 21

*Beckerich v. St. Elizabeth Med. Ctr.*,
   --- F. Supp. 3d ----, 2021 WL 4398027 (E.D. Ky. Sept. 24, 2021).............................. 21, 22, 24

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ....................................................................................... 32

*Bois v. Marsh*,
   801 F.2d 462 (D.C. Cir. 1986) ..................................................................... 16, 17

*Bors v. Allen*,
   607 F. Supp. 2d 204 (D.D.C. 2009) ................................................................... 23

*Bridges v. Houston Methodist Hosp.*,
   ---F. Supp. 3d---, 2021 WL 2399994 (S.D. Tex. June 12, 2021)................................ 33, 35

*Brown v. Smith*,
   24 Cal. App. 5th 1135 (2018) ......................................................................... 27

*Bryant v. Gates*,
   532 F.3d 888 (D.C. Cir. 2008) ......................................................................... 19

*Burcham v. City of Los Angeles*,
   No. 2:21-cv-07296, 2021 WL 5049099 (C.D. Cal. Oct. 27, 2021) .......................................... 20

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ................................................................................................................ 25

*Care Net Pregnancy Ctr. of Windham Cty. v. USDA*,
   896 F. Supp. 2d 98 (D.D.C. 2012) .......................................................................................... 18

*Cargill v. Marsh*,
   902 F.2d 1006 (D.C. Cir. 1990) .............................................................................................. 17

*\*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) .......................................................................................... 19, 20

*Chappell v. Wallace*,
   462 U.S. 296 (1983) ................................................................................................................ 38

*Chilcott v. Orr*,
   747 F.2d 29 (1st Cir. 1984) ..................................................................................................... 23

*Chlorine Inst., Inc. v. Fed. R.R. Admin.*,
   718 F.3d 922 (D.C. Cir. 2013) ................................................................................................ 11

*Common Cause v. Trump*,
   506 F. Supp. 3d 39 (D.D.C. 2020) .......................................................................................... 11

*Cone v. Caldera*,
   223 F.3d 789 (D.C. Cir. 2000) .................................................................................................. 9

*Connecticut v. Massachusetts*,
   282 U.S. 660 (1931) .................................................................................................................. 1

*D.J. v. Mercer Cty. Bd. of Educ.*,
   No. 13-0237, 2013 WL 6152363 (W. Va. Nov. 22, 2013) ...................................................... 27

*Dahl v. Board of Trustees of Western Michigan University*,
   --- F. 4th ----, 2021 WL 4618519 (6th Cir. Oct. 7, 2021) ...................................................... 22

*\*Davis v. Billington*,
   76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................................................ 22

*\*Devia v. Nuclear Reg. Comm'n*,
   492 F.3d 421 (D.C. Cir. 2007) ........................................................................................... 1, 11

*Dilley v. Alexander*,
   603 F.2d 914 (D.C. Cir. 1979) ................................................................................................ 39

*Dixon v. Dist. of Columbia,*
   666 F.3d 1337 (D.C. Cir. 2011) ............................................................................ 29

*DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.,*
   887 F.2d 275 (D.C. Cir. 1989) .............................................................................. 12

*Doe v. Franklin Square Union Free Sch. Dist,*
   ---F. Supp. 3d---, 2021 WL 4957893 (E.D.N.Y. Oct. 26, 2021) ........................... 33

*Doe v. Zucker,*
   520 F. Supp. 3d 217 (N.D.N.Y. 2021) .................................................................. 29

*Doe 2 v. Trump,*
   319 F. Supp. 3d 539 (D.D.C. 2018) ...................................................................... 40

*Dowds v. Bush,*
   792 F. Supp. 1289 (D.D.C. 1992) .......................................................................... 16

*F.F. on behalf of Y.F. v. State,*
   65 Misc. 3d 616 (N.Y. Sup. Ct. 2019) .................................................................. 27

*Fails v. Sec'y, Dep't of Corr.,*
   No. 13-456, 2013 WL 6068859 (N.D. Fla. Nov. 16, 2013) ................................... 24

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.,*
   877 F.3d 487 (3d Cir. 2017) .................................................................................. 25

*Farris v. Rice,*
   453 F. Supp. 2d 76 (D.D.C. 2006) ........................................................................ 21

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs,*
   873 F. Supp. 2d 363 (D.D.C. 2012) ...................................................................... 15

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ............................................................................................. 40

*Friedman v. Clarkstown Cent. Sch. Dist.,*
   75 F. App'x 815 (2d Cir. 2003) ............................................................................ 25

*Friends of Animals v. Haugrud,*
   236 F. Supp. 3d 131 (D.D.C. 2017) ...................................................................... 15

*Friends of Keeseville, Inc. v. FERC,*
   859 F.2d 230 (D.C. Cir. 1988) .............................................................................. 12

*Gilbert v. James,*
   134 F. Supp. 3d 42 (D.D.C. 2015) .......................................................................... 9

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ................................................................................................. 39

*Gillan v. Winter*,
   474 F.3d 813 (D.C. Cir. 2007) ...................................................................................... 9

*Gilligan v. Morgan*,
   413 U.S. 1 (1973) ......................................................................................................... 18

*Goldman v. Weinberger*,
   475 U.S. 503 (1986) ............................................................................................. 10, 28

*Gordon v. Holder*,
   632 F.3d 722 (D.C. Cir. 2011) ...................................................................................... 8

*Guerra v. Scruggs*,
   942 F.2d 270 (4th Cir. 1991) ................................................................................. 23, 39

*Guilfoyle v. Beutner*,
   No. 2:21-cv-5009, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) ............................. 32

*Guitard v. Sec'y of Navy*,
   967 F.2d 737 (2d Cir. 1992) ......................................................................................... 23

*Harris v. Univ. of Mass., Lowell*,
   No. 21-11244, 2021 WL 3848012 (D. Mass. Aug. 27, 2021) ............................... 29, 35

*Harsman v. Cincinnati Children's Hosp. Med. Ctr.*,
   No. 21-597, 2021 WL 4504245 (S.D. Ohio Sept. 30, 2021) ................................. 21

*Hartikka v. United States*,
   754 F.2d 1516 (9th Cir. 1985) .................................................................................. 23

*Heller v. Doe ex rel. Doe*,
   509 U.S. 312 (1993) ..................................................................................................... 30

*Hidalgo v. F.B.I.*,
   344 F.3d 1256 (D.C. Cir. 2003) ................................................................................... 18

*Holland v. Nat'l Mining Ass'n*,
   309 F.3d 808 (D.C. Cir. 2002) ..................................................................................... 39

*Huls Am. Inc. v. Browner*,
   83 F.3d 445 (D.C. Cir. 1996) ......................................................................................... 9

*Isenberger v. Farmer*,
   463 F. Supp. 2d 13 (D.D.C. 2006) ......................................................................... 12, 17

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905) ............................................................................................... 29

*Johnson v. Brown*,
    No. 21-1494, 2021 WL 4846060 (D. Or. Oct. 18, 2021) ............................................. 22, 35, 36

*Klaassen v. Trs. of Ind. Univ.*,
    7 F.4th 592 (7th Cir. 2021) ...................................................................................... 29

*Klaassen v. Trs. of Ind. Univ.*,
    --- F. Supp. 3d ----, 2021 WL 3073926 (N.D. Ind. July 18, 2021) .................................... 29, 30

*Knehans v. Alexander*,
    566 F.2d 312 (D.C. Cir. 1977) ................................................................................... 17

*Kreis v. Sec'y of the Air Force*,
    866 F.2d 1508 (D.C. Cir. 1989) .................................................................................... 9

*Lehnhausen v. Lake Shore Auto Parts Co.*,
    410 U.S. 356 (1973) ............................................................................................... 30

*Levy v. Corcoran*,
    389 F.2d 929 (D.C. Cir. 1967) ................................................................................... 23

*Lewis v. Rumsfeld*,
    154 F. Supp. 2d 56 (D.D.C. 2001) .............................................................................. 16

*Love v. State Dep't of Educ.*,
    29 Cal. App. 5th 980 (2018) ..................................................................................... 27

*Lujan v. Nat'l Wildlife Ass'n*,
    497 U.S. 871 (1990) ............................................................................................... 13

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ............................................................................................... 39

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) ................................................................................................ 9

*Martin v. Stone*,
    759 F. Supp. 19 (D.D.C. 1991) ................................................................................. 17

*Mass. Corr. Officers Federated Union v. Baker*,
    No. 21-11599, 2021 WL 4822154 (D. Mass. Oct. 15, 2021) ................................. 22, 35, 36, 38

*McBride v. West*,
    940 F. Supp. 893 (E.D.N.C. 1996) ............................................................................. 39

*McCurdy v. Zuckert,*
  359 F.2d 491 (5th Cir. 1966) ............................................................................................ 23

*\*Mexichem Specialty Resins, Inc. v. EPA,*
  787 F.3d 544 (D.C. Cir. 2015) ..................................................................................... 8, 20

*Moore v. Summers,*
  113 F. Supp. 2d 5 (D.D.C. 2000) ..................................................................................... 21

*Munaf v. Geren,*
  553 U.S. 674 (2008) ............................................................................................................ 8

*Muwekma Ohlone Tribe v. Salazar,*
  708 F.3d 209 (D.C. Cir. 2013) ......................................................................................... 29

*Myles-Pirzada v. D.C. Army Nat'l Guard,*
  No. 92-5466, 1993 WL 215207 (D.C. Cir. June 8, 1993) ............................................... 17

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
  538 U.S. 803 (2003) ......................................................................................................... 12

*Nichols v. Agency for Int'l Dev.,*
  18 F. Supp. 2d 1 (D.D.C. 1998) ....................................................................................... 21

*Nken v. Holder,*
  556 U.S. 418 (2009) ..................................................................................................... 8, 35

*Norris v. Stanley,*
  --- F. Supp. 3d. ----, 2021 WL 4738827 (W.D. Mich. Oct. 8, 2021) .......................... 29, 35

*Norris v. Stanley,*
  --- F. Supp. 3d ----, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) .............................. 34

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
  523 U.S. 726 (1998) ......................................................................................................... 12

*\*Orloff v. Willoughby,*
  345 U.S. 83 (1953) ................................................................................................ 9, 18, 38

*Parisi v. Davidson,*
  405 U.S. 34 (1972) ........................................................................................................... 18

*\*Pelekai v. State of Hawai'i,*
  No. 21-343, 2021 WL 4944804 (D. Haw. Oct. 22, 2021) ........................................... 20, 35

*Prince v. Massachusetts,*
  321 U.S. 158 (1944) ......................................................................................................... 29

*Pub Citizen Rsch. Grp. v. FDA*,
  740 F.2d 21 (D.C. Cir. 1984) ............................................................................... 13

*\*Reinhard v. Johnson*,
  209 F. Supp. 3d 207 (D.D.C. 2016) ............................................................. 1, 23, 38

*Reno v. Cath. Social Servs., Inc.*,
  509 U.S. 43 (1993) ................................................................................................ 12

*Roberts v. United States*,
  741 F.3d 152 (D.C. Cir. 2014) ............................................................................... 9

*Roe v. Dep't of Def.*,
  947 F. 3d 207 (4th Cir. 2020) ............................................................................... 17

*Roman Catholic Archbishop of Washington v. Bowser*,
  --- F. Supp. 3d ----, 2021 WL 1146399 (D.D.C. Mar. 25, 2021) ............................ 22

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2021) ................................................................................... 26, 29, 35

*\*Sampson v. Murray*,
  415 U.S. 61 (1974) ..................................................................................... 20, 21, 22

*\*Sataki v. Broad. Bd. of Governors*,
  733 F. Supp. 2d 22 (D.D.C. 2010) ................................................................... 1, 21

*Schindler Elevator Corp. v. WMATA*,
  514 F. Supp. 3d 197 (D.D.C. 2020) ....................................................................... 10

*Schlesinger v. Councilman*,
  420 U.S. 738 (1975) .............................................................................................. 23

*\*Shaw v. Austin*,
  --- F. Supp. 3d ----, 2021 WL 1840397 (D.D.C. May 7, 2021) ............... 19, 20, 23, 24

*Sohm v. Fowler*,
  365 F.2d 915 (D.C. Cir. 1966) ............................................................................... 17

*Solorio v. United States*,
  483 U.S. 435 (1987) ................................................................................................ 9

*Stewart v. Spencer*,
  344 F. Supp. 3d 147 (D.D.C. 2018) ......................................................................... 9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .............................................................................................. 12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ............................................................................................ 3

*Texas v. United States*,
  523 U.S. 296 (1998) ..................................................................... 10, 12, 14, 15

*Thomas v. Union Carbide Agric. Prods. Co.,*
  473 U.S. 568 (1985) .................................................................................. 10, 15

*Tigges v. Northam*,
  473 F. Supp. 3d 559 (E.D. Va. July 21, 2020) ........................................... 35

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) .................................................................. 30, 39, 40

*Turner v. Dep't of Navy*,
  325 F.3d 310 (D.C. Cir. 2003) ....................................................................... 9

*U.S. ex rel. New v. Perry*,
  No. 96-0033, 1996 WL 420175 (D.D.C. Jan. 16, 1996) ........................... 23

*United States v. Bauer*,
  84 F.3d 1549 (9th Cir. 1996) ....................................................................... 25

*Valdez v. Grisham*,
  --- F. Supp. 3d ----, 2021 WL 4145746 (D.N.M. Sept. 13, 2021) .................... 34, 35

*Whitlow v. California*,
  203 F. Supp. 3d 1079 (S.D. Cal. 2016) ....................................................... 27

*Wilburn v. Dalton*,
  832 F. Supp. 943 (E.D. Pa. 1993) ............................................................... 23

*Williams v. Brown*,
  --- F. Supp. 3d ----, 2021 WL 4894264 (D. Or. Oct. 19, 2021) ..................... 20, 35

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................. 8, 10, 36

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ....................................................................... 1

*Wise v. Inslee*,
  No. 21-288, 2021 WL 4951571 (E.D. Wash. Oct. 25, 2021) .............. 21, 22, 35

*Workman v. Mingo County Bd. of Educ.*,
  419 F. App'x. 348 (4th Cir.) ................................................................... 27, 29

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
  165 F.3d 43 (D.C. Cir. 1999) ................................................................. 11, 15

*Zucht v. King*,
  260 U.S. 174 (1922) ................................................................................ 29

**STATUTES**

5 U.S.C. § 105 ............................................................................................. 31

5 U.S.C. § 701 ............................................................................................. 32

5 U.S.C. § 7513 ........................................................................................... 14

5 U.S.C. § 7703 ........................................................................................... 14

10 U.S.C. § 1552 ......................................................................................... 17

21 U.S.C. § 337 ........................................................................................... 32

21 U.S.C. § 360bbb-3 ......................................................................... 3, 32, 34

42 U.S.C. § 262 ............................................................................................. 3

**REGULATIONS**

5 C.F.R. § 752.404 ...................................................................................... 13

Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)
  Outbreak, Presidential Proclamation 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020) .................... 3

EUA Declaration,
  85 Fed. Reg. 18,250 (Apr. 1, 2020) ........................................................... 3

Requiring Coronavirus Disease 2019 Vaccination for Federal Employees,
  Exec. Order No. 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021) ...................... 4, 5, 30

**U.S. CONSTITUTION**

U.S. Const. amend I .................................................................................... 40

**OTHER AUTHORITIES**

Air Force Policy Directive 52-2 (July 28, 2020),
  https://perma.cc/HLD2-KMY8 ............................................................ 25, 28

ALLNAV 062/21,
  https://perma.cc/ZPQ7-ZVA9 ............................................................. 23, 36

Army Regulation 40-562,
    https://perma.cc/2LV6-6JEL ........................................................................................ 6, 25

Bryce H.P.  Mendez, Cong. Rsch. Serv., Defense Health Primer: Military
    Vaccinations (2021),
    https://go.usa.gov/xeC6h .............................................................................................. 6

Centers for Disease Control and Prevention, *Delta Variant* (updated Aug. 26, 2021),
    https://perma.cc/4RW6-7SGB. ............................................................................... 26, 27

COVID-19 Watch, Weekly Coronavirus Disease 2019 (COVID-19) Surveillance Report,
    https://perma.cc/QBZ5-HM2S ................................................................................... 26

*DoD Instruction 1300.17, Religious Liberty in the Military Services (Sept. 1, 2020),
    https://perma.cc/7TBB-RCYB ............................................................................... 19, 26

DoD Instruction 6205.02,
    https://perma.cc/ZU4H-CBA3 ..................................................................................... 6

FDA, Fact Sheet for Recipients and Caregivers (revised Oct. 20, 2021),
    https://www.fda.gov/media/144638/download ......................................................... 34

FDA, *News Release – FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021),
    https://perma.cc/C4DD-PWE5 ..................................................................................... 4

HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020),
    https://perma.cc/VZ5X-CT5R ................................................................................. 2, 3

Marine Corps Administrative Message 462/21 (Sept. 1, 2021),
    https://perma.cc/Z7GG-PQD2 ................................................................................. 7, 8

Mem. for all Department of Defense Employees (Aug. 9, 2021),
    https://perma.cc/H5G8-T62L. ............................................................................ 7, 8, 36

Mem. for Senior Pentagon Leadership, Commanders of the Combatant Commands,
    Defense Agency and DoD Field Activity Directors (Aug. 24, 2021),
    https://perma.cc/CV3J-EM3M ............................................................................... 7, 36

Michigan Department of Health & Human Servs., COVID-19 Vaccines & Fetal Cells,
    https://perma.cc/E5LX-JZSZ ..................................................................................... 26

Military Personnel Manual 1730-020 (Aug. 15, 2020),
    https://perma.cc/TCS9-ND6K. ............................................................................. 25, 28

Navy Administrative Message 190/21 (Aug. 24, 2021),
    https://perma.cc/Y4Q8-CPRG ..................................................................................... 7

North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines,
    https://perma.cc/Z42J-EYSP. ................................................... 26

Oct. 20, 2021 Letter of Authorization from FDA to ModernaTX, Inc.,
    https://www.fda.gov/media/144636/download ........................... 3

Oct. 20, 2021 Letter of Authorization from FDA to Janssen Biotech, Inc.,
    https://www.fda.gov/media/146303/download ........................... 3, 4

Oct. 29, 2021 Letter of Authorization from FDA to Pfizer Inc.,
    https://www.fda.gov/media/150386/download ........................... 3

Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies
    (June 2020),
    https://perma.cc/754N-56S9 ...................................................... 36

Protecting Our Forces: Improving Vaccine Acquisition and Availability in the US Military
    (Stanley M. Lemon, *et al.,* eds., National Academies Press 2002),
    https://perma.cc/E545-TQ9G ..................................................... 6

Task Force, COVID-19 Workplace Safety: Agency Model Safety Principles
    (updated Sept. 13, 2021),
    https://perma.cc/2GME-U67N .................................................... 5

Task Force, FAQs, Vaccinations, Enforcement of Vaccination Requirement for Federal
    Employees,
    https://perma.cc/YH2Z-CMDJ ................................................... 5

*Task Force, Frequently Asked Questions, Vaccinations, Limited Exceptions to Vaccination
    Requirement,
    https://perma.cc/5Q6U-4CGG ............................................. 5, 12, 27, 28

*Template: Request for a Religious Exception to the COVID-19 Vaccination
    Requirement,
    https://perma.cc/6A6D-EPH9 ............................................... 5, 12, 25

Template: Request for a Medical Exception to the COVID-19 Vaccination Requirement,
    https://perma.cc/LD7Q-D5JZ .................................................... 5

U.S. Dep't of Justice, Office of Legal Counsel, Whether Section 564 of the Food, Drug, and
    Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an
    Emergency Use Authorization,
    45 Op. O.L.C. __, 2021 WL 3418599 (July 6, 2021) .............................. 35

Vaccine Information Fact Sheet for Recipients and Caregivers About Comirnaty and the
    Pfizer-BioNTech COVID-19 Vaccine (revised Oct. 29, 2021),
    https://perma.cc/DSP9-72GP ................................................... 33, 34

VA Notice 22-01, Mandatory Coronavirus Disease 2019 (COVID-19)
    Vaccination Program for VA Employees (Oct. 4, 2021),
    https://perma.cc/VH9Z-TQT4 ................................................................................................ 5

WebMD, Some Medications Also Tied to Religious Vaccine Exemption,
    https://perma.cc/DEA6-6MGF

## INTRODUCTION

Plaintiffs—eighteen civilian government employees and two Marines—seek an order that "would automatically exempt on religious grounds all Christians," Oct. 27 Tr. at 4, from the COVID-19 vaccination requirements for the armed forces and the federal civilian workforce. *See* Emergency Appl. for TRO & Mot. for Prelim Inj., ECF No. 5 ("Mot."). Such an injunction would be extraordinary and unprecedented, and the Court should deny Plaintiffs' motion.

As an initial matter, no Plaintiff has a ripe claim. Each Plaintiff alleges that he has a pending request for a religious exception from COVID-19 vaccination, and each Defendant agency will evaluate that request in accordance with its ordinary policies before any discipline may be imposed. This is therefore a textbook case in which Plaintiffs' claims "depend[] on future events that may never come to pass." *Devia v. Nuclear Reg. Comm'n*, 492 F.3d 421, 425 (D.C. Cir. 2007).

Even if they could establish jurisdiction, Plaintiffs face no imminent threat of irreparable harm. Under the law of this Circuit, "[i]njunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'" *Wis. Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)). But that is exactly the situation here, where Plaintiffs can only speculate that their religious exceptions will be denied and they will be subject to discipline. And even if Plaintiffs could show that termination were imminent, "cases are legion holding that loss of employment does not constitute irreparable injury." *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22, 46–47 (D.D.C. 2010) (Kollar-Kotelly, J.) (internal quotation marks omitted); *see also, e.g.*, *Reinhard v. Johnson*, 209 F. Supp. 3d 207, 220 (D.D.C. 2016) (Kollar-Kotelly, J.) (same, as to separation from military service).

The merits of Plaintiffs' claims are no better.  The challenged mandates acknowledge that the law may require religious exceptions in particular cases, so there is no basis for a ruling that the mandates violate the Free Exercise Clause or the Religious Freedom Restoration Act ("RFRA") across the board.  Nor have Plaintiffs come close to demonstrating, at this stage, that requiring them to be vaccinated against COVID-19 is not the least restrictive means of achieving the compelling interest of reducing the spread of COVID-19 within the federal civilian workforce and military services—and to the members of the public with whom they interact.  Plaintiffs' equal protection claim fails because they are not part of a suspect class, and for more than a century, courts have uniformly upheld vaccination requirements as rationally related to the government's interest in promoting health and safety.  Finally, Plaintiffs' claim under the Federal Food, Drug, and Cosmetic Act ("FDCA") fails because they lack a private right of action to assert it and in any case it is premised upon incorrect facts.

The equities and the public interest further weigh heavily against preliminary relief.  An injunction against the civilian mandate would harm important public interests in slowing the spread of COVID-19 within the federal workforce, promoting the efficiency of the federal civil service, and handling government employment disputes through administrative procedures before recourse to federal court.  An injunction against the Department of Defense ("DoD") mandate would degrade military readiness and result in immediate and substantial harm to the national security. In contrast, denying the motion will not irreparably harm Plaintiffs because they face no imminent prospect of discipline and could obtain adequate remedies for any potential unlawful discharge.

## I.    BACKGROUND

### A.    The COVID-19 Pandemic

On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a public health emergency because of COVID-19, a respiratory disease caused by the novel

coronavirus SARS-CoV-2.  HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://perma.cc/VZ5X-CT5R.  On March 13, 2020, the President declared a national emergency.  85 Fed. Reg. 15,337 (Mar. 13, 2020).  In July 2021, the United States began to experience "a rapid and alarming rise in . . . COVID-19 case and hospitalization rates," driven by an especially contagious strain of SARS-CoV-2 known as the Delta variant.  *See* Centers for Disease Control and Prevention ("CDC"), *Delta Variant* (updated Aug. 26, 2021), https://perma.cc/4RW6-7SGB.[1]

### B.      Federal Regulation of and Guidance Concerning COVID-19 Vaccines

FDA has authority to review and approve "biological product[s]," including vaccines, as safe and effective for introduction into interstate commerce for their intended uses.  *See* 42 U.S.C. § 262(a)(1), (i)(1).  In an emergency, FDA may issue an "emergency use authorization" ("EUA"), even before such approval, which authorizes the marketing of vaccines (and other FDA-regulated products) "intended for use" in responding to the emergency.  21 U.S.C. § 360bbb-3.

In March 2020, the Secretary of HHS determined that "circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic." EUA Declaration, 85 Fed. Reg. 18,250, 18,250–51 (Apr. 1, 2020).  Based on that determination, FDA issued EUAs for COVID-19 vaccines developed by three companies—Pfizer-BioNTech, Moderna, and Johnson & Johnson.  *See* Ex. 1 (Decl. of Peter Marks, M.D., Ph.D) Exs. B, C;[2] *see also* Oct. 29, 2021 Letter of Authorization from FDA to Pfizer Inc., https://www.fda.gov/media/150386/download (revising and reissuing the December 2020 EUA)

---

[1] The Court may take judicial notice of factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007).

[2] The Marks Declaration was submitted in connection with separate litigation in the Northern District of Florida in which FDA action was challenged.  Here, it provides useful background information on the Pfizer EUA and approval.

("Pfizer EUA Letter"); Oct. 20, 2021 Letter of Authorization from FDA to ModernaTX, Inc., https://www.fda.gov/media/144636/download (same); Oct. 20, 2021 Letter of Authorization from FDA to Janssen Biotech, Inc., https://www.fda.gov/media/146303/download (revising and reissuing the February 2021 EUA). These EUAs were based on FDA's review of extensive safety and efficacy data, including from a Pfizer clinical trial with approximately 46,000 participants. *Id.*

On August 23, 2021, Pfizer's COVID-19 vaccine, under the name Comirnaty, obtained FDA approval for its intended use by people aged 16 years and older. Ex. 1 (Marks Decl.) Ex. A. This means that the vaccine, having successfully completed "the agency's standard process for reviewing the quality, safety and effectiveness of medical products," is no longer available only through an EUA.[3] FDA, *News Release – FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021), https://perma.cc/C4DD-PWE5.

### C.     Vaccine Requirements for Federal Civilian Employees

On September 9, 2021, President Biden issued Executive Order ("EO") 14043, addressing COVID-19 vaccination requirements for federal employees. *See* Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, Exec. Order No. 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021). EO 14043 instructs each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." 86 Fed. Reg. at 50,990. The directive is based on "public health guidance" providing that "the best way to slow the spread of COVID-19 and to prevent infection by the Delta variant or other variants is to be vaccinated." *Id*. at 50,989. The EO directs

---

[3] "Even after FDA approved Comirnaty, FDA authorized continued use of the Pfizer-BioNTech Covid-19 vaccine under an EUA for indications that included the approved use." Marks Decl. ¶ 8.

the Safer Federal Workforce Task Force ("Task Force") to issue guidance on implementation of the vaccination requirement.  *Id*. at 50,990.[4]

The Task Force guidance recognizes that federal employees may be eligible for exceptions to the vaccination requirement based on a medical condition or religious objection, *see* Task Force, Frequently Asked Questions ("FAQs"), Vaccinations, Limited Exceptions to Vaccination Requirement, https://perma.cc/5Q6U-4CGG ("Exception FAQs"), and directs each agency to "follow its ordinary process to review and consider what, if any, accommodation it must offer" under applicable federal law, *see* Task Force, FAQs, Vaccinations, Enforcement of Vaccination Requirement for Federal Employees, https://perma.cc/YH2Z-CMDJ ("Enforcement FAQs"); *see also* Template: Request for a Medical Exception to the COVID-19 Vaccination Requirement, https://perma.cc/LD7Q-D5JZ; Template: Request for a Religious Exception to the COVID-19 Vaccination Requirement, https://perma.cc/6A6D-EPH9 ("Religious Exception Template").

Federal employees without an exception should be fully vaccinated "no later than November 22, 2021." Task Force, COVID-19 Workplace Safety: Agency Model Safety Principles at 1 (updated Sept. 13, 2021), https://perma.cc/2GME-U67N.  An employee who requests an exception will not be subject to discipline while the request is under consideration.  *See* Enforcement FAQs.  If an exception request is denied, the employee should be given two weeks from the denial to receive the first (or only) dose of a COVID-19 vaccine before being subject to

---

[4] Health care professionals employed by the Department of Veterans Affairs, including Plaintiff Stephanie Perrotta, were also subject to a separate mandate, VA Notice 22-01, which required compliance by October 8, 2021.  *See* VA Notice 22-01, Mandatory Coronavirus Disease 2019 (COVID-19) Vaccination Program for VA Employees (Oct. 4, 2021), https://perma.cc/VH9Z-TQT4.  This policy replaced an earlier COVID-19 vaccination policy, VHA Directive 1193, dated August 13, 2021.  VA Notice 22-01 permits requests for religious exceptions, *see* VA Notice 22-01 at 3, 4, 9-10, and provides that employees will not be disciplined while a request is pending, *see id.* at 10.

discipline.  *See* Exception FAQs.

### D.    Department of Defense COVID-19 Vaccine Directive

The U.S. military instituted its first immunization program in 1777 when General Washington directed the inoculation of the Continental Army for smallpox.  *See* Protecting Our Forces: Improving Vaccine Acquisition and Availability in the US Military (Stanley M. Lemon, *et al.,* eds., National Academies Press 2002) at 37, tbl. 1-1, https://perma.cc/E545-TQ9G.  Deaths due to infectious diseases outnumbered those due to direct combat injuries until World War II.  *Id.* And more recently, disease accounted for nearly 70% of U.S. Army Hospital admissions during the Persian Gulf War.  *Id*.  Military-mandated vaccines have played a key role in reducing infectious disease morbidity and mortality among military personnel.  *Id.* at 37, tbl. 1-1 (highlighting the use of vaccines by U.S. military in armed conflict).  For decades, the military has implemented a variety of enduring or situational inoculation measures to maintain the readiness of the force.  *Id*.; *see also* Bryce H.P. Mendez, Cong. Rsch. Serv., Defense Health Primer: Military Vaccinations (2021), https://go.usa.gov/xeC6h.

The Department of Defense's ("DoD") current immunization program is governed by DoD Instruction ("DoDI") 6205.02, https://perma.cc/ZU4H-CBA3.  Nine vaccines are required for all service members, including the annual influenza vaccine, while eight others are required when certain elevated risk factors are present.  *See* Army Regulation ("AR") 40-562 at 35, tbl. D-1, https://perma.cc/2LV6-6JEL.  In general, DoD aligns its immunization requirements and eligibility determinations for service members with recommendations from the CDC and its Advisory Committee on Immunization Practices.  DoDI 6205.02, https://perma.cc/ZU4H-CBA3, at 3.  The Military Services have separately issued regulatory guidance for the administration of vaccines to service members, including establishing a process for service members to seek medical and religious exemptions to vaccine requirements.  *See* AR 40-562, ch. 2-6.

On August 9, 2021, Secretary of Defense Lloyd Austin, noting the rise in infection rates caused by the Delta variant of COVID-19 and the impact these rates might have on military readiness, announced that he would add the COVID-19 vaccine to the list of vaccines required for all service members by the earlier of mid-September or upon approval by the FDA. *See* Mem. for all Department of Defense Employees (Aug. 9, 2021), https://perma.cc/H5G8-T62L.  On August 24, 2021, after FDA announced the approval of the Pfizer COVID-19 vaccine, Secretary Austin directed the Secretaries of the Military Departments to immediately begin full vaccination of all members of the armed forces under DoD authority who were not already fully vaccinated against COVID-19.   *See* Mem. for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency and DoD Field Activity Directors (Aug. 24, 2021), https://perma.cc/CV3J-EM3M.  This DoD policy requires only the administration of vaccines that have received FDA approval.  *Id.*

Shortly thereafter, the Military Services issued guidance for implementing the Secretary's directive.  As with other vaccine requirements, Service implementation guidance provides for a process for a service member to seek medical and religious exemptions from the COVID-19 vaccine.  *See* Ex. 2 (Fragmentary Order ("FRAGO") 5 to Headquarters Department of the Army Executive Order 225-21) ¶ 3.D.8.B.6; Navy Administrative Message ("NAVADMIN") 190/21 (Aug. 24, 2021), https://perma.cc/Y4Q8-CPRG, ¶ 3.d; Marine Corps Administrative Message ("MARADMIN") 462/21 (Sept. 1, 2021), https://perma.cc/Z7GG-PQD2, ¶¶ 3j, 3k; Ex. 3 (Dep't of the Air Force COVID-19 Vaccine Implementation Guidance (Sept. 3, 2021)) ¶¶ 4.5, 5.1.  The Marine Corps, similar to the other Services, has an appeal process available to service members seeking religious exemptions if their initial requests are denied.  Ex. 4 (Decl. of Lieutenant General David J. Furness) ¶ 12.b.

A service member who refuses vaccination and does not have an approved exemption may be subject to discipline and adverse administrative action. *See, e.g.*, MARADMIN 462/21, https://perma.cc/Z7GG-PQD2, ¶ 3.l. Adverse action will not be taken, however, against a service member with a pending exemption request. *See, e.g.*, Ex. 4 (Furness Decl.) ¶¶ 9, 12 n.7. Only senior military officers—in the Marine Corps, General Officer and above—may initiate adverse action against a service member who refuses vaccination. MARADMIN 462/21, https://perma.cc/Z7GG-PQD2, ¶ 3.l.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must establish by "clear evidence" that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The "first and most important factor" is whether the moving party has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). The Supreme Court has also stressed, however, that a preliminary injunction cannot issue based on a mere "possibility" of harm. *Winter*, 555 U.S. at 22. Rather, as long held in this Circuit, the moving party must establish that the claimed injury is "both certain and great," "actual and not theoretical." *E.g.*, *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). An application for a temporary restraining order is governed by similar analysis. *See, e.g., Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011).

Judicial review is especially deferential when the judiciary is called to review a military decision.  *See Turner v. Dep't of Navy*, 325 F.3d 310, 313–14 (D.C. Cir. 2003); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 375 (1989).  This Circuit has consistently held that "[t]he broad grant of discretion the Congress [gives a Service] Secretary" compels review of a military decision under an "*unusually deferential* application of the arbitrary or capricious standard of the APA."  *Stewart v. Spencer*, 344 F. Supp. 3d 147, 153 (D.D.C. 2018) (emphasis added) (quoting *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014)), *aff'd sub nom. Stewart v. McPherson*, 955 F.3d 1102 (D.C. Cir. 2020); *see also Huls Am. Inc. v. Browner*, 83 F.3d 445, 452 (D.C. Cir. 1996) ("[W]e will give an *extreme degree of deference* to the agency . . . .").  The Court need only determine "whether the Secretary's decision making process was deficient, not whether his decision was correct."  *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989); *see Gilbert v. James*, 134 F. Supp. 3d 42, 58 (D.D.C. 2015) (determining "merely whether the explanation for the decision was reasonable") (emphasis added) (citing *Gillan v. Winter*, 474 F.3d 813, 819 (D.C. Cir. 2007)).  "This deferential standard is calculated to ensure that the courts do not become a forum for appeals" for every military member, "a result that would destabilize military command and take the judiciary far afield of its area of competence."  *Stewart*, 344 F. Supp. 3d at 153 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)); *see also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").

Deference is extended to the armed forces even where service members' constitutional rights are implicated.  *See, e.g.*, *Solorio v. United States*, 483 U.S. 435, 448 (1987) ("we have adhered to this principle of deference in a variety of contexts where, as here, the constitutional

rights of servicemen were implicated"); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986) ("Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society."). The same is true where the court considers a request for a preliminary injuction. *See Winter*, 555 U.S. at 24.

## ARGUMENT

### I.    The Case Is Constitutionally and Prudentially Unripe Because Any Injury Is Entirely Speculative.

At the outset, the Court should deny Plaintiffs' motion for a preliminary injunction because it lacks jurisdiction over this unripe case. *See, e.g.*, *Schindler Elevator Corp. v. WMATA*, 514 F. Supp. 3d 197, 212 (D.D.C. 2020) (where court lacks jurisdiction, a plaintiff is "not entitled to any relief, let alone the extraordinary remedy of a preliminary injunction"), *aff'd*, No. 21-7008, 2021 WL 4928730 (D.C. Cir. Oct. 22, 2021). All Plaintiffs allege that they have submitted requests for religious exceptions to their employers, *see* ECF No. 1, Compl. ¶¶ 60-77, each of which is required to consider the request and grant exceptions as required by law.[5] Because Defendants may except Plaintiffs from the vaccination requirements (as Special Agent Hallfrisch's case demonstrates, *id*. ¶ 62), Plaintiffs' claims depend "upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985)). Accordingly, the claims are not ripe and the Court lacks jurisdiction to hear them.

Ripeness is a component of subject-matter jurisdiction: "Just as the constitutional standing requirement for Article III jurisdiction bars disputes not involving injury-in-fact, the ripeness

---

[5] Plaintiff Joshua Schmidt alleges that he has submitted a request for a religious exception, *see* Compl. ¶ 68; in the short time since this case was filed, his employing agency, U.S. Customs and Border Protection, has been unable to locate it. The issue is immaterial here because Mr. Schmidt either already has submitted a request, as he alleges, or could submit one now.

requirement excludes cases not involving present injury." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999). The ripeness requirement "protect[s] the agencies from judicial interference until an administrative decision has been formalized," *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), and contains both constitutional and prudential elements. *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386–37 (D.C. Cir. 2012); *Common Cause v. Trump*, 506 F. Supp. 3d 39, 44–45 (D.D.C. 2020). Constitutional ripeness turns on whether the plaintiff has established "an injury-in-fact that is imminent or certainly impending." *Am. Petrol. Inst.*, 683 F.3d at 386 (citation omitted). Prudential ripeness balances "the fitness of the issues for judicial decision" against "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 148–49. Here, Plaintiffs' purely speculative claims are neither constitutionally nor prudentially ripe.

## A.    The Federal Civilian Employees' Claims Are Constitutionally Unripe.

Plaintiffs' claims "depend[] on future events that may never come to pass," *Devia*, 492 F.3d at 425—specifically that Defendants will deny their requests for religious exceptions. Plaintiffs contend that "Defendants have implemented processes that preclude, either expressly or indirectly, Plaintiffs' ability to submit religious accommodation requests," Mot. at 9, but that is obviously not true because each Plaintiff alleges that he has submitted a religious accommodation request. While those requests are pending, Plaintiffs face no "imminent or certainly impending injury," *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013), because Plaintiffs are not required to become vaccinated and are not subject to discipline. And if their exception requests are granted, Plaintiffs will not have to receive the COVID-19 vaccine and the injuries alleged in this case will not occur.

Nor is there any basis to assume that Plaintiffs' requests will be denied. Agencies are required to provide accommodations required by law and will evaluate each request for a religious

exception on an individual basis, Task Force, Religious Exception Template, https://perma.cc/6A6D-EPH9; *see also* Exceptions FAQs.  Indeed one Plaintiff's request has already been granted, *see* Compl. ¶ 62.  Even if there is a possibility that Defendants will deny other Plaintiffs' requests, any resulting injury is "purely hypothetical at this time."  *Isenberger v. Farmer*, 463 F. Supp. 2d 13, 21 (D.D.C. 2006); *see also Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 236 (D.C. Cir. 1988) ("The mere potential for future injury . . . is insufficient to render an issue ripe for review."); *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (noting in the standing analysis, court may "reject as overly speculative those links which are predictions of future events").  And because those injuries "may not occur at all," *Texas*, 523 U.S. at 300, the Court is "barred from determining the issues presented" in Plaintiffs' "hypothetical case," *DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 296 (D.C. Cir. 1989) ("a lack of ripeness arising from the fact that no concrete injury has yet occurred is jurisdictional").

### B.    The Federal Civilian Employees' Claims Are Prudentially Unripe.

Ripeness also incorporates a prudential requirement.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  Even if a case is constitutionally ripe (and this one is not), there may also be "prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (quoting *Reno v. Cath. Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).  In evaluating the prudential requirement, courts should consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented."  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Because Plaintiffs have rushed to federal court without even waiting for Defendants to make initial, first-level decisions on their religious exception requests, this case presents a textbook

example of a case that is prudentially as well as constitutionally unripe.  As the D.C. Circuit has observed, "[i]n the context of agency decisionmaking, letting the administrative process run its course before binding the parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process."  *Am. Petr. Inst.*, 683 F.3d at 386 (quoting *Abbot Labs.*, 387 U.S. at 148); *see also Lujan v. Nat'l Wildlife Ass'n*, 497 U.S. 871, 891 (1990) (a "regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him").  This is true for many reasons, all of them applicable here.  Declining jurisdiction where there is "still time for the challenging party to 'convince the agency'" of its position provides the agency an opportunity to "'apply its expertise,' potentially eliminating the need for (and costs of) judicial review."  *Am. Petr. Inst.*, 683 F.3d at 387 (quoting *Pub Citizen Rsch. Grp. v. FDA*, 740 F.2d 21, 30 (D.C. Cir. 1984)).  Also, "[e]ven if the challenger fails to persuade the agency, permitting the administrative process to reach its end can at least solidify or simplify the factual context and narrow the legal issues at play, allowing for more intelligent resolution of any remaining claims and avoiding inefficient and unnecessary piecemeal review."  *Id.* (citations omitted).

As discussed above, Plaintiffs may obtain religious accommodations from their employers (as one already has), and if they do, resources expended to resolve that issue in this Court will have been wasted.  Even if certain Plaintiffs' requests are ultimately denied, allowing the Defendant agencies to reach an initial decision with respect to the requests will necessarily solidify the dispute between the parties and create a record (making clear, for example, what Plaintiffs' job duties are,

any difficulties associated with accommodating any particular request, and the extent to which the vaccination requirement as applied to an individual employee is narrowly tailored to serve the government's compelling interest in stopping the spread of COVID-19), while potentially narrowing the legal issues the Court must decide.

As to fitness of the issues, the "operation of" the executive order, like the operation of the statute challenged in *Texas v. United States*, "is better grasped when viewed in light of a particular application." 523 U.S. at 301.  Even if Plaintiffs' religious exception requests are denied by their employing agencies, it is impossible to know with certainty what discipline Defendants would impose, and there is no basis to assume that that Plaintiffs would be "removed," Mot. at 28, from their federal employment in every instance.  For example, Task Force guidance recommends that any disciplinary proceeding begin with a five-day period of education and counseling regarding the benefits of vaccination, Enforcement FAQs, followed by a suspension of up to fourteen days, after which continued noncompliance may result in additional discipline, up to and including removal from federal service.  *Id*.  Even where an agency seeks to remove a federal employee, it must generally provide advance written notice, an opportunity for the employee to respond, and a written decision setting forth the basis for the removal.  *See generally* 5 C.F.R. § 752.404.  If the ultimate disciplinary action is a sufficiently serious "adverse action," such as removal, most federal employees can then generally appeal that decision directly to the Merit Systems Protection Board, with judicial review of the Board's decisions available in the Federal Circuit.  *See* 5 U.S.C. §§ 7513(d), 7703(b)(1).  Plaintiffs could also seek judicial review pursuant to Title VII after properly exhausting their claims.

In light of the availability of these procedures to resolve any dispute between Plaintiffs and Defendants that survives after the agencies issue decisions respecting Plaintiffs' religious

exception requests, this dispute is not ripe for judicial resolution.  *See, e.g.*, *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 371 (D.D.C. 2012) (no prudential ripeness where the "possibility that further consideration will occur" before an agency applies its policy to the challenging party "is not theoretical, but real" (quoting *Wyo. Outdoor Council*, 165 F.3d at 56)).  Nor would Plaintiffs suffer hardship from postponing judicial review.  "Generally speaking, hardship will establish ripeness only where 'postponing review … impose[s] a hardship on the complaining party that is immediate, direct, and significant.'"  *Friends of Animals v. Haugrud*, 236 F. Supp. 3d 131, 135 (D.D.C. 2017) (citation omitted); *see also Am. Petr. Inst.*, 683 F.3d at 389 (hardship must be "immediate and significant," and "[c]onsiderations of hardship that might result from delaying review 'will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions'" (citation omitted)).  The federal employee plaintiffs cannot show such hardship where, as discussed above, they cannot be disciplined for failure to comply with the requirement while their requests are pending, they may ultimately have their requests granted, and there are procedures generally available to challenge any adverse employment decision resulting from a continued refusal to take a COVID-19 vaccine.  *See infra* Part II.

### C.     The Service Member Plaintiffs' Claims Are Not Ripe.

Claims of service member Plaintiffs who have pending exemption requests also are not ripe because any harm from receiving the vaccine or facing adverse disciplinary action rests "upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States,* 523 U.S. at 300 (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81 (1985)).  If the military grants the requests, the service members will be exempted from the COVID-19 vaccination requirement, and while they wait for a determination, they are not subject to any adverse employment or disciplinary action.  *See, e.g.*, Ex. 4 (Furness Decl.) ¶¶ 9, 12 n.7.  Even if their exemption requests are denied, and the military Plaintiffs refuse to comply

and face adverse action—a series of hypothetical, future events—the military has administrative

appeal procedures that offer them multiple opportunities to present their arguments to their Service

and for their Service to respond.  *See id.* ¶¶ 13–22.  Until those military procedures are exhausted,

the service member Plaintiffs cannot seek relief in this court.

**D.     The Service Member Plaintiffs Have Not Exhausted Their Administrative Remedies.**

Service member Plaintiffs Soto and Hall have not exhausted their administrative remedies.

They claim that they have submitted requests for religious exemptions and that those were both

denied.  Compl. ¶¶ 23–24.  But neither Soto nor Hall have completed the appeal processes for

those initial denials.  Ex. 5 (Decl. of Jeremy W. Beaven) ¶ 6; Ex. 6 (Decl. of William M. Jurney)

¶ 7; Ex. 7 (Decl. of Kerry A. Cerny) ¶¶ 3–6.  Both have temporary exemptions while their appeals

are pending and neither has been subject to discipline for failing to receive the vaccine.  Ex. 5

(Beaven Decl.) ¶¶ 5, 7; Ex. 6 (Jurney Decl.) ¶ 9.  Even if the Navy denies their appeals and

Plaintiffs disobey the order, they would have only exhausted their administrative remedies *after*

completing any military and appeals processes associated with any disciplinary action.  In cases

involving "relief sought from a discharge (or failure to promote)," "pursuing administrative relief

prior to seeking judicial relief" is the proper course.  *Dowds v. Bush*, 792 F. Supp. 1289, 1292

(D.D.C. 1992).  "[W]hen exhaustion is required, it is not complete if relief has not been sought

before the [Board for the Correction of Military Records]"—"it is insufficient for the plaintiff to

have pursued relief through the chain of military command only."  *Lewis v. Rumsfeld*, 154 F. Supp.

2d 56, 61 (D.D.C. 2001).

In this Circuit, "the salutary rule [is] that 'an aggrieved military officer must first exhaust

his administrative remedies with his particular service's Board for Correction of Military Records

prior to litigating his claims in a federal court.'"  *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir.

1986) (quoting *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C. Cir. 1977)); *see Myles-Pirzada v. D.C. Army Nat'l Guard*, No. 92-5466, 1993 WL 215207, at *1 (D.C. Cir. June 8, 1993) (per curiam) (summary affirmance because appellant "failed to exhaust administrative remedies available to her before the Army Board for Correction of Military Records"); *Cargill v. Marsh*, 902 F.2d 1006, 1008 (D.C. Cir. 1990) (affirming dismissal for failure to appeal to the BCMR, relying on "the heightened deference Congress intended the courts to accord determinations of the Correction Board in proceedings under 10 U.S.C. § 1552(a)"); *Isenbarger*, 463 F. Supp. 2d at 25; *Martin v. Stone*, 759 F. Supp. 19, 21 (D.D.C. 1991).

"This policy [of prudential administrative exhaustion], although subject to the exercise of discretion, has been applied by numerous courts in the context of Boards for Correction of Military Records, and it has evolved to the point where it can be formulated as a rule that the administrative remedy should be exhausted unless the party invoking the court's jurisdiction can demonstrate special circumstances." *Sohm v. Fowler*, 365 F.2d 915, 918 (D.C. Cir. 1966) (finding no special circumstances). The doctrine of "exhaustion ensures that imminent or ongoing administrative proceedings are seen through to completion." *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 158–59 (D.C. Cir. 2007). Even cases where a plaintiff "allege[s] the deprivation of a constitutional right" or claims the military "has acted in violation of applicable statutes," "the plaintiff must have exhausted the available intraservice corrective measures" before bringing suit in federal district court. *Roe v. Dep't of Def.*, 947 F.3d 207, 218 (4th Cir. 2020) (as amended (Jan. 14, 2020)). The doctrine of prudential ripeness likewise supports requiring exhaustion of administrative remedies. *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 387 (D.C. Cir. 2012) (prudential ripeness doctrine ensures an agency has "full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding").

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972); *see also Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). All three of these purposes would be served by requiring these Plaintiffs to exhaust their administrative remedies.

Requiring administrative exhaustion would allow the military to consider all of Plaintiffs' evidence in the first instance. Allowing this case to proceed before the military has made a decision on Plaintiffs' religious exemption requests "would undercut the purposes of exhaustion, namely, preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review." *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (cleaned up); *see also Care Net Pregnancy Ctr. of Windham Cty. v. USDA*, 896 F. Supp. 2d 98, 112 (D.D.C. 2012).

Requiring administrative exhaustion would also allow the military to apply its unique expertise to the issues. Respectfully, the military is best situated to assess whether a particular unvaccinated service member puts the military mission at risk, or whether feasible, less restrictive alternatives to vaccination are available. *See Orloff*, 345 U.S. at 94 ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."); *cf. Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("The ultimate responsibility for [military] decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability."). After all, "the Supreme Court has indicated" that "military decisions and assessments of morale, discipline, and unit

cohesion . . . are well beyond the competence of judges." *Bryant v. Gates*, 532 F.3d 888, 899 (D.C. Cir. 2008) (Kavanaugh, J., concurring).

Requiring administrative exhaustion may also render this case moot.  Plaintiffs' religious exemption requests may be granted, which would render this entire case moot.  Or even if Plaintiffs eventually face adverse action, the military has review processes that can undo any potential adverse action Plaintiffs might face.  *See* Ex. 4 (Furness Decl.) ¶ 22.

"[E]xhaustion may be excused if delaying judicial review would cause irreparable injury, if the agency is not competent to address the issue or to grant effective relief, or if further pursuit of an administrative remedy would be futile."  *Ass'n of Flight Attendants-CWA*, 493 F.3d at 159. None of these exceptions applies.  Plaintiffs do not face an irreparable injury.  *See infra* Part II. The military has the power to grant relief and the competence to assess these issues in the first instance.  Indeed, the military has regulations in place designed to address such questions.  *See* DoD Instruction 1300.17, Religious Liberty in the Military Services § 1.2.e. (Sept. 1, 2020), https://perma.cc/7TBB-RCYB.  And Plaintiffs have not satisfied the heavy burden of showing futility.  *See Shaw v. Austin*, --- F. Supp. 3d ----, 2021 WL 1840397, at *10 (D.D.C. May 7, 2021) ("Despite Plaintiff's skepticism about the [administrative] process, the Court cannot so easily dismiss the possibility that he will have a fair opportunity to make his case" when plaintiff "offered no reason to believe that the [reviewing official] is biased or unprepared to consider his contentions with an open mind.").

## II.     Plaintiffs Fail To Establish That Hypothetical Discipline Would Amount to Irreparable Injury.

The D.C. Circuit "has set a high standard for irreparable injury."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  "Such injury must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such imminence that there is a

clear and present need for equitable relief to prevent irreparable harm.'" *Mexichem*, 787 F.3d at 555 (citing *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). And "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* "In cases involving claims related to military personnel decisions, moreover, courts have held that the showing of irreparable harm must be especially strong before an injunction is warranted, given the national security interests weighing against judicial intervention in military affairs." *Shaw*, 2021 WL 1840397, at *9.

Plaintiffs contend that they are facing irreparable harm because they have been "denied their lawful entitlement to reasonable religious accommodations," been "deprived of equal protection," and have been denied their rights under the FDCA. *See generally* Mot. at 25–27. As a factual matter, that is simply wrong: as set out above, no Plaintiff has received a final determination denying his request for a religious exception, and while those requests are pending, no Plaintiff will be disciplined for failing to be vaccinated. The status quo fully protects all of Plaintiffs' asserted rights. *See Williams v. Brown*, --- F. Supp. 3d ----, 2021 WL 4894264, at *10 (D. Or. Oct. 19, 2021) (finding no irreparable harm when exemption requests were pending); *Burcham v. City of Los Angeles*, No. 2:21-cv-07296, 2021 WL 5049099, at *4 (C.D. Cal. Oct. 27, 2021) (same). And Plaintiffs cannot show any imminent harm because their requests could be granted, in which case they would not be subject to any discipline for not getting vaccinated. *See Pelekai v. State of Hawai'i*, No. 21-343, 2021 WL 4944804, at *1 (D. Haw. Oct. 22, 2021) (finding no injury where plaintiffs' religious exemption requests were granted).

Yet even if Plaintiffs could show that discipline were imminent, that would not amount to irreparable harm.  With respect to the civilian federal employees, the most severe penalty they could face is removal from the federal service.  Yet "'cases are legion holding that loss of employment does not constitute irreparable injury.'"  *Sataki*, 733 F. Supp. 2d at 46–47 (quoting *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006)); *see also, e.g.*, *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 5 (D.D.C. 1998) (Kollar-Kotelly, J.) ("Merely asserting that one will lose his or her job and its attendant salary, without more, cannot possibly provide a sufficient basis for injunctive relief."); *Moore v. Summers*, 113 F. Supp. 2d 5, 24 (D.D.C. 2000) (similar).

In particular, at least three other courts have found that a choice among taking a vaccine, obtaining an exemption, and facing adverse employment consequences does not amount to irreparable harm.  *See Beckerich v. St. Elizabeth Med. Ctr.*, --- F. Supp. 3d ----, 2021 WL 4398027, at *7 (E.D. Ky. Sept. 24, 2021); *Harsman v. Cincinnati Children's Hosp. Med. Ctr.*, No. 21-597, 2021 WL 4504245, at *4 (S.D. Ohio Sept. 30, 2021); *Bauer v. Summey*, --- F. Supp. 3d ----, 2021 WL 4900922, at *18 (D.S.C. Oct. 21, 2021). As the Court explained in *Beckerich*, Plaintiffs are simply "choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice," and "[e]ven if they believe the condition or the consequences are wrong, the law affords them an avenue of recourse" other than injunctive relief.  2021 WL 4398027, at *7.

Part of the reason why job loss is consistently held not to be irreparable is the possibility that a discharged employee may, if successful on his claims, obtain reinstatement and back pay.  *See Sataki*, 733 F. Supp. 2d at 46–47 (citing *Sampson*, 415 U.S. at 89–90).  Courts have thus specifically applied *Sampson* to find that loss of employment due to refusal to comply with a vaccine mandate does not constitute irreparable harm.  *See, e.g.*, *Wise v. Inslee*, No. 21-288, 2021

WL 4951571, at *6 (E.D. Wash. Oct. 25, 2021); *Mass. Corr. Officers Federated Union v. Baker*, No. 21-11599, 2021 WL 4822154, at *7 (D. Mass. Oct. 15, 2021); *Johnson v. Brown*, No. 21-1494, 2021 WL 4846060, at *23–25 (D. Or. Oct. 18, 2021).[6]  Here, depending on the claims asserted by a discharged Plaintiff and the nature of his federal employment, it is possible that he could pursue reinstatement and back pay in the appropriate forum pursuant to some combination of the Civil Service Reform Act, Title VII of the Civil Rights Act, and the Back Pay Act.  Plaintiffs do not contend otherwise.  And even if back pay and reinstatement were unavailable, a federal employee still cannot establish irreparable injury based on nothing more than the possibility of economic loss.  *See Davis v. Billington*, 76 F. Supp. 3d 59, 66 (D.D.C. 2014); *see also Sampson*, 415 U.S. at 92 n.68 ("an insufficiency of savings or difficulties in immediately obtaining other employment" insufficient).

The service member Plaintiffs likewise will not suffer irreparable harm in the absence of a preliminary injunction.  If those Plaintiffs refuse to receive the vaccine and their religious exemption requests are ultimately denied, they may be subject to a range of administrative and disciplinary actions.  *See* Ex. 4 (Furness Decl.) ¶¶ 5, 13-21.  But, as many courts have found, these types of administrative and disciplinary actions, including separation and a less than honorable

---

[6] For that reason, Plaintiffs' suggestion that their assertion of First Amendment or RFRA rights automatically satisfies irreparable injury, *see* Mot. at 14, misses the mark.  This case bears no relationship to *Roman Catholic Archbishop of Washington v. Bowser*, --- F. Supp. 3d ----, 2021 WL 1146399 (D.D.C. Mar. 25, 2021), which involved a capacity restriction on houses of worship; the defendants in that case acknowledged that it involved "actual interference with religious practice." *Id.* at 10.  This case does not, for "no Plaintiff in this case is being forcibly vaccinated." *Beckerich*, 2021 WL 4398027, at *7.  Rather, the most serious sanction that could befall Plaintiffs is job-related monetary loss.  Nor is this case similar to *Dahl v. Board of Trustees of Western Michigan University*, --- F. 4th ----, 2021 WL 4618519 (6th Cir. Oct. 7, 2021), in which the University "ignored or denied" students' requests for religious exceptions and then "barred them from participating in any team activities." *Id.* at *1.  Plaintiffs' exception requests remain pending, and Plaintiffs have not been barred from doing anything.

discharge, are not irreparable injuries because service members could later be reinstated and provided back pay if they prevailed on their claims. *See, e.g.*, *Guitard v. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Guerra v. Scruggs*, 942 F.2d 270, 274 (4th Cir. 1991); *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *McCurdy v. Zuckert*, 359 F.2d 491 (5th Cir. 1966); *Shaw*, 2021 WL 1840397, at *10; *Bors v. Allen*, 607 F. Supp. 2d 204, 211 (D.D.C. 2009); *Wilburn v. Dalton*, 832 F. Supp. 943, 948 (E.D. Pa. 1993).   Indeed, in rejecting a service member's motion for a preliminary injunction to prevent his discharge from the military, this Court concluded that his pending separation from the military and the associated stigma did not constitute irreparable harm for this reason.  *See Reinhard*, 209 F. Supp. 3d at 220.

The service member Plaintiffs also seek to preliminarily enjoin the military from "threatening to dishonorably discharge [and] court martial" service members.  Compl. at 76; Mot. at 26.  But it is entirely speculative that Plaintiffs would be court-martialed, as members are subject to a "range of administrative and disciplinary actions" if they choose to not comply with the DoD directive.  ALLNAV 062/21, https://perma.cc/ZPQ7-ZVA9, ¶ 5.  And potentially being subject to court martial does not constitute an irreparable injury.  The Supreme Court in *Schlesinger v. Councilman* reversed an injunction that prevented the military from proceeding with an impending court martial, finding that the "inconvenience of having to defend against a single criminal prosecution cannot [] be considered irreparable."  420 U.S. 738, 755 (1975) (quotation omitted and cleaned up)); *see also U.S. ex rel. New v. Perry*, No. 96-0033, 1996 WL 420175, at *1 (D.D.C. Jan. 16, 1996) (finding no irreparable injury from an impending court martial because if the service member is convicted, he has the right to appeal (citing *Levy v. Corcoran*, 389 F.2d 929, 930 (D.C. Cir. 1967) (Tamm, J., concurring))).  Even more speculative is Plaintiffs' claim that they will be

dishonorably discharged from the military, as such action only occurs after a court-martial is convened and a service member is found guilty by his peers or by a military judge. *See* Ex. 4 (Furness Decl.) ¶ 14. This process, which can take months, *see id.*, cannot be considered certain or imminent, *see Shaw*, 2021 WL 1840397, at *10 (speculative that sailor would suffer harm where administrative procedures incomplete).

Plaintiffs further argue that the DoD directive harms military readiness by causing "mass separations and/or discharges" and thus places the "entire U.S. population . . . squarely in harm's way." Mot. at 26. But even putting aside the sheer speculation of this claim—Plaintiffs point to nothing to suggest that the vaccination requirement will result in such mass separations—the argument fails to establish irreparable harm to these Plaintiffs, for "the irreparable harm suffered in the absence of injunctive relief must be actually suffered by the plaintiffs in question." *Beckerich*, 2021 WL 4398027, at *6. And in any case, this claim is contrary to the professional judgment of the highest leaders in the military, all of whom have concluded that COVID-19 vaccinations are necessary for military readiness. *See infra* Part IV.

Finally, Plaintiffs argue that "[s]ome military chaplains fear the pressure, abuse, and threats [that] will increase the risk of suicide." Mot. at 27. Here again, this argument is based entirely on speculation and cannot establish a basis for emergency injunctive relief. *See Fails v. Sec'y, Dep't of Corr.*, No. 13-456, 2013 WL 6068859, at *3 (N.D. Fla. Nov. 16, 2013) (rejecting a claim of irreparable harm that was based in part on "speculation that the unavailability of [certain] drugs will increase the risk of suicide").

## III.   Plaintiffs Are Unlikely To Succeed On The Merits.

Even if the Court had jurisdiction, and even if Plaintiffs were facing irreparable harm, a preliminary injunction would still not properly issue because Plaintiffs are exceedingly unlikely to succeed on the merits of their claims.

A.      **Plaintiffs' RFRA and Free Exercise Claims Are Unlikely to Succeed.**

Plaintiffs' claims under the First Amendment and RFRA are premised on incorrect facts and are otherwise meritless. Plaintiffs assert that "Defendants have already deprived Plaintiffs of . . . their fundamental right to freely exercise their religion," Mot. at 14, and have "refused[] to permit Plaintiffs to abstain from the Vaccine Mandate," *id.* at 18 (footnote omitted). But that is wrong. Every agency named as a Defendant in this case is accepting and considering requests for religious exceptions, and anyone with a pending and timely request may abstain from COVID-19 vaccination while his request is pending, without discipline. The military likewise has a process to consider religious exemptions. *See* AR 40-562 (Oct. 7, 2013), https://perma.cc/2LV6-6JEL, 2-6.b.(3); Air Force Policy Directive (AFPD) 52-2 (July 28, 2020), https://perma.cc/HLD2-KMY8, §§ 1.2, 1.3, and 1.4; Military Personnel Manual ("MILPERSMAN") 1730-020 (Aug. 15, 2020), https://perma.cc/TCS9-ND6K.

The threadbare allegations of the complaint therefore cannot establish that Plaintiffs' claims are ripe or that they have a likelihood of success on the merits. First, "an asserted belief must be 'sincere'; a [plaintiff's] pretextual assertion of a religious belief in order to obtain an exemption . . . would fail." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014). Until the Defendants and this Court can examine their claims, "[n]either the government nor the court has to accept the [plaintiffs'] mere say-so." *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996); *see also, e.g.*, *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (questioning religious nature of objection to vaccination); *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 819 (2d Cir. 2003) (same). It is for that reason that guidance from the Safer Federal Workforce Task Force provides for requests for religious exceptions to be evaluated on an individual basis. *See* Religious Exception Template, https://perma.cc/6A6D-

25

EPH9; *see also* DoD Instruction 1300.17, Religious Liberty in the Military Services (Sept. 1, 2020), https://perma.cc/L84W-RU3Q.[7]

In any case, Plaintiffs' claim that the COVID-19 vaccination mandate is not supported by a compelling governmental interest, *see* Mot. at 15, is wrong. Plaintiffs acknowledge that stopping the spread of COVID-19 is "unquestionably a compelling interest," *id.* (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2021)), but make the remarkable assertion that vaccination does not serve that interest. Plaintiffs' views aside,[8] the federal government's public health experts have concluded that COVID-19 vaccines "reduc[e] the risk of COVID-19, including severe illness, among people who are fully vaccinated by 90 percent or more," and "reduce the spread of disease overall." Centers for Disease Control and Prevention, *COVID-19 Vaccines*

_____

[7] The basis for Plaintiffs' objection to COVID-19 vaccination relates to the potential use of certain decades-old fetal cell lines. Defendants are unaware of an authoritative federal government source addressing the use of these cell lines in the development and manufacture of COVID-19 vaccines. Certain state health departments have addressed the question, concluding that, whereas certain vaccines licensed by the FDA are manufactured from viruses that are grown in established fetal cell lines, including the Johnson & Johnson COVID-19 vaccine, such cell lines are not required for the manufacture of mRNA vaccines, including the COVID-19 vaccines manufactured by Pfizer and Moderna. *See, e.g.*, Michigan Department of Health & Human Servs., COVID-19 Vaccines & Fetal Cells, https://perma.cc/E5LX-JZSZ; North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines, https://perma.cc/Z42J-EYSP. Those sources indicate that legacy fetal cell lines were used only at the earliest stages of mRNA vaccine development to prove that the technology was efficacious. Public sources further note that many common medications—including acetaminophen, aspirin, and ibuprofen—also used these cell lines during research and development. *See* WebMD, Some Medications Also Tied to Religious Vaccine Exemption, https://perma.cc/DEA6-6MGF.

[8] Plaintiffs describe certain data from San Diego County—that they neither file nor link to— that they believe questions the effectiveness of vaccines. *See* Mot. at 16. Yet the most recent data from San Diego that Defendants could locate shows that 94.1% of hospitalizations and 85.1% of deaths occurred in persons who were not fully vaccinated, and that the case rate for unvaccinated individuals was three times higher than fully vaccinated individuals. *See* COVID-19 Watch, Weekly Coronavirus Disease 2019 (COVID-19) Surveillance Report, at 3, https://perma.cc/QBZ5-HM2S.

*Work*, https://perma.cc/F6ZN-NA3P; *see also* Ex. 1 (Marks Decl.) ¶ 26 (injunction against Comirnaty "would cause irreparable harm" because "[s]afe and effective vaccines are currently the most powerful tool we have against the pandemic and have been estimated to have already saved hundreds of thousands of lives").

Without final decisions or evidentiary records upon which to base their unripe individual claims, Plaintiffs are left to argue in the abstract that there are no conceivable circumstances where requiring vaccinations could be the least restrictive means of serving a compelling interest. Yet numerous courts have found that preventing infectious diseases like COVID-19 through vaccines was the least restrictive means available. *See F.F. on behalf of Y.F. v. State*, 65 Misc. 3d 616, 633, (N.Y. Sup. Ct. 2019); *Brown v. Smith*, 24 Cal. App. 5th 1135, 1145 (2018); *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 996 (2018); *see also D.J. v. Mercer Cty. Bd. of Educ.*, No. 13-0237, 2013 WL 6152363, at *4 (W. Va. Nov. 22, 2013). Indeed, several courts have held—primarily in the context of vaccination requirements in schools—that religious exemptions are not required, even if some sort of "least restrictive means" or "narrow tailoring" test is applied. *See, e.g.*, *Workman v. Mingo County Bd. of Educ.*, 419 F. App'x. 348, 353–55 (4th Cir.); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1089–91 (S.D. Cal. 2016).[9]

---

[9] Since the earliest days of the pandemic, the federal government has been operating in a state of maximum telework. Plaintiffs suggest that the vaccination mandate is overbroad because it extends to individuals on maximum telework, *see* Mot. at 17, but it is hardly unreasonable for the federal government to plan for the day when federal employees begin returning to the office. In addition, even employees currently on telework may have to come into the office from time to time. *See* Task Force, Frequently Asked Questions, Vaccinations, Vaccination Requirement for Federal Employees, https://perma.cc/5Q6U-4CGG (teleworking employees are subject to the mandate "because employees working offsite may interact with the public as part of their duties and agencies may need to recall employees who are on maximum telework or working remotely"). In some circumstances, depending on the employee's job duties, an agency might conclude that a reasonable accommodation involving telework would be feasible, but that may well not be the case in many other circumstances.

Nevertheless, the Court need not—indeed, cannot—decide now whether COVID-19 vaccination is the least restrictive means for each individual Plaintiff.  The Court lacks the evidentiary record upon which to make such a determination, insofar as Plaintiffs have told the Court virtually nothing about their job duties, working conditions, and similar relevant factors.  As the Safer Federal Workforce Task Force has explained, "[d]etermining whether an exception is legally required will include consideration of factors such as the basis for the claim; the nature of the employee's job responsibilities; and the reasonably foreseeable effects on the agency's operations, including protecting other agency employees and the public from COVID-19," and "such assessments will be fact- and context-dependent."  Exception FAQs.  Similarly, in deciding a service member's request for an accommodation in the first instance, the military analyzes each request based on facts unique to the service member, their military duties, the risk they might pose to the military's mission, and the potential impacts on military readiness.  *See, e.g.*, AFPD 52-2, https://perma.cc/HLD2-KMY8, §§ 1.2, 1.3, and 1.4; MILPERSMAN 1730-020, https://perma.cc/TCS9-ND6K.  If the service member is dissatisfied with the military's decision and seeks judicial review, the judiciary must "give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman*, 475 U.S. at 507.  That, of course, requires the judiciary to wait for the military to make its decision and articulate those military interests.

Accordingly, Plaintiffs' Free Exercise and RFRA claims provide no basis for a preliminary injunction.  At a minimum, the Court should allow these administrative procedures to be completed before deciding the merits of any RFRA claim, which will allow the government to explain its reasoning for any decision, including the circumstances relevant to each individual.  At such time as there is an actual final agency determination, Plaintiffs may assert whatever claims they possess.

### B.      Plaintiffs' Equal Protection Claim Is Unlikely to Succeed.

In an equal protection challenge to government action that "does not target a suspect class or burden a fundamental right," the "relevant level of scrutiny is rational basis." *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 215 (D.C. Cir. 2013).  The challenged vaccination requirements do neither, and they plainly "bear[] a rational relation to some legitimate end." *Dixon v. Dist. of Columbia*, 666 F.3d 1337, 1342 (D.C. Cir. 2011) (citation omitted).  Plaintiffs' claim thus fails.

Plaintiffs' primary contention is that Defendants are burdening a fundamental right because they are "selectively enforcing the Vaccine Mandate amongst members within the same protected class on the basis of religion."  Mot. at 20.  As discussed above, no Plaintiff has had a religious exemption request denied, so that claim is both factually inaccurate and legally erroneous.  And in any event, "vaccination requirements, like other public-health measures, have been common in this nation," and do not burden any "fundamental right ingrained in the American legal tradition." *Klaassen v. Tr. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021), *emergency application for relief denied*, No. 21A15 (Barrett, J., in chambers) (Aug. 12, 2021); *accord, e.g.*, *Doe v. Zucker*, 520 F. Supp. 3d 217, 249–53 (N.D.N.Y. 2021), *appeal filed*, No. 21-537 (2d Cir. Mar. 5, 2021); *see Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (state may require all members of the public to be vaccinated against smallpox, under penalty of criminal sanctions); *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944); *Zucht v. King,* 260 U.S. 174, 177 (1922).  Courts have thus "consistent[ly] use[d] . . . rational basis review to assess mandatory vaccination measures." *Klaassen v. Trs. of Ind. Univ.*, --- F. Supp. 3d ----, 2021 WL 3073926, at *24 (N.D. Ind. July 18, 2021); *accord, e.g.*, *Workman*, 419 F. App'x at 355–56; *Norris v. Stanley*, --- F. Supp. 3d. ---, 2021 WL 4738827, at *2 (W.D. Mich. Oct. 8, 2021); *Harris v. Univ. of Mass., Lowell*, No. 21-11244, 2021 WL 3848012, at *6 (D. Mass. Aug. 27, 2021), *appeal filed*, No. 21-1770 (1st Cir. Sept. 28, 2021); *Zucker*, 520 F. Supp. 3d at 249–53; *see also Cuomo*, 141 S. Ct. at 70 (Gorsuch, J.,

concurring) (explaining that *Jacobson* "essentially applied rational basis review" to a state vaccination requirement).

Under that standard, the challenged measure "is presumed constitutional," and "[t]he burden is on the one attacking the [measure] to negative every conceivable basis which might support it." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (courts "hardly ever strike[] down a policy as illegitimate under rational basis" review, and even then, only where a law "lack[s] any purpose other than a bare . . . desire to harm a politically unpopular group" (citation omitted)).  Here, there should be no serious dispute that the federal employee vaccination requirement is rationally related to the government's strong interest in promoting "[t]he health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact" during the COVID-19 pandemic. 86 Fed. Reg. at 50,989; *see, e.g.*, *Klaassen*, 2021 WL 3073926, at *26 (public university's COVID-19 vaccination requirement furthered its "legitimate interest in promoting the health of its campus communities"). Nor can it be seriously disputed that the military vaccination mandate is rationally related to the federal government's strong interests in maintaining the health of the military forces, thereby protecting military readiness and national security.  Plaintiffs cite no case holding that a vaccination requirement lacked a rational basis, and Defendants are aware of none.

Nor is the government treating Plaintiffs (who do not comprise a suspect class) differently from any similarly situated individuals.  As discussed above, the vaccine requirements are neutral and generally applicable.  Plaintiffs nonetheless suggest that the vaccination requirement "unfairly singles [them] out" because it "does not require federal employees of the Executive Branch employed with *inter alia* the White House, the EOP, the CDC, the NIH, the WHO, or the NIAID

to be vaccinated despite being similarly situated federal employees of the Executive Branch." Mot. at 19. That is unambiguously wrong. The Department of Health and Human Services is an agency within the meaning of 5 U.S.C. § 105, and the Centers for Disease Control, the National Institutes of Health, and the National Institute of Allergy and Infectious Diseases are components of HHS and thus their federal employees are subject to the vaccine requirement. As for the Executive Office of the President, its employees similarly "must obtain a COVID-19 vaccination unless granted an exception as required by law." Ex. 8 (White House memorandum dated Sept. 20, 2021).[10] And in any event, federal employees who work at agencies defined in 5 U.S.C. § 105 are not a suspect class and, by statutory definition, not similarly situated to federal employees who work in different capacities.

Plaintiffs further contend that they have an equal protection claim because civilian Plaintiffs other than Special Agent Hallfrisch have been "deprive[d]" of the "very same religious accommodation a Special Agent received." Mot. at 19 (footnote omitted). But as discussed above, no Plaintiff has had her religious exemption request denied. Each Plaintiff currently has a pending request, and so long as those requests remain pending, each Plaintiff—like Special Agent Hallfrisch—will not be subject to discipline for failing to become vaccinated. And in any event, Plaintiffs allege no facts about the nature of their job or their functions that would enable the Court to know whether they are similarly situated to Special Agent Hallfrisch. Agencies review religious exception requests on a case-by-case basis, and there is nothing in the record to suggest that any "differential treatment" of Special Agent Hallfrisch lacks a rational basis.

---

[10] The Executive Office of the President includes certain offices whose sole function is to advise and assist the President—such as the White House Office and the National Security Council—as well as offices that have separate statutory responsibilities, such as the Office of Management and Budget and the Office of National Drug Control Policy.

C.       **Plaintiffs' FDCA Claim Is Unlikely to Succeed.**

Section 564 of the FDCA, 21 U.S.C. § 360bbb-3, governs the authorization of medical products, including vaccines, for emergency use.  Subsection (e)(1)(A) of this provision instructs that, "to the extent practicable given the applicable [emergency] circumstances," and as FDA "finds necessary or appropriate to protect the public health," products distributed under an EUA will include "[a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks."  21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Plaintiffs allege that the federal vaccination requirements at issue here unlawfully deprive them of "the option to accept or refuse" EUA products.  *See* Compl. ¶¶ 206, 213–14.  This claim is unlikely to succeed for three reasons.

Plaintiffs purport to challenge the vaccination requirements under section 564 of the FDCA itself, *see* Compl. ¶¶ 203–20 (Count Four), but the FDCA contains neither a waiver of sovereign immunity nor a private right of action for these Plaintiffs.  To the contrary, the FDCA provides that "proceedings for the enforcement, or to restrain violations, of [the statute] shall be by and in the name of the United States," with one limited exception for enforcement by State governments. 21 U.S.C. § 337.  Nor could Plaintiffs circumvent this barrier by re-framing their FDCA claim as an APA claim, because the APA's presumption of judicial reviewability does not apply to the extent that other "statutes preclude judicial review."  5 U.S.C. § 701(a); *see generally Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).  Accordingly, this Court should not reach the merits of Plaintiffs' claim that the challenged vaccination requirements violate section 564.  *See Guilfoyle v. Beutner*, No. 2:21-cv-5009, 2021 WL 4594780, at *27 (C.D. Cal. Sept. 14, 2021) (dismissing an identical claim because section 564 does not contain a private right of action);

accord *Doe v. Franklin Square Union Free Sch. Dist.*, --- F. Supp. 3d ----, No. 2:21-cv-5012, 2021 WL 4957893, at *20 (E.D.N.Y. Oct. 26, 2021); *Bridges v. Houston Methodist Hosp.*, --- F. Supp. 3d ----, No. 21-cv-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021), *appeal filed*, No. 21-20311 (5th Cir. June 14, 2021).

Even if reached, Plaintiffs' purported FDCA claim is based on the factually incorrect premise that "there is no FDA-approved COVID-19 vaccine . . . available to anyone in the United States, including Plaintiffs." Mot. at 21. In fact, certain lots of the Pfizer vaccine are "manufactured in compliance with the [Biologics License Application ("BLA"), which FDA has approved] and they are not subject to the EUA requirements when used for the approved indication." Ex. 1 (Marks Decl.) ¶ 13.[11] In other words, numerous available lots of the Pfizer vaccine are BLA-compliant, and Plaintiffs could receive them to become vaccinated. Indeed, "DoD has in its possession hundreds of thousands" of these doses. Ex. 9 (Decl. of Col. Tonya Rans, M.D.) ¶ 18. In any event, the widely available Pfizer-BioNTech EUA vaccine and Comirnaty "can be used interchangeably without presenting any safety or effectiveness concerns."[12] Vaccine Information Fact Sheet for Recipients and Caregivers About Comirnaty and

---

[11] To the extent Plaintiffs cite statements that suggest otherwise, it may reflect confusion over the fact that these BLA-compliant doses of the vaccine bear the EUA label. *See* Marks Decl. ¶ 13. "[The] conditions in the Letter of Authorization for the EUA—including the condition requiring vaccination providers to provide recipients with the Fact Sheet for Recipients, which advises recipients that 'under the EUA, it is your choice to receive or not receive the vaccine'—do not apply when these lots or other BLA-compliant lots are used for the approved indication." *Id.*

[12] Until very recently, the Pfizer-BioNTech EUA vaccine was always "the same formulation" as Comirnaty. *See* Vaccine Information Fact Sheet for Recipients and Caregivers About Comirnaty and the Pfizer-BioNTech COVID-19 Vaccine at 1 n.1, https://perma.cc/DSP9-72GP (revised Oct. 29, 2021). On October 29, 2021, however, FDA amended the EUA to include a modified formulation of the Pfizer vaccine for use in children 5 through 11 years old that uses tromethamine (Tris) buffer instead of the phosphate buffered saline (PBS) used in the originally authorized Pfizer-BioNTech COVID-19 vaccine. The agency additionally authorized a version of the Tris formulation for those 12 years of age and older. The two formulations of Pfizer-BioNTech

the Pfizer-BioNTech COVID-19 Vaccine at 1 n.1, https://perma.cc/DSP9-72GP (revised Oct. 29, 2021).  Accordingly, any dispute over whether section 564 forbids the government from requiring individuals to use "non-FDA-approved vaccines only available under EUA," Compl. ¶ 213, is moot.  *See Norris v. Stanley*, --- F. Supp. 3d ----, 2021 WL 3891615, at *2 (no likelihood of success on EUA claim because it "would be moot" if offered the FDA-approved Pfizer vaccine); *Valdez v. Grisham*, --- F. Supp. 3d ----, 2021 WL 4145746, at *4 (D.N.M. Sept. 13, 2021) (rejecting claim that state vaccine mandate violated the EUA statute because "the FDA has now given its full approval—not just emergency use authorization—to the Pfizer vaccine"), *appeal filed*, No. 21-2105 (10th Cir. Sept. 15, 2021); Order at 6, ECF No. 12, *Robert v. Austin*, No. 1:21-cv-02228 (D. Colo. Sept. 1, 2021), ("[A]s is now common knowledge, the Food and Drug Administration has now fully approved a COVID-19 vaccine, likely rendering moot Plaintiffs' underdeveloped arguments concerning the emergency use authorization for the vaccines currently available.").

Finally, Plaintiffs' interpretation of section 564 is incorrect: the statute does not prohibit the government from requiring vaccination with an EUA product as a condition to continued employment.  The relevant subsection directs only that potential vaccine recipients be "informed" of certain information, including "the option to accept or refuse administration of the product."  21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).  For each COVID-19 vaccine made available under an EUA, FDA implemented this subsection by requiring that potential vaccine recipients receive a Fact Sheet informing them, for example, that they have a "choice to receive or not receive" the vaccine. *See, e.g.*, FDA, Fact Sheet for Recipients and Caregivers at 4 (revised Oct. 20, 2021),

---

COVID-19 EUA vaccine that are authorized for use in individuals 12 years of age and older differ only with respect to the inactive ingredient buffers and have been shown to be analytically comparable.  FDA determined that the "12 and older" version of the Tris formulation may be used interchangeably with Comirnaty and the PBS formulation of the EUA vaccine.  Pfizer EUA Letter at 3-4.

https://www.fda.gov/media/144638/download.  As numerous courts have held, this informational requirement does not prevent an entity (including the government) from imposing workplace discipline, up to and including termination, on employees who make the choice not to receive an EUA vaccine.  *See Bridges*, 2021 WL 2399994, at *2; *Valdez*, 2021 WL 4145746, at *4; *Norris*, 2021 WL 4738827, at *3; *Johnson v. Brown*, No. 3:21-cv-1494, 2021 WL 4846060, at *18 (D. Or. Oct. 18, 2021); *Pelekai v. Hawaii*, No. 1:21-cv-343, 2021 WL 4944804, at *6 n.9 (D. Haw. Oct. 22, 2021); *see generally* U.S. Dep't of Justice, Office of Legal Counsel, Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization, 45 Op. O.L.C. __, 2021 WL 3418599 (July 6, 2021).

## IV.     The Public Interest Weighs Heavily Against Injunctive Relief.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party."  *Nken*, 556 U.S. at 435.  These factors tilt decisively in the government's favor.

First, enjoining the Executive Order and the DoD directive would harm the public interest in slowing the spread of COVID-19 among millions of federal employees and service members and the members of the public with whom they interact.  In recognition of the government's "compelling interest" in "[s]temming the spread of COVID-19," *Cuomo*, 141 S. Ct. at 67, numerous courts reviewing "executive action designed to slow the spread of COVID-19" have concluded that "[t]he public interest in protecting human life—particularly in the face of a global and unpredictable pandemic—would not be served by" an injunction.  *Tigges v. Northam*, 473 F. Supp. 3d 559, 574 (E.D. Va. July 21, 2020); *see also, e.g.*, *Am.'s Frontline Drs. v. Wilcox*, No. 21-1243, 2021 WL 4546923, at *8 (C.D. Cal. July 30, 2021); *Valdez*, 2021 WL 4145746, at *13; *Harris*, 2021 WL 3848012, at *8; *Williams*, 2021 WL 4894264, at *10–11; *Wise*, 2021 WL

4951571, at *6; *Mass. Corr. Officers*, 2021 WL 4822154, at *7–8; *Johnson*, 2021 WL 4846060, at *26–27.

Enjoining Executive Order 14043 would harm the public interest by hampering the efficiency of the federal civil service. The COVID-19 pandemic has interfered with numerous aspects of the government's work, e.g., by forcing office closures; interfering with employees' access to paper-based records; limiting official travel; and causing staffing shortages. *See generally* Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies (June 2020), https://perma.cc/754N-56S9. Thus, enjoining the Executive Order would likely interfere with the government's ability to resume normal, pre-pandemic operations.

An injunction against the DoD directive also would have an adverse impact on the public interest in the national security of the United States. The Secretary of Defense "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." Mem. for Senior Pentagon Leadership, https://perma.cc/CV3J-EM3M (stating that "[t]o defend this Nation, we need a healthy and ready Force"). The Secretary made this decision after consulting with "medical experts and military leadership," *id.*, including the "Chairman of the Joint Chiefs of Staff, the Secretaries of the Military Departments, [and] the Service Chiefs," Mem. for all Defense Employees, https://perma.cc/H5G8-T62L. The Service Secretaries likewise found that COVID-19 impacts military readiness and that mandatory vaccination is necessary to prevent the spread of COVID-19 in the Force. *See, e.g.*, Ex. 2 (Army FRAGO 5) ¶ 3.B.3; ALLNAV 062/21, https://perma.cc/ZPQ7-ZVA9, ¶ 2; Ex. 10 (Secretary of Air Force Memorandum for Air Force Commanders (Sept. 3, 2021)). The Court must "give great deference" to the "professional military judgment" of these leaders concerning the importance of slowing the spread of COVID-19 to ensure readiness. *See Winter*, 555 U.S. at 24–25.

These professional military judgments are supported by the evidence showing COVID-19's impact on the Force. Hundreds of thousands of service members have been infected, thousands have been hospitalized, and dozens have died. Ex. 8 (Rans Decl.) ¶ 11. Plaintiffs argue that their "vaccination status was irrelevant for nearly two years, and it is irrelevant today." Mot. at 24. But that is plainly not the case; indeed, COVID-19 represents a particularly serious threat to the military, where service members frequently serve in very close quarters, sometimes with only limited access to medical intervention. *See* Ex. 8 (Rans Decl.) ¶ 9; Ex. 11 (Decl. of Major Scott Stanley) ¶ 8. Across the military, COVID-19 has "impacted exercises, deployments, redeployments, and other global force management activities," Ex. 11 (Stanley Decl.) ¶ 6 (including rendering an aircraft carrier non-operational because of an outbreak, *id.* ¶ 8), caused the cancellation of "19 major training events, many of which involved preparation and training with our foreign partners," *id.* ¶ 9, and has "required significant operational oversight" by the most senior military leaders, *id.* ¶ 4. Certain countries have vaccine requirements, such that unvaccinated service members would not be able to participate in training exercises with partner nations, which are "vital to the preservation of national security and the protection of our foreign interests." *Id.* ¶¶ 10–11. Vaccinations have promoted readiness by reducing the risk of infections, hospitalizations, and deaths of service members, reducing the number of service members who are required to quarantine, and permitting the military to, for example, return to higher levels of occupancy in DoD facilities and hold in-person trainings. *Id.* ¶¶ 3, 14–19. As another court recently found, "the public interest in the nation's military readiness may well be served by allowing military officials who are familiar with the unique challenges posed by the COVID-19 pandemic in a military setting to manage those challenges without this Court's intervention." Order at 6, *Robert v. Austin*, No. 1:21-cv-02228 (D. Colo. Sept. 1, 2021), ECF No. 12.

Limiting any injunction of the DoD directive solely as to the named Plaintiffs would still harm the national defense and the public interest.  If they are unvaccinated, Plaintiffs could get infected with COVID-19, become seriously ill, and face hospitalization and death, which affects the readiness of their unit. Ex. 8 (Rans Decl.) ¶¶ 7–9.  Unvaccinated service members also could spread the coronavirus to others, which is of particular concern for the military, given that many service members work in close quarters or in operational settings, such as on ships or in deployed austere environments. *Id.* ¶ 9; Ex. 11 (Stanley Decl.) ¶ 8; Ex. 5 (Beaven Decl.) ¶ 4; Ex. 6 (Jurney Decl.) ¶¶ 4, 5; *see Mass. Corr.*, 2021 WL 4822154, at *8 (noting the public interest in preventing the spread of COVID-19 in "congregate facilities").  Indeed, Plaintiff Christopher Hall serves in a unit that "must be ready at a moment's notice to deploy to austere environments where typical COVID mitigation measures, such as social-distancing and regular testing, are not feasible." Ex. 5 (Beaven Decl.) ¶ 4.  Accordingly, even as it relates solely to individual Plaintiffs, enjoining the DoD directive would impact readiness.

Plaintiffs also request that the Court enjoin the government from taking any adverse employment action or discipline for non-compliance with the DoD directive.  *See* Compl. 75–77.  But the military has discretion to handle matters of good order and discipline without interference from the judiciary. *Chappell v. Wallace*, 462 U.S. 296, 300–01 (1983).  The Marine Corps has a specific process that must be followed before the implementation of any discipline or adverse employment action, *see* Ex. 4 (Furness Decl.) ¶¶ 13–21, and the "Marine Corps' interest in good order and discipline is best served by adjudicating each refusal [to comply with the DoD directive] on a case-by-case basis," *id.* ¶ 23.  An injunction prohibiting the military from initiating or completing that process "would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities[,]" *Orloff*, 345 U.S. at 95, and contrary to the public interest, *see*

*Reinhard*, 209 F. Supp. 3d at 221 (noting the "public's interest in the proper functioning of the military, which includes its ability to discharge personnel as it deems necessary without unnecessary intrusion" (citing *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979)); *see also Guerra*, 942 F.2d at 275; *Shaw*, 2021 WL 1840397, at *10; *McBride v. West*, 940 F. Supp. 893, 897 (E.D.N.C. 1996).

The balance of interests weighs heavily against the entry of preliminary injunctive relief at this stage, in light of the harms that would result to the national defense, to the health of the federal civilian workforce, and more broadly to the public health of the United States.

**V.      Any Relief Should Be Narrowly Tailored.**

At the October 27 status conference, Plaintiffs confirmed that they are seeking extraordinary relief: an order "which would automatically exempt on religious grounds all Christians from the vaccine mandate."  Oct. 27 Tr. at 4.  Such an order would flout bedrock principles of equity and Article III jurisdiction and raise serious question under the Establishment Clause.

First, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).  Nationwide injunctions "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch."  *Trump. v. Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring); *see also, e.g.*, *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002) ("Allowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit" would "squelch the circuit disagreements that can lead to Supreme Court review.").  The vaccination orders at

issue here have been challenged in numerous other cases, underscoring why this Court should not attempt to decide their legality for all parties and for all time. *See Foley v. Biden*, No. 21-1098 (N.D. Tex.) (challenge to EO 14043); *Jensen v. Biden*, No. 21-5119 (W.D. Wa.) (same); *Employee A v. Biden*, No. 21-2696 (D. Md.) (same); *Altschuld v. Raimondo*, No. 21-2779 (D.D.C.) (same); *Costin v. Biden*, No. 21-2484 (D.D.C.) (same); *Brnovich v. Biden*, No. 21-1568 (D. Ariz.) (same); *Navy Seal 1 v. Biden*, No. 21-2429 (M.D. Fla.) (challenge to DoD directive); *Doe v. Austin*, No. 21-cv-1211 (N.D. Fla.) (challenge to DoD directive); *Robert v. Austin*, No. 21-cv-2228 (D. Colo.) (challenge to DoD directive).

Second, an order that ran exclusively to Christians, as Plaintiffs propose, would raise serious questions under the Establishment Clause. *See* U.S. Const. amend I; *Trump v. Hawaii*, 138 S. Ct. at 2417 ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."). And it would be particularly inappropriate given the highly fact-specific nature of the religious claims Plaintiffs assert: Christians as a group do not have monolithic religious beliefs, including on the subject of vaccination, and in any case whether an employee is entitled to a particular accommodation will greatly depend on the nature of his job, his work environment, and other factual issues that must be addressed—when ripe—on a case-by-case basis.[13]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated:  November 2, 2021                              Respectfully submitted,

                                                     BRIAN M. BOYNTON
                                                     Acting Assistant Attorney General

---

[13] Finally, any injunctive relief could run against the subordinate Executive Branch officials who are Defendants to this action, and under separation of powers principles, no injunctive relief should run against President Biden. *See Doe 2 v. Trump*, 319 F. Supp. 3d 539, 541-42 (D.D.C. 2018) (Kollar-Kotelly, J.) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992)).

ANTHONY J. COPPOLINO
Deputy Director

CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Directors

/s/ *Steven A. Myers*

STEVEN A. MYERS (NY Bar No.
4823043)
ANDREW E. CARMICHAEL
Senior Trial Counsel
JOSEPH J. DEMOTT
COURTNEY D. ENLOW
R. CHARLIE MERRITT
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel:  (202) 305-8648
E-mail:  steven.a.myers@usdoj.gov

*Counsel for Defendants*

41