# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEVEN CHURCH,** *et al.,* | |
| Plaintiffs, | |
| v. | |
| **JOSEPH R. BIDEN**, in his official capacity as President of the United States, *et al.,* | Case No. 1:21-cv-2815 (CKK) |
| Defendants. | |

## DECLARATION OF DAVID J. FURNESS

I, David J. Furness, hereby state and declare as follows:

1.　　I am a Lieutenant General in the United States Marine Corps, currently serving as the Deputy Commandant for Plans, Policies, and Operations, Headquarters Marine Corps, located in Washington, D.C. I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

2.　　I have been assigned to my current position since August 2021. Prior to my current assignment, I served as the Assistant Deputy Commandant for Plans, Policies and Operations from August 2020 to August 2021.  My Marine Corps career began in 1987 when I was commissioned as a Second Lieutenant on 16 May after graduating from the Virginia Military Institute.  Throughout my career I have served in a variety of command and staff billets in both the operating forces and supporting establishment.

(a) As a Lieutenant I served as a rifle platoon command and an 81mm mortar platoon commander in the Second Marine Division with 3d Battalion, 4th Marines and 2d Battalion, 8th Marines.  As a Captain and Major I served in the 1st Marine Division as the Commanding Officer of Company K, and the Operations Officer of the 3rd Battalion, 7th Marines.  As a Lieutenant Colonel I again served in the 1st Marine Division as the G3 Plans Officer, Deputy G-3, Commanding Officer of 1st Battalion, 1st Marines, and then as the Executive Officer of the 1st Marine Regiment.  As a Colonel I commanded the 1st Marine Regiment.  As a General Officer I commanded Combined Joint Task Force-Horn of Africa, and the 2d Marine Division.

(b) In the Supporting Establishment I have served on the staff of The Basic School as a Staff Platoon Commander and as a Tactics Instructor for both the Basic Officer and Infantry Officer Course, as Commanding Officer of Recruiting Station Sacramento, California, as the Director, Marine Corps Legislative Liaison Office, United States House of Representatives, as the Director of Expeditionary Warfare School, as the Legislative Assistant to the Commandant of the Marine Corps, and as the Assistant Deputy Commandant for Plans, Policy and Operations, Headquarters, United States Marine Corps.

(c) My professional military education includes The Basic School, the Infantry Officer Course, the U.S. Army Infantry Officer Advanced Course, the Marine Corps Command and Staff College, the School of Advanced Warfighting, and the National War College.  I earned Masters Degrees from both the Marine Corps Command and Staff College and the National War College.

(d) I participated in contingency operations in the Republic of Panama, and in the following named operations: Operation Provide Comfort, Operation Unified Assistance, Operation Iraqi Freedom, and Operation Enduring Freedom.

(e) As part of my duties currently, I am responsible for coordinating the development and execution of Marine Corps plans and policies related to the structure, deployment, and employment of Marine Corps forces in general.  I am also the Operations Deputy for the Commandant on all Joint Chiefs of Staff matters.  In this capacity I serve as the focal point for the interface between the Marine Corps and the other joint and combined activities of the Joint Chiefs of Staff and the unified Commanders-in-Chief, and various allied other foreign defense agencies.

3.     On August 24, 2021, the Secretary of Defense directed the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve.  The Secretary of the Navy directed implementation of SECDEF's COVID-19 vaccination mandate[1] via a Department-wide administrative message (ALNAV) on August 30, 2021.  The ALNAV applies to both Services within the Department of the Navy (DON), the United States Navy and the United States Marine Corps. The ALNAV requires all active duty DON Service members, who are not already vaccinated, exempted, or currently seeking an exemption, to be fully vaccinated with an FDA-approved COVID-19 vaccine within 90 days, and all Reserve Component personnel to be fully vaccinated within 120 days. ALNAV 062/21 ¶ 4.

4.  Active duty Sailors and Marines must therefore become fully vaccinated by November 28, 2021, and Reserve Component Sailors and Marines must become fully vaccinated[2] by December 28, 2021. The requirement to obtain full vaccination constitutes a lawful order under

---

[1] SECDEF Memo, "Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency, and DoD Field Activity Directors," (August 24, 2021).
[2] Although refusal to receive the vaccine may subject a member to adverse administrative or disciplinary action, the vaccine will not be forcibly administered to any member who refuses.

Article 92 of the Uniform Code of Military Justice (UCMJ), and failure to comply may result in punitive or adverse administrative action, or both. ALNAV 062/21 ¶ 5.

5.   The USMC issued service-specific guidance via a separate administrative message ("MARADMIN") on September 1, 2021. MARADMIN 462/21 outlines Marine Corps policy concerning the mandatory vaccination of USMC service members, vaccination administration and reporting requirements, and general guidance related to logistics and distribution of vaccines. The policy reiterates that all Marine Corps active and reserve personnel must become fully vaccinated against COVID-19, unless medically or administratively exempt. MARADMIN 462/21 ¶ 3.a.-3.b.  The requirement to become fully vaccinated is a lawful order, punishable under Article 92 of the Uniform Code of Military Justice (UCMJ). *Id*. ¶ 3.l.; 10 U.S.C. § 892. Ordinarily, any officer with authority to convene courts-martial or administer nonjudicial punishment under Article 15 of the UCMJ may dispose of alleged violations of the UCMJ. Manual for Courts-Martial ("MCM"), Part II, Rules for Court Martial, 401.  The authority to dispose of offenses arising from COVID-19 vaccine refusals is withheld to the general court-martial convening authority, although the special court-martial convening authority may issue administrative counseling. MARADMIN 462/21 ¶ 3.l.  Withholding this authority from lower ranking commanding officers and commanders precludes administrative separation or disciplinary action without elevated review and direction of a general officer.[3]

6.   MARADMIN 462/21 ¶ 3.j & 3.k provides that service members may seek two types of exemptions, medical and administrative.  Medical exemptions to vaccination are governed by Army Regulation (AR) 40-562, which is a consolidated Military Services regulation

---

[3] "General officers" comprise the highest ranks in the military. Officer ranks range from O-1 to O-10, with general officers occupying the ranks between O-7 to O-10. In the Marine Corps, a general officer is any officer serving in the rank of Brigadier General or higher.

applicable to the Navy and Marine Corps via Bureau of Medicine Instruction 6230.15B

(hereinafter BUMEDINST 6230.15B).  Granting medical exemptions is a medical function,

whereas granting administrative exemptions is a non-medical function. BUMEDINST 6230.15B,

2-6.

> 7.      The policy provides the following with respect to medical exemptions:
>
> a. Medical exemptions. A medical exemption includes any medical contraindication relevant to a specific vaccine or other medication. Health care providers will determine a medical exemption based on the health of the vaccine candidate and the nature of the immunization under consideration. Medical exemptions may be temporary (up to 365 days) or permanent. Standard exemption codes appear in appendix C.
>
>> (1) *General examples* of medical exemptions include the following—
>>
>>> (a) Underlying health condition of the vaccine candidate (for example, based on immune competence, pharmacologic or radiation therapy, pregnancy and/or previous adverse response to immunization).
>>>
>>> (b) *Evidence of immunity* based on serologic tests, documented infection, or similar circumstances.
>>>
>>> (c) An individual's clinical case is not readily definable. In such cases, consult appropriate medical specialists, including specialists in immunization health care.
>
> AR 40-562, ¶ 2-6a.(1) (emphasis added).

As the policy reflects, these are just examples of situations when health care providers may

determine a medical exemption is warranted but each exemption request is an individual

determination based on the health of the individual and the disease at issue.  Additionally, there

are *some*, but not all, diseases in which serologic or other tests may be used to identify pre-

existing immunity.[4]

---

[4] The AR states, *"Screening for immunity.* For *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations." AR 40-562, 2-1.g (emphasis added).

8.     MARADMIN 462/21 ¶ 3.j. provides specific guidance related to processing medical exemptions. The policy requires the electronic documentation of vaccination or vaccine exemption, if applicable, in the Medical Readiness Reporting System (MRRS) and the Service member's Electronic Health Record (EHR). MARADMIN 462/21 ¶ 3.h.2.  Permanent medical exemptions are granted only where the service member has a medical contraindication to the COVID-19 vaccine and must be approved by the first Command Surgeon, in the grade of O-5 or above, in the Service member's chain of command. MARADMIN 462/21 ¶ 3.j.  Temporary medical exemptions may be granted when there is a temporary medical reason to postpone vaccination, and such exemptions may be approved by a licensed DoD healthcare provider. *Id.*

9.     On October 7, 2021, MARADMIN 533/21 was issued to provide additional guidance related to the documentation of medical exemptions.  Permanent medical exemptions are assessed, granted, and documented as required by MARADMIN 462/21 and MARADMIN 533/21 ¶2.c.2.  All administrative exemptions are required to be documented in the Medical Readiness Reporting System (MRRS) not later than October 24, 2021, for active duty service members, and November 24, 2021, for reserve component personnel. MARADMIN 533/21 ¶ 2.c. Members with pending exemption requests are granted temporary medical exemptions pending the approval or denial of their request.[5] MARADMIN 533/21 ¶2.c.4.

10.    For either a temporary or permanent medical exemption request, medical providers evaluate the patient for medical contraindications based on documented medical history and/or clinical evaluation, and an assessment of the benefits and risks to the patient. BUMEDNOTE 6300 of September 3, 2021, *Clinical Consultation Guidance for COVID 19 Vaccine Permanent Exemption* (published September 3, 2021).   Additionally, medical providers

---

[5] No disciplinary or administrative action will be initiated with a permanent medical exemption request is pending.

are encouraged to request expert consultation by an immunizations specialist, when necessary.

Medical contraindications for the COVID-19 vaccine include:

(a)  Anaphylaxis from a previous COVID-19 vaccine or COVID-19 vaccine ingredient;

(b)  Myocarditis or pericarditis after COVID-19 vaccine administration or infection;

(c)  Temporary association of Stevens-Johnson Syndrome or Guillain-Barré Syndrome that cannot be attributed to another underlying cause within 6 weeks of COVID-19 vaccine administration or infection;

(d)  Thrombosis with Thrombocytopenia Syndrome (TTS) after COVID-19 vaccine administration;

(e)  Persistent clinical symptoms lasting 4 or more weeks following a COVID-19 infection that cannot be attributed to another underlying cause after evaluation and focused workup ("Long COVID").  *Id.*

In the *Clinical Consultation Guidance*, providers are also encouraged to consult CDC guidance.[6]

11.      If a patient does not present with contraindications for COVID-19 vaccination, or does not otherwise present a clinical case requiring specialized assessment under BUMEDINST

---

[6] An example of CDC clinical considerations includes:

If you were treated for COVID-19 with monoclonal antibodies or convalescent plasma, you should wait 90 days before getting a COVID-19 vaccine. Talk to your doctor if you are unsure what treatments you received or if you have more questions about getting a COVID-19 vaccine.

If you or your child has a history of multisystem inflammatory syndrome in adults or children (MIS-A or MIS-C), consider delaying vaccination until you or your child have recovered from being sick and for 90 days after the date of diagnosis of MIS-A or MIS-C. Learn more about the clinical considerations for people with a history of multisystem MIS-C or MIS-A.

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html

6230.15B, paragraph 2-6a.(1)(c), the patient does not qualify for a permanent medical exemption.

12.     In contrast to medical exemptions, granting administrative exemptions is a non-medical function handled by separate procedures. Administrative exemptions may be granted for reasons such as pending separation or retirement, permanent change of station, emergency leave, and religious accommodation. BUMEDINST 6230.15B, ¶ 2-6.b.  Marine Corps policy concerning requests for the accommodation of religious practices generally, including immunizations, is outlined in Marine Corps Order (MCO) 1730.9.  A service member seeking an exemption from immunization for religious reasons must submit the request in in accordance with MCO 1730.9, paragraphs 4.a.(2) and 4.a.(3).

a. The requirements for a request include: (1) the nature of the accommodation requested, (2) the duration of the request, (3) the religious or sincerely held spiritual basis for the request, and (4) the faith group or belief system identified with the request. MCO 1730.9 ¶ 4.a.(3). Service members must complete an interview with the cognizant command chaplain, who assesses whether the requestor's beliefs appear sincerely held for recommendation to the commander. *Id*., encls. (1) and (2). Requests for the accommodation or religious practices for medical requirements are forwarded, via the general court-martial convening authority, to the Deputy Commandant, Manpower and Reserve Affairs (DC M&RA) for action as the adjudication authority. *Id*. ¶ 4.b.  Requests for waiver of immunization requirements must be forwarded to DC M&RA within 30 days of receipt of the request. *Id*. ¶ 4.b.(2).  DC M&RA review and final determination must be made within 60 days of receipt of the request.[7] *Id*.

_____

[7] No disciplinary or administrative action will be initiated while a request for an exemption for religious accommodations is pending.

b.  MCO 1730.9 directs the adjudication authority to consider every request on a case-by-case basis. However, Adjudication Authorities may consider the "individual and the cumulative effects of granting similar religious accommodation requests on the necessary elements of mission accomplishment;" *Id*. ¶ 4(b)(2).  Further, the adjudication authority may consider any adverse health and safety impacts of the request in rendering its decision. Id., ¶ 4.b.(3)(b).  For any medical-related accommodation request, paragraph 4(e)(6) requires the Director, Health Services provide a medical advisory. If the request for religious accommodation for immunization is disapproved, the service member has the right to request an appeal to the Commandant of the Marine Corps (CMC). *Id*. ¶ 4(c)(1).

13.    Enforcement Generally: USMC commanders are required to issue appropriate orders to ensure Service members under their command are fully vaccinated. MARADMIN 462/21 ¶ 3.1.  In the event a service member does not qualify for an exemption and refuses the order to become vaccinated, the member's refusal is documented in MRRS and the general court-martial convening authority may initiate disciplinary or adverse administrative action. MARADMIN 533/21 ¶ 2.c.4.

14.    Disciplinary options generally: While MARADMIN 462/21 elevates disposition authority for cases involving vaccine refusal to the general court-martial convening authority, commanders generally possess a wide array of administrative and disciplinary options with which to dispose of Service members' offenses under the UCMJ.  Subject to the limits of the commander's authority, the commander's administrative corrective measures include formal or

informal counseling, non-punitive letters of caution or censure,[8] withholding of privileges, and extra-military instruction, as governed by the relevant service policy.  Disciplinary options include non-judicial punishment under Part V of the MCM, disposition of the charges by court-martial where the commander has the authority to do so, or forwarding of charges for trial by court-martial where the commander does not.

　　　　a.  Nonjudicial punishment is a forum generally reserved for minor offenses, or those offenses which the maximum sentence would not include a Dishonorable Discharge or confinement for greater than one year if tried by a general court-martial. MCM, Part V ¶ 1.e. Punishments are limited by the rank and position of the cognizant commander, as well as the rank of the person accused of misconduct.  *Id.* ¶ 2, 5.  Punishments and service limitations are outlined in MCM Part V and the Manual of the Judge Advocate General (JAGMAN), but commonly include some combination of the following: admonishment or reprimand, extra duties, restriction, reduction in rank, or forfeiture of pay. MCM, Part V ¶ 5; JAGMAN, 0111. Commanders are encouraged to permit the accused to speak with counsel subject to the immediate availability of counsel, the delay involved, and operational commitments or military exigencies.  JAGMAN 0108 ¶ a.(1).  Service members not attached to a vessel have the right to refuse non-judicial punishment and request trial by court-martial. MCM, Part V ¶ 3; JAGMAN 0108 ¶ a. Following imposition of non-judicial punishment, the service member has five working days to submit an appeal, and may request additional time for good cause. MCM, Part V ¶ 7. The member's appeal is forwarded, along with the commander's endorsement, to the cognizant general court-martial convening authority for action. MCM, Part V ¶ 7; JAGMAN, 0117.

---

[8] Non-punitive letters of caution or censure are matters between the issuing authority and the counseled member and do not become part of the member's official service record.  Manual of the Judge Advocate General (JAGMAN) 105 ¶b.(2).

b.  More serious offenses under the UCMJ may be subject to trial by court-martial.  There are three types of courts-martial: summary court-martial, special court-martial, and general court-martial.  Depending on the rank and position of the commander, he or she may or may not be authorized to convene certain types of courts-martial. UCMJ, 10 U.S.C. § 821-24. Further, the nature of the proceedings and punishments available are limited depending on the forum and rank of the accused. *See* UCMJ, 10 U.S.C. Chapter 47, Subchapters IV, VIII.  The most severe punishments, such as the death penalty, a Dishonorable Discharge, Dismissal, or extended periods of confinement, are only available at general courts-martial, and certain offenses are only permitted to be tried by general courts-martial.  *Id.*  Summary courts-martial are less formal than either special or general courts-martial, which are equivalent in formality and procedure to civilian criminal courts; however, each court-martial forum is governed by the procedures outlined in the MCM, Part II, Rules for Court Martial.  Special courts-martial and general courts-martial, in particular, have substantial legal and procedural requirements with respect to pre-trial, trial, and post-trial judicial proceedings.[9] The adjudication of trials by court-martial generally take months before the court is convened, and may take several months, depending on the matters involved in the case and the court's docket, prior to the trial date. Upon conclusion of the trial, the member may appeal the findings or sentence as provided in Chapter XI and XII of the MCM.

15.  Administrative Separations Generally: Adverse administrative action includes administrative separation from the service. Administrative separation procedures may vary in certain respects depending on the Service member's status (officer or enlisted), years of service,

---

[9] Relevant to a charge of violation of Article 92 (disobeying a lawful order) for refusal to receive the COVID-19 vaccination, an accused member could choose to raise all available affirmative defenses, including the lawfulness of the order, at court-martial.

and record of performance, among other factors. Administrative separations for officers are

processed in accordance with SECNAV Instruction 1920.6D (hereinafter SECNAVINST

1920.6D) and Chapter 4 of MCO 1900.16, Separation and Retirement Manual (hereinafter

MARCORSEPMAN), while enlisted administrative separations are processed pursuant to

MARCORSEPMAN, Chapter 6.

16.     Adverse incidents involving officers require notification to the CMC, Military

Personnel Policy Branch. MARCORSEPMAN ¶ 4101.  The CMC shall initiate administrative

separation processing when the officer's performance or conduct is such that administrative

separation is appropriate. *Id*. Reasons for separation are outlined in SECNAVINST 1920.6D, and

include reasons such as Misconduct, Moral or Professional Dereliction, and Substandard

Performance. The specific procedures involved with processing an officer for misconduct are

outlined in SECNAVINST 1920.6D, Enclosure (6), "Policy Governing Involuntary Separation

for Cause or Parenthood", and Enclosure (7), "Guidelines on Separations for Cause".

17.  The applicable procedures may vary in certain respects depending on the officer's

type of appointment, years of service, and record of performance, among other factors.

Probationary officers may be processed without a Board of Inquiry (BOI) when the show cause

authority determines that an Honorable, or General (under honorable conditions) characterization

of service is appropriate. SECNAVINST 1920.6D, Encl (2), ¶ 25; Encl (7), ¶ 3.a.  Non-

probationary officers must be processed using BOI procedures, which entails a formal

administrative hearing over which a panel of no fewer than three senior officers preside in order

to make findings with respect to the bases for separation, and recommendations with respect to

retention or separation, and character of service. *Id.*, Encl (7) ¶ 4; Encl (11).

—

18.     Separation processing should be completed 30 calendar days from the date a command notifies an officer of the commencement of separation processing in cases where no BOI is required. SECNAVINST 1920.6D ⁋ 9b.  In cases where a BOI is required, the processing goal is 90 calendar days from the date a command notified an officer of the commencement of separation processing.  *Id*. at ⁋ 9c.  Every effort is made to adhere to these time goals but the failure to process an administrative separation within the prescribed time goals will not constituted a bar to separation or characterization.  *Id*. at ⁋ 9.

19.     Enlisted Marines may be separated for the convenience of the government for reasons including refusal of medical treatment, including refusal of inoculation, if the refusal interferes with duty.  MARCORSEPMAN ¶ 6203.7.e.  Alternatively, Marines may be separated by reason of misconduct for offenses which would warrant a punitive discharge under the UCMJ, which includes violations of Article 92 of the UCMJ. MARCORSEPMAN ¶ 6210.6. Marines with fewer than six years of service may be processed using notification procedures under MARCORSEPMAN 6303, unless characterization of service[10] of Other Than Honorable is warranted.  Administrative board procedures under MARCORSEPMAN paragraph 6304 are used in instances where an Other Than Honorable characterization is warranted, or for Marines with greater than six years of service, if they elect an administrative board.

20.     Notification procedures afford the Marine with notice of the adverse administrative action and an opportunity to submit written matters for consideration, whereas administrative board procedures require a formal administrative hearing.  The

---

[10] A characterization of service is assigned to a Service member upon separation from the military and generally reflects the quality of an individual's military service. The highest characterization of service is Honorable, followed by General (Under Honorable Conditions), Other Than Honorable, Bad-Conduct, and Dishonorable. Officers may be awarded a Dismissal, which is akin to a Dishonorable discharge. The first three types of characterization may be awarded using administrative procedures, whereas Bad Conduct and Dishonorable discharges, as well as an officer's Dismissal, are considered "punitive discharges." These types of discharges may only be awarded by a court-martial sentence and imposed after appellate review is complete.

MARCORSEPMAN processing time goal where a board is not required is 15 working days after

the Marine received notification of separation. MARCORSEPMAN ¶ 6102.  If a board is

required, action should be completed within 50 working days after the Marine received

notification of separation. *Id*.

21.     MARADMIN 462/21 permits the special court-martial convening authority to

issue administrative counseling pursuant to paragraph 6105 of the MARCORSEPMAN, which

provides the following for involuntary separations by reason of misconduct:

> "In cases involving unsatisfactory performance, pattern of misconduct, minor
> disciplinary infractions, or other bases requiring counseling under paragraph
> 6105, separation processing may not be initiated until the Marine is counseled
> concerning deficiencies and afforded a reasonable opportunity to overcome those
> deficiencies."

MARCORSEPMAN ¶ 6105.3.  The duration of time that affords the Marine a "reasonable

opportunity" is determined by the commanding officer on a case-by-case basis, and the

commanding officer must sign the formal counseling document (commonly known as a "Page

11"). *Id*.  The MARCORSEPMAN provides standard language to include to advise the Marine of

potential disciplinary or adverse administrative action, to include administrative separation, and

advises the member of his or her right to provide a rebuttal to be filed with the counseling. *Id*.

22.     Discharged service members may seek a review of his or her discharge through

the cognizant Discharge Review Board (DRB). 10 U.S.C. § 1553.  The DRB is empowered to

change and issue a new discharge on grounds of equity or propriety. 32 C.F.R. § 70.9.  DRBs

may consider factors such as the applicant's service history, awards and decorations, letters of

commendation or reprimand, wounds received in action, acts of merit, length of service,

convictions by court-martial or civilian convictions, non-judicial punishments, records of

unauthorized absence, or records relating to the member's discharge. *Id*.  Discharged service

members may also seek an upgraded discharge from the appropriate Board for Correction of Military Records (BCMR), which is the Board for Correction of Naval Records (BCNR) for the Navy and Marine Corps personnel. 10 U.S.C. § 1552.  The BCNR has more extensive authority than DRBs to upgrade discharges, void discharges, alter reenlistment codes, and remove otherwise inaccurate or adverse documents from a service member's record.  The BCNR may correct any military record when it is necessary to correct an error or remove an injustice.  *Id.*  The BCNR's action may result in a member being reinstated in the Marine Corps. If a Service member is unable to obtain relief through the appropriate DRB or BCMR, the service member may elect to challenge the agency's decision and administrative proceedings in federal court under applicable federal law.

23.  In summary, the Marine Corps is providing its personnel opportunities to seek medical and religious exemptions from the requirement to be vaccinated.  For those Marines who do not wish to pursue an exemption or have their exemption requests denied after full adjudication including appeals and still refuse to be immunized, the Marine Corps' interest in good order and discipline is best served by adjudicating each refusal on a case-by-case basis.  Each Marine will be afforded all due process to which he or she is entitled while fully exhausting intra-service administrative and disciplinary processes that result in a final agency action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of November, 2021.

DAVID J. FURNESS