**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STEVEN CHURCH,** *et al.* | |
| *Plaintiffs,* | |
| v. | Civil Action No.: 1:21-cv-2815 (CKK) |
| **JOSEPH R. BIDEN,** *et al.* | |
| *Defendants.* | |

**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

DATED: November 3, 2021.

        Respectfully submitted,

By: /S/ MICHAEL A. YODER
Michael A. Yoder [1600519]
THE LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22202
Tel: (571) 234-5594
Fax: (571) 327-5554
michael@yoderesq.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

| Description | Page |
|---|---|
| **PRELIMINARY STATEMENT** ............................................................................................. 1 | |
| **ARGUMENT** .............................................................................................................................. 2 | |
| I.   PLAINTIFFS CLAIMS ARE RIPE FOR INJUNCTIVE RELIEF ........................................... 2 | |
|     A.  Plaintiffs' Claims are Constitutionally Ripe ...................................................... 2 | |
|     B.  Plaintiffs' Claims are Prudentially Ripe ............................................................ 4 | |
| II.  DISCIPLINE SUCH AS TERMINATION IS NOT 'MERELY HYPOTHETICAL' ................... 5 | |
| III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ............. 7 | |
|     A.  Plaintiffs' Religious Beliefs are Sincerely Held ................................................ 8 | |
|     B.  The Vaccine Mandates Cannot Survive Strict Scrutiny .................................... 8 | |
|         i.  The Vaccine Mandate is not narrowly tailored towards achieving the compelling interest in stemming the spread of COVID-19 .................................. 15 | |
| IV. THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR & THE PUBLIC INTEREST IS BEST SERVED BY THE NARROWLY TAILORED RELIEF REQUESTED ..................... 7 | |
| **CONCLUSION** ............................................................................................................................ 2 | |

## PRELIMINARY STATEMENT

Inoculation is irreversible. Yet Defendants have asked this Court to abstain from enjoining their enforcement of the Vaccine Mandates[1] because Defendants *have not yet* exercised the unilateral (and unconstitutional) discretion to violate Plaintiffs' fundamental rights.[2] Simply stated, Defendants ask this Court to ignore the Constitution and well-established American jurisprudence and hold that the federal government has *carte blanche* authority to decide if and when Plaintiffs may able to enjoy the **fundamental rights to which they are entitled as a matter of law**. Of course, this assertion cannot survive the rigor of strict scrutiny constitutional review.

Defendants assert "an order that would automatically exempt on religious grounds all Christians from the COVID-19 vaccination requirements for the armed forces and the federal civilian workforce . . . would be extraordinary and unprecedented." (Defs.' Opp. at 1) (internal quotations omitted)). But what is truly "extraordinary and unprecedented" is the assertion that Plaintiffs must be irreparably harmed ***before*** an Article III "case or controversy" exists, especially under circumstances in which the harm Plaintiffs face – deprivation of their constitutional rights, at a minimum – cannot be cured retroactively.

It is indisputable that any retroactive redress would be wholly insufficient should this Court not issue an injunction and permit Defendants to injure Plaintiffs should they so choose. Indeed,

---

[1] "Vaccine Mandates" refers to the mandatory vaccination provisions contained in Exec. Order 14043 and Secretary Austin's Dept. of Defense Order, dated August 24, 2021.
[2] The "fundamental rights" at issue here are the right to freely exercise their religion, *see* U.S. Const. amend. I; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the right to earn a living, *McCormick v. District of Columbia*, 899 F. Sup.2d 59, 65 (D.D.C. 2012) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 572–73 (1972)) (holding the right to earn a living or pursue a chosen career is a fundamental right), and the right to remain free from forcible, involuntary inoculation, *Washington v. Harper*, 494 U.S. 210, 229 (1990) ("Forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty.").

such situation is the very basis as to why Plaintiffs moved for a temporary restraining order and preliminary injunctive relief.

## ARGUMENT

**I.   PLAINTIFFS' CLAIMS ARE RIPE FOR INJUNCTIVE RELIEF**

The purpose of preliminary injunctive relief is to preserve the *status quo* of the parties until a trial on the merits can be held, and in this District, "[t]he standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction" is the same. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Gomez v. Kelly*, 237 F. Supp. 3d 13, 14 (D.D.C. 2017); *see also Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions.").

Defendants first contend that Plaintiffs do not even have the right to preserve the *status quo*. (Defs.' Opp. at 1 ("As an initial matter, no Plaintiff has a ripe claim.")). Instead, Defendants have asked this Court to ignore simply ignore the *status quo*, decline to protect Plaintiffs from imminent, irreparable harm Defendants erroneously believe they have a right to inflict as they so choose, and then *only after* Defendants unconstitutionally inflict such irreparable injury may Plaintiffs seek court intervention to redress an injury that, by definition, cannot be redressed. (*Id.* at 1-2). And spectacularly, the basis upon which Defendants rely in making this assertion boils down to "The federal government has not inflicted the injury, *yet*." It is the "yet" (e.g., Defendants imply they have the unilateral, discretionary authority to violate Plaintiffs' rights if they feel inclined to do so) that is at issue here.

**A.  Plaintiffs' Claims are Constitutionally Ripe.**

Plaintiffs need not suffer an irreparable injury in order to have standing under Article III of the U.S. Constitution. *See Whitmore v. Arkansas*, 495 U.S. 149, 155–156 (1990) (harm to

2

plaintiff death-row inmate from fellow inmate's execution depended on the court's one day reversing plaintiff's conviction or sentence and considering comparable sentences at resentencing); *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (harm dependent on police's arresting plaintiff again and subjecting him to chokehold); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (harm rested upon "what one of a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception of departmental disciplinary procedures"); *O'Shea v. Littleton*, 414 U.S. 488, 495–498 (1974) (harm from discriminatory conduct of county magistrate and judge dependent on plaintiffs' being arrested, tried, convicted, and sentenced); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (harm to plaintiff dependent on a former Congressman's (then serving a 14–year term as a judge) running again for Congress). This progeny of cases demonstrates a mere snapshot of the robust body of case law affirming that Article III standing is satisfied when a plaintiff, such as the Plaintiffs here, seek injunctive relief when faced with imminent, irreparable harm.

To establish constitutional standing, Plaintiffs must demonstrate "an injury in fact that is (1) concrete and particularized . . . (2) imminent . . . (3) fairly tracible to Defendants' challenged conduct, and . . . (4) likely redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). When reviewing this question, courts "must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *In re Navy Chaplaincy*, 697 F.3d at 1171, 1176 (D.C. Cir. 2012).

Here, the injury-in-fact[3] is "concrete and particularized" because it "affect[s] the plaintiff[s] in a personal and individual way." *Bush v. U.S. Congress*, 2011 WL 5290004 at *1 (D.D.C. Aug. 12, 2021).

***First***, absent injunctive relief Plaintiffs will be (1) disciplined up to and including termination in violation of their fundamental right to pursue a career of their choosing, *McCormick*, 899 F. Sup.2d at 65; *Bd. of Regents*, 408 U.S. at 572–73, or (2) inoculated with a COVID-19 vaccine in violation of their fundamental rights to freely exercise their religion, U.S. Const. amend. I; *Hobby Lobby*, 573 U.S. at 682, and remain free from forcible, involuntary inoculation. *Harper*, 494 U.S. at 229. ***Second***, the injury-in-fact is imminent because Plaintiffs have just five days[4] to be inoculated against their will and in violation of their religious freedom or otherwise face discipline up to and including termination. (Plfs.' Mot. at 7 n. 18). ***Third***, the injury-in-fact is not only "fairly tracible" to the Vaccine Mandates, but indisputably the direct and proximate result of the Vaccine Mandates. And ***fourth***, an injunction is not only likely but guaranteed to redress the imminent injury-in-fact Plaintiffs will suffer which, at its core, is best defined by the infringement or deprivation of one or more fundamental rights to which Plaintiffs are lawfully entitled. *See infra*, p. 5 n. 3.

### B. Plaintiffs' Claims are Prudentially Ripe.

Defendants correctly set forth the factors to be considered by the Court in evaluating the prudential requirement, namely: "(1) whether delayed review would cause hardship to the

---

[3] Absent injunctive relief, the injury-in-fact Plaintiffs face is the deprivation of one or more fundamental rights. Specifically, if Plaintiffs wish to preserve their fundamental right to earn a living, they must compromise their fundamental rights to freely exercise their religion and remain free from forcible, involuntary inoculation. On the other hand, if Plaintiffs wish to freely exercise their religion, their fundamental right to earn a living will be violated.

[4] To be "fully vaccinated" federal employees must be inoculated with the second dose of a two-dose vaccine series or a one-dose vaccine at least two (2) weeks prior to the official deadline. Safer Federal WorkForce, Vaccinations, THE WHITE HOUSE, available at: https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited Nov. 3, 2021).

4

plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." (Defs.' Opp. at 12 (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998))). However, as discussed above, the only reason Plaintiffs "rushed to federal court" is because the date by which Plaintiffs must be inoculated is November 8 – just 5 days away. (Defs.' Opp. at 12).

It is not subject to reasonable dispute that delayed review of the instant motion before the court would cause hardship to Plaintiffs–in fact, it would irreparably harm them as a deprivation of fundamental rights constitutes irreparable harm. The Supreme Court has just recently affirmed, "**there can be no question that the challenged restrictions, if enforced, will cause irreparable harm**. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Brooklyn Roman Catholic Diocese v. Cuomo* 141 S. Ct. 63, 67 (2021) (emphasis added) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (expanding the scope of holding to encompass religious-based First Amendment claims in addition to speech-based claims).

Indeed, where Defendants' Vaccine Mandate "conflicts with plaintiffs and other individuals federally protected right to seek a religious accommodation from their individual employers," injunctive relief is appropriate. *Dr. A v. Hochul*, No. 1:21-cv-1009, 2021 WL 4734404, *10 (N.D.N.Y. Oct. 12, 2021) (internal quotations omitted). The Sixth Circuit has also held that "[e]nforcement of the [Vaccine Mandate] would deprive Plaintiffs of their First Amendment rights, an irreparable injury." *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 2021 WL No. 21-2945, 2021 WL 4618519, *6 (6th Cir. 2021).

Moreover, judicial intervention does not inappropriately interfere with further administrative action; it appropriately interferes with unconstitutional conduct and stifles the federal government's attempt to abjectly disregard the fundamental rights of Plaintiffs and approximately 7.6 million other Americans. The entire basis for the courts' existence is to administer justice fairly and impartially. U.S. Const. Art. III. It can hardly be stated that turning a blind eye and allowing Defendants to violate Plaintiffs fundamental rights – which is exactly what Defendants have asked this Court to do – constitutes the fair and impartial administration of justice.

Finally, whether the courts would benefit from further factual development of the issues presented is a moot factor as the motion before the Court is for a *preliminary* injunction, not a permanent injunction. The ability to factually develop the record is not precluded nor is a final decision on the merits sought at this time. Rather, Plaintiffs merely move the Court to preserve the *status quo* and prevent Plaintiffs from suffering irreparable harm that can easily be avoided simply by ordering the injunctive relief requested.

## II.   DISCIPLINE SUCH AS TERMINATION IS NOT "MERELY HYPOTHETICAL"

Here, Plaintiffs assert that they face discipline, up to and including termination, if they engage in their constitutionally protected right to freely exercise their religion. (Plfs.' Mot. at 16, 17).  This is undisputed.

As an initial matter, Defendants' own actions vitiate any notion that this threat is anything shy of imminent and at a minimum, substantially likely to occur. This Court has offered Defendants the opportunity to ensure Plaintiffs will not face discipline or termination on ***two separate occasions*** yet both times, Defendants "provided no guarantee of what will happen to Plaintiffs if their exemption requests are denied and if they reach the point of being disciplined or terminated." Order at 2, (Oct. 29, 2021). Defendants' refusal to provide such assurance to the Court

6

is only underscored by the words of Navy Vice Admiral William J. Galinis, who sent employees an email that read, "**Frankly, if you are not vaccinated, you will not work for the U.S. Navy.**"[5] Then on October 25, Vice Admiral Galinis' promise came to fruition as former First Sergeant Kimberly D. Taylor was fired from her position as the Company First Sergeant (relief for cause) on October 25 because she "refused inoculation with the COVID-19 vaccine." *See* Exhibit 1.

The cases upon which Defendants rely in asserting Plaintiffs lack standing involve plaintiffs who attempted to establish standing based on nothing more than unsupported speculation about whether an individual would act towards him or her in a biased manner. Such facts differ in stark contrast as to the facts of this case because here, Plaintiffs rely upon Defendants' own policies, procedures, and actions that demonstrate the very real imminent and irreparable injury Plaintiffs' will suffer absent injunctive relief.

### III.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

Under RFRA, a person whose exercise of religion is substantially burdened by the government "**is entitled to an exemption** from the rule unless the Government 'demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; *and* (2) is the least restrictive means of furthering that compelling governmental interest.'" *Id*. (quoting 42 U.S.C. § 2000bb-1(b) (emphasis added)).

To clarify, Defendants seem to allege Plaintiffs are seeking "religious exemptions." (Defs.' Opp. at 25). While perhaps a simple misstatement, Plaintiffs do not assert that because of their religious belief they are exceptional; rather, Plaintiffs are requesting a religious *accommodation* as to the Vaccine Mandate. (Plfs.' Mot. at 12, 15-17).

---

[5] Josh Farley, *Shipyards' commander: '. . . If you are not vaccinated, you will not work for the U.S. Navy'*, KITSAP SUN, (Oct. 15, 2021), available at: https://www.kitsapsun.com/story/news/2021/10/15/shipyards-commander-says-vaccinations-a-condition-employment/8468528002/ (last visited Nov. 3, 2021).

As to the specific allegations, Defendants assert "anyone with a pending and timely request may abstain from COVID-19 vaccination while his request is pending, without discipline." (Defs.' Opp. at 25.) But this argument is a mere threadbare assertion unsupported by an affidavit by any governmental entity. Notwithstanding the Rules of Professional Conduct pertaining to candor with the Court and their gravity, lodging this assertion otherwise carries no weight as to its enforceability should Defendants act contrarily.

### A. Plaintiffs' Religious Beliefs are Sincerely Held.

Defendants next assert "[t]he threadbare allegations of the complaint [ ] cannot establish that Plaintiffs' claims are ripe or that they have a likelihood of success on the merits" and since Defendants and this Court have not had an opportunity to examine Plaintiffs' claims, "neither the government nor the court has to accept the Plaintiffs' mere say-so." (Defs.' Mot. at 25) (internal quotation marks omitted). This is untrue.

Just this year, the EEOC issued guidance instructing employer's to "**ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief.**" U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2021-3, *Section 12: Religious Discrimination* (2021). Absent an objective basis giving rise to a *bona fide* doubt in the sincerity of a religious belief for which an employee requests an accommodation, employers are prohibited from making even limited inquiries as to whether his or her beliefs are sincere. *Id*.

### B. The Vaccine Mandates Cannot Survive Strict Scrutiny.

For 229 years, the First Amendment has protected those with sincerely held religious beliefs from government action "that discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). A personal religious faith is entitled to as

8

much protection as one espoused by an organized group. *Frazee v. Ill. Dept. of Employ. Sec.*, 489 U.S. 829, 834 (1989); *see also Hernandez v. CIR*, 490 U.S. 680, 699 (1989).

Here, it is uncontroverted that but-for the use of fetal cell lines from aborted fetuses, none of the currently available COVID-19 vaccines would exist. (Plfs.' Mot. at 12). Thus, the Vaccine Mandates unequivocally impose a burden on Plaintiffs' fundamental right to the free exercise of religion and are therefore subject to strict scrutiny, not rational basis review as Defendants erroneously contend. (Defs.' Mot. at 29) (incorrectly stating "the relevant level of scrutiny is rational basis." (citing *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 215 (D.C. Cir. 2013)).

After articulating a list of cases pertaining to vaccine requirements, Defendants argue, in conclusory fashion, that "Courts have thus "consistently used rational basis review to assess mandatory vaccination measures." (Defs.' Mot. at 29) (citations and internal quotation marks omitted). However, the progeny of cases Defendants cite date back to 1905 when the Supreme Court upheld a mandatory vaccination law against a substantive due process challenge in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). But reliance *Jacobson* is misplaced.

*Jacobson* predated the modern constitutional jurisprudence of tiers of scrutiny and the case was decided before the First Amendment was incorporated against the states. Most notably, *Jacobson* "did not address the free exercise of religion." *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015); *see Roman Cath. Diocese*, 141 S. Ct. at 70 (Gorsuch, J., concurring) ("Jacobson hardly supports cutting the Constitution loose during a pandemic. That decision involved an entirely different mode of analysis, an entirely different right, and an entirely different kind of restriction."). Indeed, the *Jacobson* Court itself specifically held that "even if based on the acknowledged police powers of a state," **a public-health measure "must always yield in case of conflict with ... any right which [the Constitution] gives or secures**." *Jacobson*, 197 U.S. at 25.

Defendants then continue to cite an array of unrelated and irrelevant opinions from various jurisdictions, in support of their assertion that "numerous courts have found that preventing infectious diseases like COVID-19 through vaccines was the least restrictive means available. *See F.F. on behalf of Y.F. v. State*, 65 Misc. 3d 616, 633, (N.Y. Sup. Ct. 2019); *Brown v. Smith*, 24 Cal. App. 5th 1135, 1145 (2018); *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 996 (2018); *see also D.J. v. Mercer Cty. Bd. of Educ.*, No. 13-0237, 2013 WL 6152363, at *4 (W. Va. Nov. 22, 2013). (Defs.' Mot. at 27). **Not a single case cited is remotely relevant to the facts of this case.**

*F.F. on behalf of Y.F.* challenged the constitutionality of legislation "repeal[ing] the Public Health Law provision allowing religious exemptions from mandatory vaccinations for children who attend most public and private schools in the State of New York" prompted by a 2014 measles outbreak at California's Disnleyland. *Id.* at 618-19. ***Brown*** and ***Love*** both raised constitutional challenges to Senate Bill No. 277 which *inter alia* repealed personal belief exemptions to California's immunization requirements (also prompted by the 2014 Disneyland measles outbreak). Of course, the *Brown* Court correctly rejected the preposterous assertion that "all vaccines are unavoidably unsafe", *id.* at 1143, and the *Love* Court rejected the Plaintiffs' due process challenges. But neither argument is even remotely related to the basis upon which Plaintiffs seek injunctive relief in this action. And last, **Mercer County** pertains to a constitutional challenge concerning a West Virginia statute that required Tdap and meningococcal vaccines for students in grades 7-12 attending middle and high schools in West Virginia. *Id.* at *3.

Not one of the cases cited pertained to federal employees or the military, COVID-19, the currently available COVID-19 vaccines, whether vaccination violated an adult's fundamental right to freely exercise his or her religion, and (as discussed below) only applied to vaccines with

decades' long, proven histories of efficacy in preventing the spread of diseases with fatality rates astronomically higher than that of COVID-19.

In sum, Defendants attempt to apply rational basis review falls flat as it is not subject to reasonable dispute that strict scrutiny applies to challenged governmental action that burdens the fundamental right to religion, and under "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997) which governmental action rarely pass[es]", *Burson v. Freeman*, 504 U.S. 191, 200 (1992), Defendants cannot rebut perhaps the most decisive factor: **mandatory vaccination is not the least restrictive means necessary to stem the spread of COVID-19.**

> i. **The Vaccine Mandate is not narrowly tailored towards achieving the compelling interest in stemming the spread of COVID-19.**

To survive strict scrutiny the Vaccine Mandate must be "narrowly tailored" or in other words, the "least restrictive means necessary" to stem the spread of COVID-19. Notably, just three days ago, White House Press Secretary Jen Psaki tested positive for COVID-19 despite being vaccinated with the exact vaccines Defendants argue provide "the best way to . . . prevent infection by the Delta variant or other variants . . .". (Defs.' Opp. at 4). Plaintiffs have provided multiple, *better* ways.

For example, Plaintiffs such as Mr. Church and Ms. Morgan who do not encounter federal employees outside their home *as a matter of impossibility* cannot infect federal employees with COVID-19. (Plfs.' Mot. at 16). Additionally, Plaintiffs with natural immunity are not at risk of transmitting COVID-19 to other federal employees based upon CDC statistics evidencing that as of May 2021, an estimated 120.2 million people in the United States have already been infected with COVID-19 yet **not a single documented case of an infected individual re-contracting the virus and transmitting it exists.** (Plfs.' Mot. at 16) (emphasis in original).

11

## IV. THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR AND THE PUBLIC INTEREST IS BEST SERVED BY THE NARROWLY TAILORED RELIEF REQUESTED.

Plaintiffs last want to raise a critical point that Defendants both, explicitly and implicitly raise in their Opposition: **the relief Plaintiffs request is merely a temporary restraining order and a preliminary injunction.** This is not a motion for summary judgment seeking to permanently enjoin Defendants contrary to their repeated pleas that "further factual development" must be conducted. (Def.'s Mot. at 12-13, 18).

In balancing the equities and in considering the public's best interest, there is no question: entering an order granting Plaintiffs' the injunctive relief requested weighs heavily in Plaintiffs' favor. Courts "have a duty to conduct a serious examination of the need for such a drastic measure." *Catholic Diocese*, 141 S. Ct. at 68. And, as here, "it has not been shown that granting the applications will harm the public." *Id*. Nor could Defendants make such a showing, as Plaintiffs are merely seeking to rise each morning, don the same uniforms and protective equipment that sufficed to make them heroes for nearly two years, and continue to provide military defense, national security, and critical federal services to a Nation in need. Plaintiffs' vaccination status was irrelevant for nearly two years, yet for unknown reasons is purportedly relevant today.

Moreover, the federal government "is in no way harmed by the issuance of an injunction that prevents [it] from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011). Conversely, for Plaintiffs, even minimal infringements upon First Amendment values constitute irreparable injury; *Roman Cath. Archbishop of Wash*, 2021 WL 1146399, at *19; *Roman Catholic Diocese*, 141 S. Ct. at 67; *Elrod*, 427 U.S. at 373.

As *Dr. A* recognized when it enjoined New York's similar scheme, "the public interest lies with enforcing the guarantees enshrined in the Constitution and federal anti-discrimination laws."

Dr. A, 2021 WL 4734404, at *10. Indeed, "[p]roper application of the Constitution . . . serves the public interest[because] it is always in the public interest to prevent a violation of a party's constitutional rights." *Dahl*, 2021 WL 4618519, at *6 (emphasis added).

This Court has held that there is a "vital public interest in safeguarding religious freedoms protected by the Constitution and by statutes enacted by Congress." *Roman Cath. Archbishop of Wash*, 2021 WL 1146399, at *19 (RFRA protects First Amendment interests); *see also Tyndale House Publishers v. Sebelius*, 904 F. Supp. 2d 106, 130 (D.D.C. 2012) ("[T]here is undoubtedly also a public interest in ensuring that the rights secured under . . . RFRA, are protected."); *O Centro v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) (en banc), aff'd 546 U.S. 418 (2006) ("[T]here is a strong public interest in the free exercise of religion."). Binding precedent cannot be clearer: "**[e]nforcement of an unconstitutional [order] is <u>always</u> contrary to the public interest.**" *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("In First Amendment cases, the likelihood of success will often be the determinative factor." (emphasis added).

As such, there is no comparison between the irreparable injury suffered by Plaintiffs and the non-existent interest Defendants have in enforcing unconstitutional mandates and depriving Plaintiffs of federally required protection of the exercise of their sincerely held religious beliefs. Absent the injunctive relief Plaintiffs request herein, Plaintiffs will suffer irreparable harm as their fundamental rights are trampled and they lose their jobs in the most critical industry pertaining to public health. If Defendants are not enjoined from enforcing the Vaccine mandate, hundreds of thousands of federal workers and military personnel will be forcibly removed from our government and Armed Forces, thrusting our nation into the most vulnerable position it has been in for a quarter-millennium. Allowing Defendants to continue enforcing the Vaccine Mandate that was

issued to save lives will only cause more lives to be lost, or at the very minimum, subjected to dangers far greater than COVID-19. ***To do so would be unfathomable.***

## CONCLUSION

For the foregoing reasons, the Court should enter a TRO and grant Plaintiffs' request for a preliminary injunction immediately.

Dated: November 3, 2021.

                Respectfully submitted,

By: /S/ MICHAEL A. YODER
     Michael A. Yoder [1600519]
     THE LAW OFFICE OF MICHAEL A. YODER, PLLC
     2300 Wilson Blvd., Suite 700
     Arlington, VA 22202
     Tel: (571) 234-5594
     Fax: (571) 327-5554
     michael@yoderesq.com

*Counsel for Plaintiff*