**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN CHURCH, *et al.* | |
| *Plaintiffs,* | |
| v. | Civil Action No.: 1:21-cv-2815 (CKK) |
| JOSEPH R. BIDEN, *et al.* | ORAL ARGUMENT REQUESTED |
| *Defendants.* | |

**PLAINTIFFS'[1] MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'[2] MOTION TO DISMISS**

---

[1] Steven Church, Lesley Church, Alma Gonzalez, Dynika Barnwell, Doug Czerwinski, Jason Coffey, Joshua Schmidt, Melina Royer, Tamika Walls, Jaime Espitia, Somer Stephens, Alex Berne, Alan Camp, Stephanie Perrotta, Christopher Axtell, Grace Brown, Kristofor Hallfrisch, Dorothy Morgan, Andrew Soto and Christopher Hall (collectively, "Plaintiffs").

[2] Joseph R. Biden, *in his official capacity as President of the United States,* Lloyd J. Austin III, *in his official capacity as Secretary of Defense,* Antony J. Blinken, *in his official capacity as Secretary of State,* Janet Yellen, *in her official capacity as Secretary of Treasury,* Lloyd Austin, *in his official capacity as Secretary of Defense,* Merrick B. Garland *in his official capacity as United States Attorney General,* Debra Ann Haaland *in her official capacity as Secretary of Interior,* Thomas J. Vilsack, *in his official capacity as Secretary of Agriculture,* Gina M. Raimondo, *in her official capacity as Secretary of Commerce,* Martin J. Walsh, *in his official capacity as Secretary of Labor,* Xavier Becerra, *in his official capacity as Secretary of Health and Human Services,* Marcia L. Fudge, *in his official capacity as Secretary of Housing and Urban Development,* Peter Buttigieg *in his official capacity as Secretary of Transportation,* Jennifer Granholm, *in her official capacity as Secretary of Energy,* Miguel Cardona, *in his official capacity as Secretary of Education,* Denis McDonough, *in his official capacity as Secretary of Veterans Affairs,* Alejandro Mayorkas, *in his official capacity as Secretary of Homeland Security,* Clarence W. Nelson II, *in his official capacity as Administrator of the National Aeronautics and Space Administration,* Kilolo Kijakazi, *in her official capacity as Acting Commissioner of the Social Security Administration,* and Robin Carnahan, *in her official capacity as Administrator of General Services Administration* (collectively, the "United States", "government", or "Defendants").

# TABLE OF CONTENTS

DESCRIPTION PAGE

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

STANDARD OF REVIEW ............................................................................................. 5

ARGUMENT ................................................................................................................... 6

I.      THE CIVILIAN PLAINTIFFS' CLAIMS ARE JUSTICIABLE ..................................... 6

        A.      THE CIVILIAN PLAINTIFFS' CLAIMS ARE CONSTITUTIONALLY RIPE ...................... 7

        B.      THE CIVILIAN PLAINTIFFS' CLAIMS ARE PRUDENTIALLY RIPE ............................. 9

II.     THE SERVICE MEMBER PLAINTIFFS' CLAIMS ARE JUSTICIABLE ................. 12

        A.  OFFERING EXEMPTIONS BUT CATEGORICALLY DENYING THEM IS BAD FAITH .......... 15

        B.  THE "REMEDIES" DEFENDANTS CITE ARE NOT ACTUAL REMEDIES ........................... 16

III.    PLAINTIFFS' CLAIMS ARE WELL-PLED ................................................................. 18

        A.  PLAINTIFFS' FREE EXERCISE AND RFRA CLAIMS ARE WELL-PLED ......................... 18

                i.   Plaintiffs' Religious Beliefs are Sincerely Held ............................................ 19

                ii.  But-For the Use of Fetal Cell Lines, the Vaccines Would Not Exist ............ 19

                iii. The Mandates Substantially Burden Plaintiffs' Sincere Religious Beliefs ... 20

IV.     THE VACCINE MANDATES FAIL TO SURVIVIE STRICT SCRUTINY ............... 22

        A.  THE VACCINE MANDATES DOES NOT SERVE A COMPELLING INTEREST .................... 22

        B.  THE VACCINE MANDATES ARE NOT NARROWLY TAILORED ...................................... 23

CONCLUSION ............................................................................................................... 24

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

*Adkins v. Rumsfeld*,
389 F.Supp.2d 579 (2005) ......................................................... 15

*Am. Petrol. Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) ..................................................... 6

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ............................................................. 5, 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................. 5

*Bd. of Regents v. Roth*,
408 U.S. 564 (1972) .................................................................. 7

*Bois v. Marsh*,
801 F.2d 462 (D.C. Cir. 1986) .................................................... 12

*Bowen v. Roy*,
476 U.S. 693 (1986) ................................................................ 16

*BST Holdings, L.L.C. v. OSHA*,
17 F. 4th 604 (5th Cir. 2021) ............................................... 3, 6-7, 18

*Burson v. Freeman*,
504 U.S. 191 (1992) ................................................................ 22

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ............................................................ 17-20

*Carlson v. Schlesinger*,
511F. 2d 1327 (D.C. Cir. 1975) .................................................. 15

*Chappell v. Wallace*,
462 U.S. 296 (1983) ................................................................ 15

*Cheney v. U.S. Dist. Court*,
542 U.S. 367 (2004) .................................................................. 9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ................................................................ 16

*City of Boerne v. Flores*,
521 US. 507 (1997) ................................................................. 22

*Common Cause v. Trump*,
506 F. Supp. 3d. 39 (D.D.C. 2020) ............................................................... 9

*Conley v. Gibson*,
355 U.S. 41 (1957) ....................................................................................... 5

*Eagle–Picher Indus. v. EPA*,
759 F.2d 905 (D.C. Cir. 1985) ..................................................................... 10

*Edenfield v. Fane*,
507 U.S. 761 (1993) ..................................................................................... 21

*Elrod v. Burns*,
427 U.S. 347 (1976) ..................................................................................... 20

*Emp. Div. Dep't of Hum. Res. of Oregon v. Smith*,
494 U.S. 872 (1990) ..................................................................................... 20

*Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ....................................................................................... 7

*Erickson v. Pardus*,
551 U.S. 89 (2007) ....................................................................................... 5

*Espinoza v. Mont. Dep't of Revenue*,
140 S. Ct. 2246 (2020) ................................................................................. 16

*Feds for Medical Freedom v. Biden*,
2022 WL 188329 (S.D. Tex. Jan. 21, 2022) ................................... 2, 3, 6-8

*Greer v. Spock*,
424 U.S. 828 (1976) ..................................................................................... 15

*Hernandez v. Comm'r*,
490 U.S. 680 (1989) ..................................................................................... 19

*Hodges v. Callaway*,
499 F.2d 417 (5th Cir. 1974) ....................................................................... 14

*In Re: MCP No. 165, Occupational Safety and Health Administration*,
No. 21A243 (U.S. Dec. 30, 2021) ............................................................... 10

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018) ................................................................................. 20

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ..................................................................... 5

*Landmark Commc'ns, Inc. v. Maine,*
435 U.S. 829 (1978)..................................................................................21

*McCormick v. District of Columbia,*
899 F. Sup.2d 59 (D.D.C. 2012) ................................................................7

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
523 U.S. 726 (1998)....................................................................................9

*Public Serv. Comm'n v. Wycoff Co.,*
344 U.S. 237 (1952)....................................................................................9

*Roman Catholic Archbishop of Washington v. Bowser,*
2021 WL 1146399 (D.D.C. Mar. 25, 2021)..............................................20

*Tandon v. Newsom,*
141 S. Ct. 1294 (2021)..............................................................................22

*Turner Broad. Sys., Inc. v. FCC,*
512 U.S. 622 (1994)..................................................................................21

*U.S. Navy SEALs v. Bide*n,
Civil Action No. 4:21-cv-01236-O (Jan. 3, 2022) ...................................15

*Venetian Casino Resort, L.L.C. v. EEOC,*
409 F.3d 359 (D.C. Cir. 2005) .................................................................10

*Washington v. Harper,*
494 U.S. 210 (1990)..................................................................................20

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982)....................................................................................9

*Wyo. Outdoor Council v. U.S. Forest Serv.,*
165 F.3d 43 (D.C. Cir. 1999) .....................................................................9

*Warren*, The Bill of Rights and the Military,
37 N.Y.U. L. Rev. 181 (1962) ..................................................................15

**OTHER**                                                **PAGE**

U.S. Const. amend. I ..................................................................................16

MCO 5800.16 .................................................................................4, 12, 14

# INTRODUCTION

It is no secret that "[President] Biden wants to inoculate as many people as possible."[1] Nor is it a secret that this Administration has attempted everything possible to circumvent the constitutional protections afforded to our federal workforce and active-duty service members. Plaintiffs submitted requests for religious accommodations more than four months ago, yet despite their well-established fundamental right to freely exercise their religion and the ease with which their requests can be reviewed and approved, Defendants have refused to do so. Instead, Defendants have engaged in a litany of tactics intended to undermine Plaintiffs' constitutional rights and pressure them into violating their sincerely held religious beliefs. Perhaps worst of all, Defendants have leveraged and continue to leverage Plaintiffs' employment against them as a means to coerce them into ***injecting a "vaccine" into their bodies in violation of their rights and against their will.***

There is no rationale – or science – to support a mandatory COVID-19 vaccination policy. Cases are down, fatalities are at an all-time low, natural immunity is at an all-time high, and dozens of greater threats to public safety than COVID-19 presently exist, including the current conflict in Europe. To discharge members from our federal workforce and Armed Forces because of their sincerely held religious beliefs is not only unlawful, but nonsensical. It is obvious that the vaccines bear absolutely no weight on "military readiness" but even if they did, Defendants have undercut their own argument by granting over 700 medical exemptions.

In short, Defendants ask this Court to force federal workers to lose their jobs and compel active-duty Marines to be discharged *before* they may challenge the unlawful policies with which their sincerely held religious beliefs prohibit compliance. Absent a valid religious accommodation,

---

[1] James O'Keefe III (@jamesokeefeiii), INSTAGRAM, https://www.instagram.com/jamesokeefeiii (last visited Feb. 25, 2022).

Defendants consider the failure to be inoculated non-compliance with a lawful mandate (or order) and as a result, Plaintiffs may be disciplined, terminated or separated. Not only does this vitiate every notion of practical jurisprudence; it runs contrary to well-established law. For these reasons and the forthcoming argument, the Court should deny Defendants' motion to dismiss.

## FACTUAL BACKGROUND

Addressing a topic that needs no introduction, the Supreme Court held **"even in a pandemic, the Constitution cannot be put away and forgotten."** *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added).

On August 24, 2021, the Secretary of the United States Department of Defense, Defendant Lloyd J. Austin, III, issued a mandate ("DoD Order") for all service members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve to receive a COVID-19 vaccine. V. Compl. ¶ 46. Specifically, the DoD Order states, "The Military Departments should use existing policies and procedures to manage mandatory vaccination of Service members to the extent practicable." Sec. Austin, *Memorandum for Senior Pentagon Leadership Commanders of the Combatant Commands Defense Agency and DoD Field Activity Directors*, (Aug. 24, 2021).

On September 9, 2021, President Biden issued Executive Order 14043 requiring On September 9, 2021, President Biden signed Executive Order No. 140430 which *inter alia* ordered all agencies to implement a program "requiring COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." (collectively, "vaccine mandates"). V. Compl. ¶ 47.

On January 21, 2022, a nationwide injunction was entered against the enforcement of Executive Order 14043. *See Feds for Medical Freedom v. Biden*, --- F. Supp. 3d. ----, 2022 WL

188329 at *8 (S.D. Tex. Jan. 21, 2022) (preliminary injunction granted). While the vaccine mandate is currently unenforceable, a decision has not yet been entered as to whether Executive Order 14043 is constitutional, either on its face or as applied. *Id.*

On October 24, 2021, Plaintiffs comprised of federal workers and active-duty Marines filed this action challenging both, the facial and as-applied constitutionality of the vaccine mandates. V. Compl. ¶¶ 1, 77(C). Defendants have moved to dismiss this action on the basis that the Civilian Plaintiffs' claims are unripe as they are presently not subject to Executive Order 14043 and the Service Member Plaintiffs' claims are unripe because they have failed to exhaust intra-military remedies. Mot. Dismiss at 8. Defendants also seek dismissal pursuant to Rule 12(b)(6). *Id.* at 7.

Plaintiffs voluntarily dismiss their FDCA and Equal Protection claims and oppose Defendants' motion on the following grounds:

1.      The Civilian Plaintiffs' facial challenge to the constitutionality of Executive Order 14043 is not vitiated by virtue of exercising their fundamental right to the free exercise of religion. In other words, Plaintiffs need not seek a religious accommodation for an unlawful order that requires them to choose between "their job(s) and their jab(s)", *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)). "[D]enying plaintiffs the ability to challenge the mandate pre-enforcement, in district court, is to deny them meaningful review." *Feds for Medical Freedom v. Biden*, --- F. Supp. 3d. ----, 2022 WL 188329 at *7 (S.D. Tex. Jan. 21, 2022).

2.      Even assuming *arguendo* Executive Order 14043 is constitutional on its face, Defendants enforcement of the vaccine mandate is unconstitutional as it violates – or at a minimum, is guaranteed to imminently violate – at least some of the Civilian Plaintiffs' fundamental right to the free exercise of religion. *Feds for Medical Freedom*, 2022 WL 188329 at *8. If Defendants were going to grant the Civilian Plaintiffs' religious accommodation requests,

3

they would have done so by now. Their requests have been pending for approximately *four months* and Defendants have no justification for this objectively unreasonable delay.

3.     The Service Member Plaintiffs lodge an as-applied challenge to the constitutionality of the DoD Order in that, despite purporting to provide for exemptions as required by law, Secretary Austin has failed to *actually provide* religious accommodations to the vaccine mandate as required by the Free Exercise Clause of the First Amendment, the Religious Freedom Restoration Act, 42 U.S.C. 2000bb to 2000bb-4, ("RFRA"), the Equal Protection Clause of the Fifth Amendment to the United States Constitution. Plaintiffs Soto and Hall both have sincerely held religious beliefs and they are entitled to a religious accommodation as a matter of law.

4.     The Service Member Plaintiffs claims are ripe because Plaintiffs have exhausted all intra-military remedies available based on the Marine Corps' own established accommodation policy outlined in Marine Corps Order ("MCO") 1730.9: both Plaintiff Soto and Plaintiff Hall submitted religious accommodation requests. Their requests were denied, they submitted subsequent appeals and both Plaintiffs appeals were denied. There is no further intra-military remedy available, again according to the Marine Corp's own established policy. *See* MCO 1730.9. Defendants erroneously assert that a Board of Inquiry hearing is an intra-military remedy.[2] During the Board of Inquiry process, an officer is permitted to "submit written matters for consideration to argue he should not be discharged." However, that is only after a Board has been ordered, which requires that the Marine officer be suspected of some offense, failure to execute duties, or other condition incompatible for military service that could be punishable at a courts-martial if that

---

[2] A Board of Inquiry is an administrative process for terminating an officer's service, entirely separate and distinct from the religious accommodation process. A Board of Inquiry is ordered and convened when a Marine officer is suspected of misconduct, substandard performance, or some other condition that is not compatible with further military service. It is akin to a termination proceeding, but with much more potential for egregious and consequential results as the Board my result not just in terminating the officer's service, but also in characterizing that officer's service in a less than honorable way which effects benefits and possibilities for future employment.

individual was charged. Submitting materials in your own defense, during a termination proceeding that is *already ongoing* is hardly a "remedy" for a denied religious accommodation or appeal. *See* MCO 5800.16.

## STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the court "may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981); *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947); *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987); *Wilderness Soc'y v. Griles*, 824 F.2d 4, 16–17 n. 10 (D.C. Cir. 1987).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), Courts "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff need only include "a short and plain statement of the claim showing that the pleader is entitled to relief,' which provides 'the defendant fair notice of . . . the claim and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Pardus*, 551 U.S. at 93-94.  "[D]etailed factual allegations" are not necessary, *Twombly*, 550 U.S. at 555, so long as the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Id*; (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [Plaintiffs] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**ARGUMENT**

## I.  <u>THE CIVILIAN PLAINTIFFS' CLAIMS ARE JUSTICIABLE.</u>

Defendants rely upon a months-old record devoid of outcome-determinative facts to argue that the Court should dismiss the Civilian Plaintiffs' claims for lack of justiciability. Fed. R. Civ. P. 12(b)(1); Mot. Dismiss at 1. Specifically, Defendants assert that the "[Civilian] Plaintiffs' claims are unripe . . . [b]ecause Defendants may except Plaintiffs from the vaccination requirement" and "the essential facts have not changed" since the Court denied Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction on November 8, 2021.  Mot. Dismiss at 8; *see* ECF No. 16 Order Denying Plaintiffs' Emergency Application for Temporary Restraining Order and Motion for Preliminary Injunction ("Mem. Op.") at 1, 8 (Nov. 8, 2022). But Defendants' argument is without merit.

*First*, the standard for surviving a Rule 12 motion to dismiss is far less than the standard for obtaining a temporary restraining order or preliminary injunction. Here, Plaintiffs need only establish that they face harm that is "actual and imminent", *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009), and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting. *Twombly*, 550 U.S. at 570).

*Second*, the factual record at present is far more developed than it was at the time this Court denied Plaintiffs' motion for preliminary injunctive relief more than three (3) months ago. Specifically, federal workers have obtained a nationwide injunction against the enforcement of Executive Order 14043 on January 21, 2022. *Feds for Medical Freedom v. Biden*, 2022 WL 188329 at *8. In *Feds for Medical Freedom*, the Court found that federal worker Plaintiffs had ripe claims because they were subjected to the Hobson's choice between "their job(s) and their jab(s)", *id.* at 7 (citing *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)), and

"deny[ing] plaintiffs the ability to challenge the mandate pre-enforcement, in district court, is to deny them meaningful review." *Feds for Medical Freedom*, 2022 WL 188329 at *7.

### A.   THE CIVILIAN PLAINTIFFS' CLAIMS ARE CONSTITUTIONALLY RIPE.

To determine whether the Civilian Plaintiffs' claims are constitutionally ripe, the relevant inquiry is whether they have "established an injury-in-fact that is imminent or certainly impending." *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). In their Complaint, the Civilian Plaintiffs allege "the Vaccine Mandate, **both on its face and as applied by Defendants**, is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from federal employees . . .". V. Compl.  p. 77 ¶C. Specifically, the Civilian Plaintiffs allege that Executive Order 14043 violates *inter alia* their fundamental rights to (1) pursue the careers of their choosing; or (2) remain free from the unwanted injection of a medication, such as a vaccine, into their nonconsenting bodies. V. Compl. ¶132 (citing *McCormick v. District of Columbia*, 899 F. Sup.2d 59, 65 (D.D.C. 2012); *Bd. of Regents v. Roth*, 408 U.S. 564, 572–73 (1972) (holding the right to earn a living or pursue a chosen career is a fundamental right); *Washington v. Harper*, 494 U.S. 210, 229 (1990) ("Forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty."))).

It is not subject to reasonable dispute that each of the Civilian Plaintiffs are subject to the vaccine mandate[3] and the Hobson's choice between "their job(s) and their jab(s)", and that this ultimatum constitutes "an irreparable injury." *Feds for Medical Freedom*, 2022 WL 188329 at *4; *OSHA*, 17 F.4th at 618. The mere fact that the Civilian Plaintiffs' sincerely held religious beliefs prohibit their compliance with the vaccine mandate does not vitiate their standing to challenge the constitutionality of the mandate on its face. A "fundamental right" is "a right derived from natural

---

[3] While enforcement of Executive Order 14043 has been enjoined, the Court has not decided "the ultimate issue of whether the federal-worker mandate is lawful." *Feds for Medical Freedom*, 2022 WL 188329 at *4.

or fundamental law." *Black's Law Dictionary* (11th ed. 2019). It does not require or demand any condition precedent to avail oneself of its protection, and that includes the exercise of another fundamental right such as the free exercise of religion.

"Requiring the plaintiffs to wait to be fired to challenge the mandate would compel them to 'to bet the farm by taking the violative action before testing the validity of the law'." *Feds for Medical Freedom*, 2022 WL 188329 at *7 (citing *Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010) (cleaned up)). The Fifth Circuit has already held forcing workers to choose between "job(s) and their jab(s)" is an irreparable injury. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). The same logic applies here.

Defendants contend Plaintiffs are not subject to enforcement of Executive Order 14043 because their religious accommodation requests are pending. Mot. Dismiss at 8. But this argument inherently contradicts the very notion of what makes a right "fundamental." The coincidence that Plaintiffs just so happen to hold sincere religious beliefs that afford a constitutional protection against the enforcement of a facially unconstitutional order does not preclude Plaintiffs from challenging the constitutionality of the underlying vaccine mandate. As such, the only remaining inquiry is whether the Civilian Plaintiffs face "actual and imminent" harm if Executive Order 14043 is enforced. The answer to this question is yes, and in fact, it has already been decided.

There is overwhelming evidence that failure to succumb to the vaccine mandate will result in adverse employment action. As a result of their sincerely held religious beliefs, multiple Plaintiffs have been subjected to hostility in the workplace. Plfs.' Decl. ¶¶ 3-4, 7; *see* Ex. 1-2. They are treated differently than they were prior to when the vaccine mandate came into effect. *Id.*

They have been subjected to testing policies simply because of their religious beliefs while other employees who do not share the same religious beliefs are exempt from such policies. *Id.*

Some Plaintiffs are forced to wear a mask and socially distance because they are unvaccinated. *Id.* Meanwhile, **vaccinated co-workers, <u>who also risk contraction and transmission of COVID</u>**, are not subject to the same policies. *Id.* These mandatory testing policies target Plaintiffs because of their sincerely held religious beliefs and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). It is not subject to reasonable dispute that discrimination based on your religious beliefs undoubtedly violates the First Amendment. *See, e.g.*, *Roman Catholic Archbishop of Washington v. Bowser*, 20-cv-03625 2021 WL 1146399 (D.D.C. Mar. 25, 2021).

"To deny the plaintiffs the ability to challenge the mandate pre-enforcement, in district court, is to deny them meaningful review", *Feds for Medical Freedom*, 2022 WL 188329 at *7, and "[n]o legal remedy adequately protects the liberty interests of employees who must choose between . . . consenting to an unwanted medical procedure that cannot be undone" and maintaining their jobs. *Id.* at *4. As such, and based on the adverse employment action including harassment, hostility in the workplace, and arbitrary, retaliatory testing practices that amount to actual harm that *has already occurred*, Plaintiffs claims are constitutionally ripe.

### B. THE CIVILIAN PLAINTIFFS' CLAIMS ARE PRUDENTIALLY RIPE.

"[P]rudential ripeness reflects the inherently discretionary nature of the governing injunctive, declaratory, or mandamus remedies. *Common Cause v. Trump*, 506 F. Supp. 3d 39, 45 (D.D.C. 2020); *see, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–13 (1982) (injunctions); *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952) (declaratory judgments); *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004) (mandamus writs). Prudential ripeness "balances the fitness of the issues for judicial decision against the hardship to

the parties of withholding court consideration." *Trump*, 506 F. Supp. 3d. at 45 (internal quotation marks omitted).

In applying this balance, the Supreme Court has held that courts "must consider" three factors: (1) whether judicial intervention would inappropriately interfere with further administrative action; (2) whether the courts would benefit from further factual development of the issues presented; and (3) whether delayed review would cause hardship to the plaintiffs." *Id.*; *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48–49 (D.C. Cir. 1999) (quoting *Ohio Forestry Ass'n*, 523 U.S. at 733, 118 S. Ct. 1665).

As to the first two factors – judicial intervention and factual development of the issues – FDA Executive Officer Christopher Cole's statement best summarizes the current state as it pertains to COVID-19 vaccines: "[President] Biden wants to inoculate as many people as possible."[4] The issues are fully developed and the intent of this Administration to vaccinate persons, including federal workers such as Plaintiffs with non-FDA approved COVID-19 vaccines has not waivered. Courts in this district "must balance the plaintiff's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359, 364 (D.C. Cir. 2005); *see also Eagle–Picher Indus. v. EPA,* 759 F.2d 905, 915 (D.C. Cir. 1985). The policy set forth in Executive Order 14043 is crystallized; get vaccinated or lose your job.

To the extent Defendants argue Plaintiffs may be exempt from the vaccine mandate in light of their religious accommodation requests, the government's refusal to grant the Civilian Plaintiffs

---

[4] James O'Keefe III (@jamesokeefeiii), INSTAGRAM, https://www.instagram.com/jamesokeefeiii (last visited Feb. 20, 2022).

their accommodation requests speaks volumes. Plaintiffs submitted their requests for religious accommodations as early as September 24, 2021, and at the latest, by October 14, 2021. V. Compl. ¶¶ 60-77. Yet despite having more than four months to respond to these requests, Defendants have disregarded the accommodation requests and have expressed they have no intent on reviewing the requests, either.  Plfs.' Decl. ¶¶ 6; *see* Exhibits 1-2.

As to the last factor, it is uncontroverted that further delay in judicial review will harm plaintiffs. Plaintiffs have suffered and continue to suffer discriminatory treatment because of their religious beliefs. It is not subject to dispute that vaccinated persons can contract and transmit COVID-19. Even the CEO of BioNTech has conceded the same, stating "even triple-vaccinated people can transmit the disease, and they will have to be tested, especially around vulnerable people." Jacki Salo, *BioNTech CEO says vaccines not enough alone to fight omicron*, NEW YORK POST, (Dec. 21, 2021) (last accessed Feb. 25, 2022). To the contrary, those who have natural immunity, including Plaintiffs, pose virtually no threat to anyone. V. Compl. ¶ 152. Natural immunity is ***twenty-seven times (27x)*** more effective in preventing the contraction of COVID-19 than two injections of the Pfizer vaccine. Nathan Jeffay, *Study: COVID recovery gave Israelis longer-lasting Delta defense than vaccines*, THE TIMES OF ISRAEL (Sept. 2, 2021).

Although the military has utilized vaccinations in the past, no vaccine has ever involved the complex and controversial medical, scientific, religious, sociological, and religious issues triggered by the COVID-19 vaccines. Nor has any previous vaccine has involved such serious and divisive questions as to the vaccine's origin, its effectiveness, or its likelihood to produce adverse reactions, and none has engendered the serious religious and other objections that have arisen from the COVID vaccines.

Yet because of Plaintiffs sincerely held religious beliefs, Defendants have subjected them to discriminatory testing policies, masking rules, and social distancing mandates. Plfs.' Decl. ¶ 7; *see* Exhibits 1-2. This arbitrary and frivolous tactic is intended to single the Civilian Plaintiffs out amongst their colleagues and to signal that they are not vaccinated. This is undoubtedly "actual and imminent" harm and refusing to hear the case now only subjects Plaintiffs to further, continued injury.

## II.  <u>THE SERVICE MEMBER PLAINTIFFS' CLAIMS ARE JUSTICIABLE</u>.

To date, more than 16,000 religious accommodation requests have been submitted yet just fifteen (15) requests have been granted. Oren Liberman, *US military has approved religious exemptions to vaccine mandate for 15 service members out of 16,000 requests*, CNN POLITICS (Feb. 17, 2022) (last visited Feb. 25, 2022). The likelihood that any service members' accommodation request is approved is just 0.09375%; *id.*, nevertheless, Defendants argue that Plaintiff Soto and Plaintiff Hall – *both of whom have already had their accommodation requests and subsequent appeals denied* – are not entitled to relief because they "may continue to avail [themselves] of administrative remedies within the military." Mot. Dismiss at 10. This assertion is incorrect.

Both Plaintiffs Soto and Hall have exhausted all administrative remedies available. They submitted religious accommodation requests which were denied and thereafter, they submitted appeals which were also denied.  Mot. Dismiss at 8; ECF No. 26, Notice of Denial of Religious Accommodation Request (Feb. 15, 2022). There are no further intra-military remedies available according to Defendants' own established policies and procedures. *See* MCO 1730.9. This Marines Corps order establishes the exact process by which Plaintiffs may request a religious accommodation.  "When the military is given unlimited discretion by Congress, it is nevertheless

bound to follow its own procedural regulations if it chooses to implement some." *Bond v. U.S.*, 47 Fed Cl. 641, 648 (2000).  In this case, the Marine Corps has clearly established the process by which Plaintiffs and similarly situated Marines may request a religious accommodation and appeal a denied request.  MCO 1730.9 clearly establishes the extent of that process and Plaintiffs have followed and exhausted that process.  Defendants must now be held to the process they themselves established for this purpose. It is unequivocally clear: Defendants assertion that a Board of Inquiry hearing is an intra-military remedy is patently false.

A Board of Inquiry is far from a remedy in any circumstance.  A Board of Inquiry is the military equivalent of a heightened termination process.  A Board of Inquiry is convened with the intent of terminating a Marine officer's service prematurely, due to suspected misconduct, failure to execute duties, or some other circumstances rendering that officer no longer compatible with continued military service.  It not only can result in a termination of the officer's commission but can also result in a general or other than honorable characterization of service which results in a loss of veteran's benefits and impacts future employment options.  While a Board of Inquiry is considered an administrative and not punitive process, in all practicality it is a punishment for suspected wrongdoing, NOT a venue for remedy.  And an officer can only "submit written matters for consideration to argue he should not be discharged" after a Board has already been ordered and is in progress. *See* MCO 5800.16. That is hardly a "remedy", especially when the lawfulness of that order (or its application) is the quintessential issue in this case.

But order to "submit written matters for consideration to argue he should not be discharged", Plaintiffs must first be charged with failing to obey a lawful order. *See* MCO 5800.16. That is hardly a "remedy", especially when the lawfulness of that order (or its application) is the quintessential issue in this case.

Even assuming *arguendo* the Court finds that being subjected to a Board of Inquiry on the basis of misconduct, failure to execute duties, or some other circumstance rendering continued service impossible somehow constitutes an intra-military remedy, the Court noted in its November 8 Order, "certain exceptions to the exhaustion doctrine apply", among which include *inter alia* the futility exception. Mem. Op. at 23 (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)). There is perhaps no greater example of a factual circumstance than the facts of this case that embody the futility exception.

The Service Member Plaintiffs have been "notified that [they] [are] being processed for administrative separation from the Marines Corps" after their initial religious accommodation request *and* subsequent appeals had been denied. Mot. Dismiss at 8, 10; *see also* ECF No. 26 ECF No. 26, Notice of Denial of Religious Accommodation Request (Feb. 15, 2022). There is no dispute that the Service Member Plaintiffs will be discharged from the Marines Corps – not a single service member in the Marine Corps – or any other branch – has ever received an approved religious accommodation after his or her request and subsequent appeal were both denied. This certainly amounts to "actual and imminent" harm.

The Marine Corps' notification of the Board of Inquiry itself evidences that the Marine Corps believes the Service Member Plaintiffs is no longer fit for continued service and his commission should be terminated because of his religious beliefs. It is a complete farce that Defendants would argue that in sending the Service Member Plaintiffs to Board of Inquiry's to attempt to retain his commission when the only reason Defendants would have the Service Member Plaintiffs attend a BOI is to effectuate the *discharge* of Plaintiffs Soto and Hall.  The Board of Inquiry would not be ordered, per the Marine Corps' own policies, unless (1) all intra-

service remedies were already exhausted and (2) thereafter, the Marine Corps still deemed the Service Member Plaintiffs unfit for continued service.

A.      OFFERING EXEMPTIONS BUT CATEGORICALLY DENYING THEM IS BAD FAITH.

"Plaintiff Hall may continue to avail himself of administrative remedies within the military." *Id.* This argument is untrue and lodged in bad faith. Plaintiff Hall does not have any remaining "administrative remedies" available. The Navy[5] and other branches of the Armed Forces have established forms and policies for the granting of religious exemptions from the vaccination requirement. But these "forms and policies" are nothing more than theater. At least 3,595 Marines have submitted religious accommodations and just only 6 were approved. Oren Liberman, *US military has approved religious exemptions to vaccine mandate for 15 service members out of 16,000 requests*, CNN POLITICS (Feb. 17, 2022) (last visited Feb. 25, 2022). To the contrary, at least 640 Marines have been separated from the service for refusing the COVID-19 vaccine, including Marines whose accommodation requests have been denied. *Id.*

It is wrong to deny exemptions to those who have sincere religious objections to vaccination. But to offer religious exemptions and create forms and procedures to apply for and process exemption requests, and then routinely deny all exemption requests, is more than wrong– it is duplicitous and evidence of bad faith. Defendants may take the position that they cannot grant any exemptions because of military necessity, but this argument is wholly undermined by the fact that Defendants have granted medical exemptions from the vaccination. In fact, as of February 3, 2022, the Marines Corps has granted at least 732 medical exemptions. Heather Mongilio, *Marine COVID-19 Vaccination Separations Pass 500*, USNI NEWS (Feb 10, 2022) (last visited Feb. 25, 2022).

---

[5] The Secretary of the Navy oversees the Marines Corps.

There appears to be no reason the military must deny religious exemptions but may grant medical exemptions. There appears to be no reason why granting religious exemptions would pose a danger to the overall health and fitness of military personnel but granting medical and administrative exemptions would pose no such danger. By granting medical exemptions, Defendants have in effect forfeited any argument that they must deny all exemptions for the health and safety of military personnel.

### B.   THE "REMEDIES" DEFENDANTS CITE ARE NOT ACTUAL REMEDIES.

Defendants' assertion that the Service Member Plaintiffs may "submit written matters for consideration to argue he should not be discharged" does not pertain to an intra-military remedy; rather, it pertains to a quasi-military trial whereas the Service Member Plaintiffs must first defend themselves in a process established for the purpose of ending their commission and thus, their service, prematurely. *See* MCO 5800.16. Accordingly, in order to "submit written matters for consideration" the Service Member Plaintiffs must first be accused of committing offense(s) and/or engaging in officer misconduct or failing to execute their duties *before* they would be entitled to a Board of Inquiry ("BOI") review hearing. The "offense" Plaintiff Hall would be required to commit in order to avail himself of this BOI hearing would be the refusal to comply with a lawful order – but the question of whether Secretary Austin's August 24 order is lawful remains undecided and that is the basis of this action.

Plaintiffs need not exhaust military remedies "when resort to the administrative reviewing body would be futile." *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). Rather, Plaintiffs Hall and Soto are merely required to exhaust only those remedies that would "provide a real opportunity for adequate relief." *Id*. For example, exhaustion is "obviously" futile when the administrative body does not have the authority to grant the relief sought. *Id*. at 420–21. In such a

situation, (e.g., requiring Plaintiff Hall to participate in a BOI hearing) military relief is a legal impossibility. Indeed, for the military to find its own Secretary's order unlawful is undoubtedly impossible. Similarly, exhaustion may be futile when military relief will not "obviate the need for judicial review." *Id*. at 423. While that "is not usually a reason for bypassing" the exhaustion requirement, *id*., the record all but compels the conclusion that the military process will deny relief and therefore, "exhaustion is inapposite and unnecessary." *Id*. at 420. Such is the case here, and Plaintiff Hall is entitled to judicial review of whether (1) Secretary Austin's August 24 order is lawful and (2) if so, whether the manner the order has been enforced unconstitutionally deprives Plaintiff Hall of his First Amendment rights. The answer to the first question is yes – but even assuming *arguendo* the Court finds Secretary Austin's order is lawful, there is no dispute that denying Plaintiff Hall of his fundamental right to the free exercise of religion is unconstitutional.

Members of the United States military, including Plaintiff and Plaintiff Soto, are entitled to the same fundamental liberties as the Civilian Plaintiffs, including the rights provided under the First Amendment to the United States Constitution, which states:

> Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

While "[t]he military enclave is kept free of partisan influence, . . . individual servicemen are not isolated from participation as citizens in our democratic process." *Greer v. Spock*, 424 U.S. 828, (1976). The Supreme Court has unanimously held that "citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes*." Chappell v. Wallace*, 462 U.S. 296, 304, (1983) (quoting *Warren*, The Bill of Rights and the Military, 37 N.Y.U. L. Rev. 181, 188 [1962]); *See also Adkins v. Rumsfeld*, 389 F.Supp.2d 579 (2005); *Carlson v. Schlesinger*, 511F. 2d 1327 (D.C. Cir. 1975).

Here, "[t]he denial of each [religious accommodation] request is pre-determined [and] as a result, Plaintiffs need not wait for the Navy to engage in an empty formality." *U.S. Navy SEALs v. Bide*n, Civil Action No. 4:21-cv-01236-O, Order Prelim. Inj. at *7 (Jan. 3, 2022) (referring to exhausting intra-military remedies). Under these circumstances, "exhaustion is futile and will not provide complete relief." *Id.* Accordingly, the Service Member Plaintiffs, or at a minimum, Plaintiff Hall, have ripe claims and are entitled to judicial review.

## III. <u>PLAINTIFFS' CLAIMS ARE WELL-PLED</u>.

Plaintiffs lodged their Verified Complaint challenging the facial and as-applied constitutionality of Executive Order 14043 and Secretary Austin's August 24 order in violation of the Free Exercise Clause of the First Amendment, the Religious Freedom Restoration Act, 42 U.S.C. 2000bb to 2000bb-4, ("RFRA"), the Equal Protection Clause of the Fifth Amendment to the United States Constitution, and under the Emergency Use Authorization provisions of the Federal Food Drug and Cosmetic Act, 21 U.S.C. 360bbb-3 ("FDCA"). V. Compl. ¶¶ 1, 77(C).

### A.    PLAINTIFFS' FREE EXERCISE AND RFRA CLAIMS ARE WELL-PLED.

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const. amend. I. The first words of the Bill of Rights, known as the Free Exercise Clause, "protect religious observers against unequal treatment" and against "laws that impose special disabilities on the basis of religious status." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2254 (2020). Since 1791, the First Amendment has protected those with sincerely held religious beliefs from government action "that discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). It was "historical instances of religious persecution and intolerance that gave concern to those who drafted the Free

Exercise Clause." *Bowen v. Roy*, 476 U.S. 693, 703 (1986). The gravity of our Founding Fathers'
concern to protect the American people against religious persecution and intolerance has not
dissipated even the slightest. If anything, Congress has *bolstered* the religious freedoms our
Constitution provides.

Congress enacted RFRA "to **provide very broad protection for religious liberty**." *Hobby
Lobby*, 573 U.S. at 693. Under RFRA, a person whose exercise of religion is substantially
burdened by the government "is entitled to an exemption from the rule unless the Government
'demonstrates that application of the burden to the person (1) is in furtherance of a compelling
governmental interest; **and** (2) is the least restrictive means of furthering that compelling
governmental interest.'" *Id*. (quoting 42 U.S.C. § 2000bb-1(b) (emphasis added)).

### i.      Plaintiffs' Religious Beliefs are Sincerely Held

To determine the sincerity of Plaintiffs' religious beliefs, the court's "narrow function is to
determine whether the plaintiffs' asserted religious belief reflects an *honest* conviction." *Hobby
Lobby Stores, Inc.*, 573 U.S. at 686 (emphasis in original). As Christians, Plaintiffs sincerely
believe that abortion is the murder of an innocent life and a grave sin against God and therefore,
Plaintiffs cannot in good faith and morality condone, support, justify, or benefit (directly or
indirectly) from the taking of innocent human life through abortion. V. Compl. ¶75, 81.
Compliance with the Vaccine Mandate would undoubtedly constitute a sin against the Lord. *Id*.

### ii.      But-For the Use of Fetal Cell Lines, the Vaccines Would Not Exist

There is no dispute that all currently available COVID-19 vaccines were either derived
from, produced from, manufactured by, tested on, developed with, or are otherwise connected to
aborted fetal cell lines. *Id*. ¶¶113-129. Of course, it is well-known anti-abortion beliefs are

fundamental to the Christian faith. *Id.* ¶¶81, 87. But even assuming *arguendo* Plaintiffs' honest beliefs differ from the beliefs of a central or systemic faith, the result is the same.

The "exercise of religion" includes "'any exercise of religion, **whether or not compelled by, or central to, a system of religious belief**'." *Hobby Lobby*, 573 U.S. at 696 (emphasis added) (quoting 42 U.S.C. § 2000cc-5(7)(A)). Thus, whether Plaintiffs have articulated a sincerely held religious belief that compels them to abstain from a particular action (*e.g.*, accept a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines derived from procured abortions) is the only relevant inquiry. Undeniably, the Verified Complaint and Plaintiffs' individual religious accommodation requests articulate Plaintiffs sincere religious belief that abortion is the murder of an innocent life and a grave sin against God. V. Compl. ¶75. Because Plaintiffs religious beliefs are sincere, the next step is to determine whether the Vaccine Mandate imposes a "substantial burden" on the exercise of their beliefs. *See Hobby Lobby*, 573 U.S. at 696 (emphasis added) (quoting 42 U.S.C. § 2000cc-5(7)(A)).

### iii.    <u>The Mandates Substantially Burden Their Sincere Religious Beliefs</u>

Plaintiffs must choose between "their job(s) and their jab(s)", *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)), or in other words, choose whether to forego their fundamental right to pursue a career of their choosing in lieu of exercising their fundamental right to refuse the forcible injection of a medication such as a vaccine into their bodies.[6] Unfortunately, this is the exact position into which the Vaccine Mandates have directly and proximately forced

---

[6] Alexandra Limon, *Dept. of Homeland Security warns of counterfeit vaccines for profit from criminal organizations*, BINGHAMTON HOMEPAGE (Dec. 21, 2020) available at: https://www.binghamtonhomepage.com/news/department-of-homeland-security-warns-of-counterfeit-vaccines-for-profit-from-criminal-organizations/ (quoting U.S. Surgeon General Jerome Adams, "A vaccine is a medication"); Pallavi Suyog Uttekar, M.D., *What are the Ages for Vaccines?* MEDICINENET (Mar. 9, 2021) ("A vaccine is a medication that trains the immune system to produce special proteins (antibodies) that fight a specific disease."), available at: https://www.medicinenet.com/what_are_the_ages_for_vaccines/article.htm (last visited Oct. 26, 2021).

Plaintiffs. Whether Plaintiffs avail themselves of another fundamental right is immaterial to this facial challenge.

To determine whether the vaccine mandates impose a substantial burden on Plaintiffs' sincere religious beliefs, "the question that RFRA presents [is] whether the [vaccine] mandate imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with ***their*** religious beliefs." *Hobby Lobby*, 573 U.S. at 724 (emphasis added). "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

In *Hobby Lobby*, the Supreme Court "had little trouble concluding" that requiring a for-profit corporation to provide its employees with health coverage that included contraceptives constituted a substantial burden on the corporation's owner's religious beliefs. *Hobby Lobby*, 573 U.S. at 719.  Whereas the financial burden imposed on a for-profit corporation requiring it to economically contribute to its employee's health coverage constitutes a "substantial burden" on the corporation's owners' religious beliefs, *id.*, it must then be said that the physically invasive burden the Vaccine Mandate imposes on Plaintiffs' sincerely held religious beliefs is at least substantial, and likely, constitutes an even greater burden.

Here, unlike *Hobby Lobby*, however, Defendants have already deprived Plaintiffs of their fundamental right to freely exercise their religion by virtue of refusing to grant their accommodation requests and imposing testing requirements that target Plaintiffs because of their religious beliefs. Plfs.' Decl. ¶ 6; *see* <u>Exhibits 1-2</u>. Defendants will not grant at least some Plaintiffs an accommodation, *id.* ¶7 and the Supreme Court has recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury." *Elrod*, 427 U.S. at 373 (1976). Indeed, just this year this Court has applied *Elrod* in the context of Free Exercise and RFRA claims. *Roman Catholic*, 2021 WL 1146399.

Perhaps there is no greater example of a substantial burden than our federal government placing American citizens who have dutifully served their countries – some, for more than two decades – in a position where they must choose whether they would prefer to be deprived of two fundamental rights. *Hobby Lobby*, 573 U.S. at 719; *McCormick*, 899 F. Sup.2d at 65; *Harper*, 494 U.S. at 229.

## IV.   THE VACCINE MANDATES FAIL TO SURVIVE STRICT SCRUTINY REVIEW.

Burdens on religiously motivated conduct are subject to strict scrutiny under the Free Exercise Clause when a regulation lacks neutrality or general applicability. *Emp. Div. Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990). Such is expressly the case here and therefore the government bears the burden to establish that the Vaccine Mandates are both "justified by a compelling interest . . . ***and*** narrowly tailored to advance that interest." *City of Hialeah*, 508 U.S. at 533–34 (internal quotations omitted). Defendants cannot satisfy this burden.

### A.  THE VACCINE MANDATES DOES NOT SERVE A COMPELLING INTEREST

Where, as here, Plaintiffs' First Amendment rights are at issue because, "the government must shoulder a correspondingly heavier burden and is entitled to considerably less deference in its assessment that a predicted harm justifies a particular impingement on First Amendment rights." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2472 (2018) (emphasis added). Because the Vaccine Mandates, absent the provision of religious accommodations, implicates Plaintiffs' fundamental rights, Defendants "must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994); *see also*

*Edenfield v. Fane*, 507 U.S. 761, 770 (1993). This is so because "[**d]eference to [the government]**

**cannot limit judicial inquiry when First Amendment rights are at stake**." *Landmark*

*Commc'ns, Inc. v. Maine*, 435 U.S. 829, 843 (1978).

While indeed, "[s]temming the spread of COVID–19[7] is unquestionably a compelling

interest," *Roman Catholic Diocese*, 141 S. Ct. at 67, the vaccine mandates do not *serve* this interest.

### B.  THE VACCINE MANDATES ARE NOT NARROWLY TAILORED

Naturally, the means must justify the ends – in other words, irrespective as to the

compelling interest is the stand-alone requirement that the mechanism employed by governmental

action must *actually satisfy* the interest it purports to effectuate. The vaccine mandates do not

effectuate stemming the spread of COVID-19. It is not subject to dispute that vaccinated persons

can contract and transmit COVID-19, and as stated above, those with natural immunity are twenty-

seven times (27x) less likely to contract COVID-19 than persons who had received two injections

of the Pfizer vaccine. Nathan Jeffay, *Study: COVID recovery gave Israelis longer-lasting Delta*

*defense than vaccines*, THE TIMES OF ISRAEL (Sept. 2, 2021).

Strict scrutiny is "the most demanding test known to constitutional law," *City of Boerne v.*

*Flores*, 521 US. 507, 534 (1997), and the Supreme Court has acknowledged governmental action

rarely passed this level of constitutional muster. *See Burson v. Freeman*, 504 U.S. 191, 200 (1992)

("[W]e readily acknowledge that a law rarely survives such scrutiny . . .".). Indeed, the "standard

is not watered down; it really means what it says." *Tandon v. Newsom*, 141 S. Ct. 1294, 1298

(2021).

---

[7] Pursuant to Ex. Order 14042 ("This order promotes economy and efficiency in Federal procurement by ensuring that [federal contractors] . . . provide adequate COVID–19 safeguards to their workers performing on or in connection with [the] Federal Government . . ."; Ex. Order 14043 ("It is the policy of [the Biden] Administration to halt the spread of coronavirus disease 2019 (COVID–19) . . ."; *see also* DoD Order ("[M]andatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people." ).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss.


Dated: February 25, 2022

Respectfully submitted,

/S/ MICHAEL A. YODER
Michael A. Yoder
THE LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
Tel: (571) 234-5594
michael@yoderesq.com

*Counsel for Plaintiffs*

24